**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC., | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-07189 |
| | ) | |
| THE BON-TON STORES, INC., | ) | |
| a Pennsylvania corporation, | ) | |
| Defendant. | ) | (Jury Trial Demanded) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against Defendant The Bon-Ton Stores, Inc ("Bon-Ton") as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## JURISDICTION AND VENUE

2.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Illinois and in this District, and purposefully directs its infringing activities to residents of this State and District by

causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter. Accordingly, this Court has personal jurisdiction over Defendant.

3.      Venue is appropriate pursuant to 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

## **PLAINTIFF**

4.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602. HPL is the exclusive licensee of twenty-five (25) U.S. patents, eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications all relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio"). The HPL Portfolio includes the patents and applications listed in Exhibit A.

5.       On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

6.      The '757 patent provides for methods and systems relating to wireless messaging to mobile devices (e.g., cellular devices). More particularly, the patent

2

includes claims that relate, among other things, to the transmission of notification messages to mobile devices that include an identifier (such as a URL) that identifies available content that may be provided to a mobile user upon request, and where the identified content is updated or changed prior to the content being sent to the mobile user in response to a request for such content.  Other claims provide for the notification messages to indicate the time the identified content is to be available.  Examples of such notifications include SMS messages that include an identifier (such as a URL) in the message, and where the identified content is updated and/or changed by the content provider between the time the notification is sent and the time the content is requested. Yet another example of such a notification is an SMS "24 hour sale" offering, wherein the content provider indicates in the notification the time the content is to be available, and either removes or changes the content after the specified time.

7.     On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

8.     The '716 patent provides for methods and systems that relate to wireless messaging to mobile devices (e.g., cellular devices).  More particularly, the patent includes claims that relate, among other things, to the transmission of notification messages to mobile devices that include an identifier (such as a URL) that identifies available content that may be provided to a mobile user upon request, and where the

notification includes a time the identified content is to be available. An example of such a notification is an SMS "24 hour sale" offering, wherein the notification includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available. After the specified time has expired, the content provider either removes or changes the content.

9.     On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent"). HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

10.     The '838 patent provides for methods and systems relating to wireless messaging to mobile devices (e.g., cellular devices). More particularly, the patent includes claims that relate, among other things, to the transmission of notification messages to mobile devices that include an identifier (such as a URL) that identifies available content. Examples of such notifications include SMS messages that include an identifier (such as a URL) in the message.

11.     On July 14, 2010, HPL filed suit against New York Times Company asserting infringement by the New York Times Company of the same three patents asserted herein. Approximately six (6) months later (in late February 2011), New York Times Company filed three (3) *ex parte* reexaminations in the Patent Office, one for each of the three (3) asserted patents. While all three (3) reexaminations are still under review, the Patent Office has already ***confirmed as patentable*** the following claims without amendment:

4

- Reexamination SN 90/009,882 (corresponding to the '757 patent): 1, 18, 19, and 20 (all other claims are still under review).
- Reexamination SN 90/009,880 (corresponding to the '716 patent): claims 2, 16, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58 (all other claims are still under review).

12.    In addition, HPL recently received Notices of Allowance for pending applications Serial Nos. 11/598,202, 12/167,971, and 12/367,358, all of which were allowed by the Patent Office over express consideration of art and arguments present by New York Times Company in the aforementioned *ex parte* reexamination requests.  HPL anticipates amending this Complaint to add allegations of infringement of claims of the allowed claims, once issued.

13.    To date, more than eighty (80) of the world's most sophisticated companies have agreed to a license to the HPL Portfolio.  Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Dairy Queen, Dell, Disney, eBay, Epitaph Records, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Harley-Davidson, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, Qdoba Restaurants, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steven Madden, Taco Bell, Toyota, World Wrestling Entertainment, Walgreens, Yamaha, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

5

### The Defendant

14.  Defendant Bon-Ton is a Pennsylvania corporation with its principal place of business in York, Pennsylvania.  Bon-Ton is a retailer of apparel, shoes, cosmetics, jewelry, furniture, and bedding, among other things.  Bon-Ton operates 275 stores through its subsidiaries, with two (2) stores in Chicago, Illinois.  Moreover, Bon-Ton purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

15.  Within the last six (6) years, Bon-Ton has initiated and caused numerous infringing messages to be sent in connection with at least the following product and service offerings:

a)    Bon-Ton provides text alerts to its customers' mobile devices, whereby Bon-Ton causes infringing messages to be sent to its customers' mobile devices alerting its customers of various coupons and other offerings that often include an identifier of content (such as a URL) within the notification.  Moreover, such notifications often link to dynamic content (e.g., content that is changed between the time of the original notification and the time such content is requested), as well as indicate the time the identified content is to be available.  For example, on November 22, 2010, Bon-Ton sent an SMS message to its mobile alert subscribers related to Bon-Ton's "hottest deals."  The SMS message linked to a listing of sale items at a local Bon-Ton store location.  Figures 1 and 2, below, show the message and the content.

6



**Figures 1 and 2.**

Figure 1 provides an example of an SMS message created and caused to be delivered by Bon-Ton containing a specific URL identifying the Bon-Ton content shown in Figure 2, which Bon-Ton delivered to a mobile phone upon a request (using the provided URL) to do so. The provided content relates to Bon-Ton sales.

(b)     Bon-Ton also causes infringing messages to be sent through its various social media websites.  For example, in conjunction with its @thebonton Twitter feed, Bon-Ton causes infringing SMS messages to be sent to its "followers" daily.  As demonstrated below in Figures 3 and 4, many of the messages indicate the time the content is available and others contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by Bon-Ton's customers.



**Figures 3 and 4.** Content pushed through the @thebonton Twitter feed including both dynamic and time sensitive content.



16.     On or about March 28, 2011, HPL gave written notice to Bon-Ton of its infringement of the '716, '838, and '757 patents.  The notice letter provided Bon-Ton with a detailed description of the claims, and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.

17.     For the past half-year, Bon-Ton has continued to infringe HPL's patents while repeatedly refusing to accept a license on HPL's well-established and reasonable licensing terms.  Bon-Ton refused a license even in the face of the Patent Office both confirming existing claims and allowing new claims over express consideration of the

prior art and arguments proffered by New York Times Company and others now cooperating with New York Times Company and Bon-Ton. For example:

(a)    Over the past half-year, HPL advised Bon-Ton of its progress in licensing, litigation and patent prosecution, including providing periodic updates regarding the pending reexamination proceedings filed by New York Times Company. For example, on May 26 and June 10, 2011, respectively, HPL requested that Bon-Ton reconsider its refusal to accept a license on HPL's established terms and advised Bon-Ton that HPL anticipated a significant number of infringed claims to be confirmed as patentable over the reexamination requests. Bon-Ton never acknowledged HPL's May 26th or June 10th letters.

(b)    As HPL predicted, in the third quarter of 2011 the Patent Office confirmed as patentable numerous infringed claims in two (2) of the pending *ex parte* reexamination proceedings over express consideration of New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint. Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, Bon-Ton continued to refuse a license.

(c)    On September 6, 2011, after the Patent Office confirmed and allowed numerous infringed claims of HPL's patents and applications over New York Times Company's invalidity arguments, Bon-Ton joined with several other companies (including New York Times Company) in filing yet another round of reexamination requests for the same three (3) patents asserted herein. HPL believes the most recent

9

reexamination requests present cumulative arguments and include numerous items of prior art already considered by the Patent Office. In addition, the new reexamination requests fail to seek reexamination of all claims asserted to be infringed by Bon-Ton in this Complaint, including ***at least*** asserted claim 1 of the '757 patent and claims 38 and 39 of the '716 patent. Notwithstanding, Bon-Ton continues to refuse a license and infringe the asserted patents.

## COUNT I
### (Infringement of United States Patent No. 7,835,757)

18. HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

19. HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 1-20 of the '757 patent within the United States without authority or license from HPL. As mentioned previously, claims 1 and 18-20 of the '757 patent have already been confirmed by the Patent Office in connection with New York Times Company's *ex parte* reexamination request.

20. HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent because it causes notifications of the type described in Paragraph 6 to be sent to its customers' mobile devices. HPL is informed and believes, and thereon alleges

that Defendant infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 15, above.

21.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b), by knowingly and intentionally encouraging or aiding third parties to use or practice methods within the United States that embody one or more claims of the '757 patent without license or authority from HPL, and further alleges that these third parties have infringed or will infringe the '757 patent.

22.     More specifically, Defendant has been on notice of its infringement of the '757 patent since March of 2011, and since that time large numbers of infringing messages (as described above) have been sent to Defendant's customers along with links to its content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced and is currently actively inducing third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would induce actual infringement of the '757 Patent.

23.     In addition, having placed Defendant on notice of infringement of the '757 patent more than six (6) months ago, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

24.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### COUNT II
### (Infringement of United States Patent No. 7,499,716)

25.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

26.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 27, 30, 38, and 39 of the '716 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, claims 22, 23, 38 and 39 of the '716 patent have already been confirmed by the Patent Office in connection with New York Times Company's *ex parte* reexamination request.

27.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes notifications of the type described in Paragraph 8 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 15, above.

28.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b), by knowingly and intentionally encouraging or

aiding third parties to use or practice methods within the United States that embody one or more claims of the '716 patent without license or authority from HPL, and further alleges that these third parties have infringed or will infringe the '716 patent.

29.    More specifically, Defendant has been on notice of its infringement of the '716 patent since March of 2011, and since that time large numbers of infringing messages (as described above) have been sent to Defendant's customers along with links to its content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 27, then Defendant has actively induced and is currently actively inducing third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would induce actual infringement of the '716 Patent.

30.    In addition, having placed Defendant on notice of infringement of the '716 patent more than six (6) months ago, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

31.    As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

//

## COUNT III
### (Infringement of United States Patent No. 7,280,838)

32.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

33.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, and 20 of the '838 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, all claims of the '838 patent are currently under review by the Patent Office in connection with New York Time's *ex parte* reexamination request.

34.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent because it causes notifications of the type described in Paragraph 10 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 15, above.

35.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b), by knowingly and intentionally encouraging or aiding third parties to use or practice methods within the United States that embody one

or more claims of the '838 patent without license or authority from HPL, and further alleges that these third parties have infringed or will infringe the '838 patent.

36.     More specifically, Defendant has been on notice of its infringement of the '838 patent since March of 2011, and since that time large numbers of infringing messages (as described above) have been sent to Defendant's customers along with links to its content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 34, then Defendant has actively induced and is currently actively inducing third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would induce actual infringement of the '838 Patent.

37.     In addition, having placed Defendant on notice of infringement of the '838 patent more than six (6) months ago, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

38.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)     Judgment that Defendant has infringed, or actively induced others to infringe one or more of the claims of the '757 patent, '716 patent, and the '838 patent;

15

(b)     A permanent injunction to be issued enjoining and restraining Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent, '716 patent, and the '838 patent and from inducing infringement of any such claims by others;

(c)     An award of damages against Defendant adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, and the '838 patent, together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)     Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)     Such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 11th day of October, 2011.

LAW OFFICES OF STEVEN G. LISA, LTD.


By:   */s/ Timothy Sperling*
        Timothy D. Sperling
        Attorney for Plaintiff


//

Steven G. Lisa (Ill. State Bar # 6187348)
Jon E. Kappes (Ill. State Bar # 6291678)
James D. Busch (Ill. State Bar # 6299217)
Mildred E. Park (Ill. State Bar # 6293523)
Timothy Sperling (Ill. State Bar # 6283854)
Donald J. Lisa (Ill. State Bar # 1673998)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona 85254
Tel.: (480) 998-3547
Fax: (480) 596-7956

Gerald D. Hosier (Ill. State Bar # 7059)
Law Offices Of Gerald D. Hosier, Ltd.
P.O. BOX 12354
ASPEN, CO 81612
Tel: (970) 920- 3475
Off: (970) 920-3475

## Exhibit A

1. U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

2. U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

3. U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010;

4. U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

5. U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

6. U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

7. U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

8. U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

9. U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

10. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

11. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

12. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

28. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

29. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

30. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

31. U.S. Patent Application No. 12/367,358, titled "Content provision to subscribers via wireless transmission."

32. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."

35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."

36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."