UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| HELFERICH PATENT LICENSING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE BON-TON STORES, INC., <br><br> Defendant. | Case No. 1:11-cv-07189 <br><br> Hon. John W. Darrah |

### MOTION TO STAY PENDING REEXAMINATION
### OF ALL ASSERTED PATENTS

**I.  INTRODUCTION**

Defendants CBS Corporation, The Bon-Ton Stores, Inc., Bravo Media, LLC, and G4 Media, LLC (collectively "Defendants") respectfully request that the Court stay the litigation against them pending reexamination of the patents-in-suit by the U.S. Patent and Trademark Office ("PTO").  HPL asserts three patents against all the Defendants:  U.S. Patent Nos. 7,280,838 ("the '838 patent"), 7,499,716 ("the '716 patent"), and 7,835,757 ("the '757 patent"). HPL asserts a fourth patent against Defendants CBS and Bravo, U.S. Patent No. 7,155,241 ("the '241 patent").

Defendants contend that HPL's patents do not claim new inventions.  In December, Defendants filed a request for *inter partes* reexamination of the '241 patent.  As a result of *ex parte* reexamination requests for the '838, '716, and '757 patents made by The New York Times last year, the PTO rejected over two dozen of the claims that HPL had planned to assert against The New York Times in litigation.  The PTO is still reexamining HPL's '838 patent; the PTO's most-recent action was a rejection of all 96 of the patent claims.

HPL made a number of characterizations about its patent claims that convinced the PTO not to entirely reject the '716 and '757 patents and to allow amended and new claims. Defendants, however, have identified prior art that shows the elements HPL highlighted in the '716 and '757 patents. Based on the firm conviction that HPL's patents are invalid -- and specifically targeting the few elements that the PTO believed were not in the specific prior art references before it during the *ex parte* reexamination -- Defendants have asked the PTO to reexamine the '716 patent and will so do for the '757 patent shortly. Defendants' request for reexamination of the '757 patent will target the amended and new claims that HPL added to it, which requires waiting for the PTO to issue the reexamination certificate. Defendants anticipate that the PTO will issue the certificate either the day this motion is presented or within two weeks thereafter.

The parties and the Court will not have long to wait for the PTO to decide whether to consider the reexamination requests on the merits. By law, the PTO must decide whether to grant the reexamination request for the '241 patent by March 29, 2012, and for the '716 patent by no later than April 6, 2012. It must decide whether to accept the reexamination request for the '757 patent within three months of its filing. Under the Court's inherent authority to manage its docket, a stay is appropriate until at least that time. At that point the Court will know whether the PTO will reexamine the HPL patents in light of the newly submitted prior art. That prior art, which the PTO was not reviewing in the earlier reexaminations, specifically discloses all the elements HPL previously convinced the PTO were not disclosed in the few specific prior art references that the PTO was considering in the earlier reexaminations.

The wisdom of granting a stay here is underscored by what has happened as a result of the Court's stay of HPL's litigation against The New York Times. The stay resulted in substantial judicial economy -- the PTO rejected as invalid 19 of the claims from the '716 and '757 patents that HPL's Second Amended Complaint asserted against The New York Times.

2

The PTO appears to have rejected as invalid 9 claims from the '838 patent that HPL asserted against The Times. Absent the stay, the Court would have presided over litigation involving 28 invalid claims.

Defendants have the power of their convictions. By using the *inter partes* reexamination process, in accordance with 35 U.S.C. § 315(c), Defendants will be estopped in litigation after a reexamination certificate issues from alleging invalidity of the HPL patents based on prior art they raised or could have raised in the reexaminations. Defendants firmly believe that their reexamination requests, focusing the PTO on prior art disclosing the small number of elements that the PTO thought were not disclosed in the specific references it previously considered, will cut down (and perhaps entirely eliminate) all the claims HPL intends to assert in the new litigation. One way or another, the issues that this Court will need to decide will be cut down substantially if the Court grants a stay.

## II. STATEMENT OF FACTS

### A. The New York Times' *Ex Parte* Reexaminations of the HPL Patents

On February 25, 2011, The New York Times requested *ex parte* reexaminations of the '716, '757, and '838 patents. The PTO granted all three requests. The Court stayed HPL's litigation against The New York Times pending reexamination. *See Helferich Patent Licensing, LLC v. New York Times Co.*, 1:10-cv-04387, Dkt. No. 77 (N.D. Ill. Apr. 05, 2011).

In December 2011, the PTO completed reexamination of the '716 patent and issued a reexamination certificate. Of the 67 claims submitted for reexamination, the PTO confirmed only 14 of them. HPL amended or added 65 new claims. Contrary to HPL's suggestion (Case No. 1:10-cv-04387, Dkt. No. 96 at 3-4), its changes were not just "clarifying" amendments. HPL made specific amendments based on the PTO's rejection of its original claims based on the prior art at issue in the *ex parte* reexaminations. *See, e.g.,* Markman Decl., Ex. 8 (examiner's

3

Notice of Intent to Issue Reexamination Certificate ("NIRC") commenting on scope of claims); Markman Decl., Ex. 9 (HPL's further "supplemental amendment").

On December 9, 2011, the PTO issued the Notice of Intent to Issue an Ex Parte Reexamination Certificate for the '757 patent, closing prosecution on the merits in that proceeding. Only six of the original twenty patent claims were confirmed, and amendments were made narrowing two original claims. In addition, HPL added 49 new, narrower claims. Again, HPL's amendments were in reaction to the PTO's rejection of HPL's original patent claims based on the prior art; these were not just "clarifying" amendments. *See, e.g.,* Markman Decl., Ex. 10 (examiner's Notice of Intent to Issue Reexamination Certificate ("NIRC") commenting on scope of claims); Markman Decl., Ex. 11 (HPL's further "supplemental amendment").

The PTO has rejected all the claims of the '838 patent. Markman Decl. Ex. 1. In its recent "status report," HPL represents that it has had discussions with the PTO examiner indicating that a "Notice of Intent to Issue Reexamination Certificate" will soon be filed. Case No. 1:10-cv-04387, Dkt. No. 96 at 6. The public record of the reexamination does not yet reflect this discussion, and the public (including Defendants) cannot yet verify the representation. Even if it is true, however, the reexamination of the '838 patent is ongoing. HPL is seeking to amend 20 existing claims and add 14 new claims to the patent, and none of those claims have a legal or enforceable existence (if they were allowed) unless and until the PTO issues a reexamination certificate (which is more than just the "Notice of Intent" referenced by HPL).

**B. The Litigation Against CBS, Bon Ton, G4, and Bravo**

HPL alleges that each of the Defendants infringes the '716, '757, and '838 patents. HPL also alleges that CBS Corp. and Bravo Media, LLC infringe the '241 patent. Generally, the patents-in-suit relate to systems and methods for sending text messages that include links in them to websites or other online content.

4

HPL's lawsuits against Defendants are at the earliest stages.[1] Defendants filed answers in December. Case Nos. 1:11-cv-07189 (Bon Ton) Dkt. No. 31; 11-cv-7395 (G4) Dkt. No. 27; 1:11-cv-07607 (CBS) Dkt No. 21; 1:11-cv-7647 (Bravo) Dkt. No. 22. Each answer expressly stated that the Defendant intended to seek a stay of the litigation pending reexamination requests to be filed with the PTO. Case Nos. 1:11-cv-07189 (Bon Ton) Dkt. No. 31 at 8 ¶ 1; 11-cv-7395 (G4) Dkt. No. 27 at 8 ¶ 1; 1:11-cv-07607 (CBS) Dkt No. 21 at 11 ¶ 1; 1:11-cv-7647 (Bravo) Dkt. No. 22 at 11 ¶ 1. The Court entered the parties' stipulations to postpone deadlines relating to initial disclosures and to compliance with the Local Patent Rules. Case Nos. 1:11-cv-07189 (Bon Ton) Dkt. No. 37; 11-cv-7395 (G4) Dkt. No. 35; 1:11-cv-07607 (CBS) Dkt No. 29; 1:11-cv-7647 (Bravo) Dkt. No. 30.

On the Defendants' unopposed motion, the Court found the cases related to HPL's earlier-filed case against The New York Times and reassigned them. 1:10-cv-04387, Dkt. No. 89. The Court set status conferences in all four of Defendants' cases for January 31, 2012. The parties have stipulated to postpone the deadlines in the Local Patent Rules until after the status conference. *See*, *e.g.*, Case No. 1:11-cv-07607 Dkt. No. 27.

Given the status of Defendants' pending requests for *inter partes* reexamination by the PTO, Defendants proposed that the parties ask the Court to move the scheduled status conference by approximately ninety days, to the first half of May 2012. By that time, the parties and the

---

[1] HPL recently filed a series of lawsuits asserting the same patents now at issue in the cases referred to this Court. *See*, *Helferich Patent Licensing, LLC v. ValueVision Media, Inc.*, Case No. 1:11-cv-7766 (N.D. Ill.); *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, Case No. 2:2011-cv-02304 (D. Ariz.); *Helferich Patent Licensing LLC v. Nissan Motor Company Limited, et al.*, Case No. 2:12-cv-00060 (D. Ariz.); *Helferich Patent Licensing LLC v. NBA Properties Incorporated, et al.*, Case No. 2:12-cv-00100 (D. Ariz.); *Helferich Patent Licensing LLC v. Phoenix Newspapers Incorporated*, Case No. 2:11-cv-02476 (D. Ariz.). In past years, HPL litigated a number of other cases asserting the same or similar patents. *See, e.g.,* cases cited in 1:11-cv-04387 Dkt. 72 at fn. 1. None of those lawsuits appears to have proceeded past the earliest stages of discovery, and no court has ever construed the terms of, or heard any summary judgment motions relating to, HPL's patents.

Court would know whether the PTO was granting the requests. 35 U.S.C. § 312. HPL refused. Markman Decl., Ex. 4.

### C. Defendants' Requests for *Inter Partes* Reexamination

On December 29, 2011, Defendants[2] filed a request for *inter partes* reexamination of the '241 patent. Markman Decl. Ex. 5. That patent was not asserted in the existing HPL lawsuit against The New York Times, and has not been subject to any prior reexamination proceedings.

On January 6, 2012 -- shortly after the PTO issued a reexamination certificate -- Defendants filed a request for *inter partes* reexamination of the '716 patent. Markman Decl. Ex. 6.

Once the PTO issues a reexamination certificate for the '757 patent, the amended and new claims will take effect. Defendants will immediately file a request for *inter partes* reexamination of all 69 claims.

Previously, on September 6, 2011, the Defendants, along with The New York Times and Best Buy had filed requests for *inter partes* reexamination of the original claims of the '757, '716, and '838 patents, while the *ex parte* proceedings were still on-going. The PTO declined to initiate an *inter partes* reexamination of those patents at that time. In the then-ongoing *ex parte* reexaminations, the PTO had just rejected dozens of HPL's claims. And HPL was in the process of asking to amend claims and add entirely new claims. In light of what the PTO had already done, and in light of the fact that the requests addressed many claims that had already been rejected and that were being amended, or that had been construed narrowly, the PTO decided not to initiate a further reexamination of the patents again at that time. And, since HPL was amending claims to address the prior art, and adding new claims, Defendants did not petition the Board of Patent Appeals and Interferences to review the decision declining to reexamine the

---

[2] The New York Times Company and Best Buy Co., Inc. are also real parties in interest to the new requests for *inter partes* reexamination.

patents. Rather, Defendants awaited the issuance of the *ex parte* reexamination certificate to confirm the full scope of amendments made at the conclusion of the *ex parte* proceeding.

In contrast, Defendants' *inter partes* requests filed in December 2011 and January 2012 were (or, in the case of the '757 patent, will) be filed after the *ex parte* reexamination certificates issue for each corresponding patent. The new *inter* partes requests address all of HPL's amended and new claims, as well as the small number of original claims that the PTO confirmed in the *ex parte* reexamination based on HPL's arguments at the time.

The PTO should find that the second requests have a reasonable likelihood to prevail on the merits. The new requests for *inter partes* reexamination ask the PTO to analyze the HPL patents in light of prior art that discloses the specific elements that the PTO thought were missing from the references it had reviewed during the *ex parte* reexamination. The requests identify and analyze HPL's new and amended claims based on prior art that discloses exactly the elements that HPL said were not disclosed in the prior art references being considered in the *ex parte* reexaminations.[3] The requests also target the very small number of original claims that survived the *ex parte* reexaminations, highlighting for the PTO that the PTO appears to be applying claim constructions that are far narrower than the ones HPL is using in order to stretch its claims to allege infringement in litigation. *See, e.g.,* Case Nos. 1:11-cv-07189 (Bon Ton) Dkt. No. 31 at 2 ¶ 6, 8, 11; 11-cv-7395 (G4) Dkt. No. 27 at 2 ¶ 6, 8, 11; 1:11-cv-07607 (CBS) Dkt No. 21 at 2 ¶ 6, 8, 11; 1:11-cv-7647 (Bravo) Dkt. No. 22 at 2 ¶ 6, 8, 11.

The PTO has not yet granted the *inter partes* reexamination requests. It must make decisions on *inter partes* reexamination requests within 3 months. The PTO must make a decision on the request for the '241 patent by March 29, 2011 and for the '716 patent by no later

---

[3] Defendants disagree with a number of HPL's characterizations of the pending *inter partes* reexamination requests in HPL's "status report." For example, HPL represents that the PTO has already considered all the primary references cited in the *inter partes* request for the '716 patent. The '971 (Smith) patent, however, was not previously considered. Defendants do not address each of HPL's points here.

7

than April 6, 2012. Defendants expect to file a reexamination request for the '757 patent by February 6, 2012, assuming the PTO issues a reexamination certificate before that date, requiring the PTO to act on the request by May 6.

### III.     ARGUMENT

####     A.     The Court Has the Inherent Authority to Stays the Litigation Pending *Inter Partes* Reexamination by the PTO

The Court has the inherent authority to stay HPL's litigation against Defendants until the PTO completes its reexamination of the HPL patents-in-suit. The Court and the parties will know whether the PTO agrees to reexamine the '241 and '716 in less than ninety days, and the '757 patent within ninety days after Defendants file that request (which they will do as soon as the PTO issues a reexamination certificate, which is expected within days). The Court considers three factors when determining whether a stay pending reexamination is appropriate: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). Each factor is addressed below.

####     B.     Staying HPL's Litigation Will Not Unduly Prejudice Or Tactically Disadvantage HPL

#####         1.     Delay Alone Is Not Unduly Prejudicial

Courts routinely find that the delay of a stay pending reexamination is not, in and of itself, unduly prejudicial. *See Genzyme Corp.*, 2011 U.S. Dist. LEXIS 16287, *8 (N.D. Ill. 2011) ("Any delay that inheres in the reexamination process does not by itself constitute undue prejudice.") Unless a defendant has unduly delayed in seeking reexamination and filing a stay, the Court will frequently grant a stay pending reexamination (both *ex parte* and *inter partes*). *See SP Techs., LLC v. HTC Corp.*, 2009 U.S. Dist. LEXIS 38076, *3-4 (N.D. Ill. 2009) (granting stay in light of *inter partes* reexamination noting litigation was in an early stage and validity issues would be streamlined); *Genzyme Corp. v. Cobrek Pharms., Inc.*, 2011 U.S. Dist. LEXIS

16287, *12 (N.D. Ill. 2011) (noting in granting a stay that an "eight-month delay between the filing of the complaint and the filing of the motion for stay does not weigh significantly against granting a stay. No trial date has been set, expert discovery has not yet commenced, no depositions have been taken, and the Court has not conducted claim construction or any pre-trial proceedings."); *AT&T Intellectual Prop. I v. TiVo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011) (noting the "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.") (citations omitted).

Here, Defendants did not delay in seeking reexamination of the patents-in-suit. The PTO is currently reexamining the '838 patent and has rejected all 96 of its claims. Defendants sought reexamination of the '241 patent less than a month after they filed answers to HPL's complaints. They sought reexamination of the '716 patent in January, shortly after the PTO issued a reexamination certificate. And they will seek reexamination of the '757 patent as soon as the PTO issues a reexamination certificate.

Defendants also did not delay in seeking a stay of the litigation. Defendants' answers all gave notice to HPL that they intended to seek a stay pending reexamination by the PTO. 1:11-cv-07189 (Bon Ton) Dkt. No. 31 at 8 ¶ 1; 11-cv-7395 (G4) Dkt. No. 27 at 8 ¶ 1; 1:11-cv-07607 (CBS) Dkt No. 21 at 11 ¶ 1; 1:11-cv-7647 (Bravo) Dkt. No. 22 at 11 ¶ 1. This motion is noticed for presentment at the time of the first status conference in all of the cases (and was not noticed further in advance of the conference because Defendants were negotiating with HPL about a possible request to seek leave of Court to move the date of the status conference by approximately 90 days (*see* Markman Decl., Ex. 4)). No party has undertaken any discovery.

In order to avoid any delay, Defendants are filing this motion while their *inter partes* reexamination requests are still under consideration by the PTO. The PTO has 3 months to decide whether to consider the requests on the merits. 35 U.S.C. § 312. This Court has found motions for stay filed before the PTO grants an *inter partes* reexamination request timely. *SP*

9

*Techs., LLC v. HTC Corp.*, 2009 U.S. Dist. LEXIS 38076, *9 (N.D. Ill. 2009) (granting stay pending *inter partes* reexamination not yet granted, noting, *inter alia* that delay is not prejudicial since "[w]hile it is true that the complaint alleges that HTC is still marketing the alleged infringing product, SPT can always move to recover damages for such sales at the end of the litigation if SPT is successful on its claims.").

### 2. The Prior Reexaminations Are Not A Reason To Refuse To Grant A Stay Here

The fact that three of the patents-in-suit were the subject of earlier *ex parte* reexamination, and an *inter partes* reexamination that the PTO did not consider on the merits, does not counsel against a stay here. To the contrary, the results of the earlier reexaminations underscore why the Court should stay this litigation in order to avoid the burden of adjudicating claims that are not valid.

First, the '241 patent has not previously been reexamined. It has never been tested against the prior art -- art that has already invalidated 28 original claims from the other three HPL patents -- let alone the prior art that Defendants recently discovered (which strikes at the heart of what HPL had argued was missing from the few prior art references considered by the PTO in the *ex parte* reexaminations in order to get the PTO to allow its claims). There is every reason to believe that the PTO will narrow, and might invalidate, the claims of the '241 patent that HPL seeks to assert against CBS and Bravo.

Second, the *ex parte* reexamination of the '838 patent is ongoing. HPL is seeking to amend 20 existing claims and add 14 new claims to the patent. Markman Decl., Ex. 12. While HPL represents that it believes the examiner will soon issue a "Notice of Intent to Issue Reexamination Certificate" does not alter the fact that the patent is still in reexamination. The new and amended claims have no legal existence as of now, even if the PTO ultimately allows some or all of them.

Third, the PTO's earlier *ex parte* reexamination of the '716 and '757 patents dramatically transformed both patents. Defendants submit that both are much narrower than the patents were before The New York Times challenged them. What is more, Defendants carefully reviewed statements made by HPL and by the PTO regarding what they thought was missing in the specific prior art being considered in the *ex parte* reexamination. Defendants' *inter partes* reexamination requests identify and analyze for the PTO prior art that discloses exactly what the PTO had thought was missing in the limited number of prior art references it was considering in the *ex parte* reexaminations.

Fourth, the PTO did not consider Defendants' earlier *inter partes* reexamination requests of the '716, '757, and '838 patents on the merits. Contrary to HPL's suggestion in its status report (Case No. 1:10-cv-04387, Dkt. No. 96 at 6), those reexaminations did not result in a finding that the three patents were "confirmed patentable." Rather, the PTO simply declined to consider those requests on the merits at all. The PTO had just rejected dozens of HPL's claims in the three patents -- and the reexamination requests targeted many of those already-rejected claims. HPL was also amending claims and adding new claims -- none of which had a legal existence since no reexamination certificate had issued in the *ex parte* reexaminations, and so none of those claims could be attacked at that time in the reexamination request. In light of what the PTO had already done, and what HPL was in the process of doing by crafting new and amended claims, the PTO decided not to initiate an *inter partes* reexamination on top of the already-underway *ex parte* reexaminations. Markman Decl., Ex. 13. No estoppel attached, since the PTO simply did not accept the requests. And, since HPL was altering claims and adding new claims to avoid the specific prior art being reviewed by the PTO, Defendants did not petition the Board of Patent Appeals and Interferences.

Finally, highlighting the lack of undue prejudice to HPL is the fact that HPL itself represented in correspondence that it thought the reexamination proceedings were actually

helping HPL -- clarifying the scope of HPL's claims, and providing a more comprehensive prosecution history. HPL wrote:

> In no uncertain terms, however, HPL views the NYT [(New York Times)] reexamination requests as an extremely positive development. . . . Knowledgeable patent attorneys know [that in reexamination] HPL can now address and clarify any claim construction issues in both the re-exam cases and its other pending applications.

Case No. 11-cv-7189, Dkt. No. 31, Ex. 1 at 8-9.

### C. A Stay Will Resolve Major Issues That Would Otherwise Be Litigated And Result In Substantial Judicial Economy

Reexamination helps resolve patent cases. The reexamination process itself was created in order to "permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." *Genzyme Corp.*, 2011 U.S. Dist. LEXIS at *4 n. 2 (*citing* H.R. Rep. 96-1307(I) (Sept. 9, 1980)). Validity is an important issue in patent litigation cases. *See Emhart Indust., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 U.S. Dist. LEXIS 15033 at *3 (N.D. Ill. Jan. 30, 1987) (observing that "a stay operates to shift to the PTO a significant issue, patent claim validity, involved in the dispute before the Court").

Regardless of the outcome of the currently pending *inter partes* reexaminations, significant issues will be resolved. Again, as of this writing, the PTO has found all the claims of the '838 patent to be unpatentable (though HPL represents that the examiner intends to allow some subset of the patent's claims). The *ex parte* reexamination process is not over, but there is certainly no reason the Court should be expending judicial resources presiding over litigation of a patent that the PTO has found lacks valid claims. *See NTP, Inc. v. Palm, Inc.,* 2007 U.S. Dist. LEXIS 97141, *9 (E.D. Va. 2007) ("It would be a painful tragedy--for everyone involved--if this litigation were allowed to move forward during the PTO's reexamination, only to be rendered meaningless by that agency's final action.")

Second, *inter partes* reexamination frequently result in material changes to the claims reexamined. Per the PTO's most recent statistics, in 44% of *inter partes* reexaminations every

12

claim is canceled. *See* Markman Decl. Ex. 7. In another 45% of cases the claims are narrowed. *Id*. Historically, only slightly more than 1 out of 10 patents emerge from *inter partes* reexamination without any change. *Id*. There is therefore a substantial probability that claims HPL would otherwise assert will be invalidated in reexamination.

Third, given the strength of the prior art, Defendants chose to take a risk. In accordance with 35 U.S.C. § 315(c), if after granting Defendants' reexamination request HPL's patent claims survive the reexamination process, Defendants' litigation defenses will be narrowed. Unlike an *ex parte* reexamination, an *inter partes* reexamination triggers an estoppel preventing requesters from later challenging validity on the basis of prior art that they raised or could have raised in the request. 35 U.S.C. § 315(c). The *inter partes* procedure will allow all parties to rely on a final disposition as to important aspects of invalidity.

Other significant issues can also be resolved through the reexamination process. Reexamination proceedings form part of the intrinsic record of a patent prosecution, and therefore can provide useful guidance on the proper scope of the claims even if no claims are canceled or amended:

> The agency will be able to provide its particular expertise on the applicability of the new prior art presented in the reexamination, which will in turn be of benefit to this court in resolving issues of claim construction and infringement if the patent survives the reexamination proceeding. . . . though the PTO's treatment of the various issues raised may not be dispositive if the patent remains unchanged, it is highly unlikely that they will not be relevant and therefore helpful to the parties and this court in reaching final resolution of the infringement allegations.

*Fellowes, Inc. v. Aurora Corp. of Am.*, 2009 U.S. Dist. LEXIS 9595, *4-5 (N.D. Ill. 2009). Therefore resolution of multiple issues at the very heart of patent cases will be simplified based on the conduct of the reexamination alone.

### D. A Stay Will Reduce the Burden of Litigation on the Court and the Parties

Staying the cases will reduce the burden on the Court and the parties. The results of the *ex parte* reexaminations filed by The New York Times highlights the importance of

13

reexamination as a tool to narrow issues that might otherwise have to be litigated with scarce judicial resources. Of the 6 claims of the '716 patent and 17 claims of the '757 patent asserted by HPL against The New York Times (Case No. 1:10-cv-4387, Dkt. No. 43), 19 were found invalid. And, as noted above, all of the claims of the '838 patent remain rejected by the PTO as of this writing. Were it not for the Court's stay order, the Court could have spent the past year presiding over the litigation of 19 invalid patent claims.

Reexamination asks the PTO to conduct a focused inquiry on the validity of the claims in light of specific prior art, without the use of judicial resources. This helps reduce the burden on the parties by eliminating both invalid claims and cumulative or unnecessary prior art from consideration, providing guidance on claim construction, and providing a further record to reduce the complexity of litigation and trial, all of which reduce the cost to the Court and the parties. *Genzyme Corp.*, 2011 U.S. Dist. LEXIS 16287 at *10 ("Even if the amendments that Plaintiff filed with the PTO succeed in overcoming some or all of the rejections, the form and substance of the [asserted] patent are likely to change, perhaps significantly. In view of those considerations, there appears to be a strong likelihood that both the parties and the Court would be spared considerable time and expense by staying lengthy and complex parallel proceedings - including claim construction proceedings - during the reexamination process.")

Resolving issues of validity in the PTO, which originally granted the patents, will have the added benefit of preventing this Court (and other courts), and more parties, from having to litigate in parallel the invalidity issues set out in Defendants' reexamination requests. Already, HPL has filed over 10 currently pending separate lawsuits involving the same patents at issue here. Without a stay, the Courts could have to litigate invalidity in multiple parallel proceedings. *See*, *e.g.*, *Helferich Patent Licensing, LLC v. ValueVision Media, Inc.*, Case No. 1:11-cv-7766 (N.D. Ill.); *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, Case No. 2:2011-cv-02304 (D. Ariz.). If proceedings are not stayed, then the same issue will be resolved not only as

between these cases and the PTO, but as between different cases in this Court and cases brought in other courts. HPL has not indicated that it has any intention of slowing its campaign against every company that has sent text messages. Case 1:10-cv-04387 Dkt. No. 52 at 4.

## IV. CONCLUSION

For the foregoing reasons, Defendants urge the Court to grant a stay pending reexamination of the '241, '716, '757, and '838 patents.

Respectfully submitted,

DATED: January 27, 2012

By /s/ *Michael Markman*
Michael M. Markman (N.D. Ill. ID No. 191388)
Robert Williams (N.D. Ill. ID No. 247428)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
T: (415) 591-6000
F: (415) 591-6091

David M. Airan
Leydig, Voit & Mayer, Ltd.
180 N. Stetson Avenue, Suite 4900
Chicago, IL 60601-6731
T: (312) 616-5600
F: (312) 616-5700

*Attorneys for Defendants The Bon-Ton Stores, Inc., G4 Media, LLC, CBS Corporation, and Bravo Media, LLC*

<u>CERTIFICATE OF SERVICE</u>

I, Michael M. Markman, an attorney, do hereby certify that I electronically filed this MOTION TO STAY PENDING REEXAMINATION OF ALL ASSERTED PATENTS on January 27, 2012 with the Clerk of the Court using the electronic case filing system and all counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule 5.9.


DATED: January 27, 2012 By /s/ *Michael M. Markman*