# Exhibit 6

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Letters Patent of:
Richard J. Helferich

Patent No.: 7,499,716

Issued: March 3, 2009

For:  SYSTEM AND METHOD FOR DELIVERING
      INFORMATION TO A TRANSMITTING AN
      RECEIVING DEVICE

## REQUEST FOR *INTER PARTES* REEXAMINATION OF
## U.S. PATENT NO. 7,499,716

MS *Inter Partes* Reexam
Attn:  Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Reexamination under 35 U.S.C. §§ 311-318 and 37 C.F.R. § 1.913 is hereby requested of claims 15-18, 21-33, 37-43, 83-86, 89-100, and 103-115 of U.S. Patent No. 7,499,716 ("the '716 patent"). The '716 patent issued on March 3, 2009 from an application filed on April 7, 2006.  As such, the '716 patent qualifies for *inter partes* reexamination. *See* 37 C.F.R. § 1.913; M.P.E.P. § 2609. An *Ex Parte* Reexamination Certificate for the '716 patent issued on December 13, 2011. Attached is a completed Request for *Inter Partes* Reexamination Transmittal Form, Form PTO/SB/58. This request is submitted by the undersigned on behalf of the Requester, and the undersigned is acting in a representative capacity in accordance with 37 C.F.R. §§ 1.34 and 1.915(c).

1

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

The Director is hereby authorized to charge the $8,800.00 reexamination fee (37 C.F.R. §
1.20(c)(2)) to Deposit Account No. 50-0740 under Order No. 032697.0007-US07.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                    Docket No.: 032697.0007-US07

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 9

II.   REQUEST FOR ASSIGNMENT OF EXAMINATION ............................................. 9

III.  REQUIREMENTS FOR INTER PARTES REEXAMINATION UNDER 37 C.F.R. §§
      1.913 AND 1.915 ........................................................................................... 9

      A.   PAYMENT OF FEES PURSUANT TO 37 C.F.R. § 1.915(a) ........................... 9

      B.   IDENTIFICATION PURSUANT TO 37 C.F.R. § 1.915(b)(1) ........................ 9

      C.   CITATION OF PATENTS AND PRINTED PUBLICATIONS THAT PROVIDE A
           SHOWING THAT THERE IS A REASONABLE LIKELIHOOD THAT
           REQUESTER WILL PREVAIL WITH RESPECT TO AT LEAST ONE OF
           THE CLAIMS CHALLENGED IN THE REQUEST PURSUANT TO 37 C.F.R.
           § 1.915(b)(2) ........................................................................................ 10

      D.   STATEMENT ESTABLISHING A REASONABLE LIKELIHOOD THAT THE
           REQUESTER WILL PREVAIL WITH RESPECT TO AT LEAST ONE CLAIM
           (RLP) PURSUANT TO 37 C.F.R. § 1.915(b)(3) ........................................ 10

      E.   STATEMENT POINTING OUT A DETAILED EXPLANATION OF THE
           PERTINENCY AND MANNER OF APPLYING REFERENCES PURSUANT
           TO 37 C.F.R. § 1.915(b)(3) .................................................................... 13

      F.   COPIES OF PRIOR ART AND TRANSLATIONS PURSUANT TO 37 C.F.R. §
           1.915(b)(4) .......................................................................................... 14

      G.   COPY OF THE '716 PATENT PURSUANT TO 37 C.F.R. § 1.915(b)(5) ...................... 14

      H.   CERTIFICATION OF SERVICE ON PATENT OWNER PURSUANT TO 37
           C.F.R. § 1.915(b)(6) ............................................................................. 14

      I.   CERTIFICATION THAT ESTOPPEL PROVISIONS DO NOT PROHIBIT INTER
           PARTES REEXAMINATION PURSUANT TO 37 C.F.R. § 1.915(b)(7) ................ 15

      J.   STATEMENT IDENTIFYING REAL PARTY IN INTEREST PURSUANT TO 37
           C.F.R. § 1.915(B)(8) ............................................................................. 15

IV.   PRIOR REEXAMINATION PROCEEDINGS, AND CONCURRENT AND
      PREVIOUS LITIGATION INVOLVING THE '716 PATENT ............................... 15

      A.   Prior *Ex Parte* Reexamination Proceeding .......................................... 15

      B.   Previously Filed Inter Partes Request for Reexamination ....................... 15

      C.   Concurrent Litigation ........................................................................ 16

      D.   Previous Litigation ............................................................................ 17

V.    OVERVIEW OF THE '716 PATENT AND REMARKS MADE DURING
      PROSECUTION ........................................................................................... 18

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

A.  The Disclosure of the '716 Patent ................................................................... 18

B.  Summary of the Prosecution History of the '716 Patent .................................. 18

C.  Summary of the Prosecution History of the *Ex Parte* Reexamination Proceeding of the '716 Patent ........................................................................... 21

D.  Summary of the Prosecution History of the *Inter Partes* Reexamination Proceeding of the '716 Patent ........................................................................... 25

E.  Claim Interpretation During Reexamination .................................................... 25

VI.   PATENT OWNER'S CLAIM INTERPRETATIONS MADE IN A COURT RECORD ........ 27

VII.  OVERVIEW OF THE PRIOR ART PATENTS AND PRINTED PUBLICATIONS ............. 30

A.  U.S. Patent No. 5,809,415 to Rossmann ("the '415 patent") ........................... 31

B.  The NAIS Article ............................................................................................. 35

C.  U.S. Patent No. 6,333,973 to Smith ("the '973 patent") .................................. 40

D.  U.S. Patent No. 5,487,100 to Kane ("the '100 patent") ................................... 45

E.  Japanese Unexamined Patent Application Publication H8-181781 (Furuta) ................... 51

F.  The *Enabling Mobile Network Managers* Article ........................................... 53

G.  U.S. Patent No. 5,406,616 to Bjorndahl ("the '616 patent") ........................... 56

VIII. STATEMENT ESTABLISHING A REASONABLE LIKELIHOOD THAT THE REQUESTER WILL PREVAIL WITH RESPECT TO AT LEAST ONE CLAIM (RLP) PURSUANT TO 37 C.F.R. § 1.915(b)(3) ........................................................ 57

A.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 15, 17, 18, 21, 24-27, 83, 92-94, 110, 112 and 113 ... 57

B.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article and the '973 Patent (Smith) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 16, 84, and 111 ...................... 60

C.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article and the '100 Patent (Kane) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90, 91, 114 and 115 .......................... 62

D.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90, 91, 114 and 115 .......................... 64

E.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 28-30, 32, 33, 37, 40-42, 85, 86, 89, 95-97, 99, 100, 103, 104, 107, and 108 .................................... 66

F.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, the '973 Patent (Smith) and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 31, 43, 98, and 109 ................................................................. 67

G.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, the '100 Patent (Kane) and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106 ..................................................................... 69

H.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, JP H8-181781 (Furuta), and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106 ........................................................................ 71

I.  The NAIS Article in Combination with the '100 Patent (Kane) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 15, 17, 18, 21, 25-27, 83, 85, 86, 89, 92-94, 110 and 112-115 .................................... 73

J.  The NAIS Article in Combination with the '100 Patent and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 114 and 115 ............................................................... 75

K.  The NAIS Article in Combination with the '100 Patent (Kane) and the '973 Patent (Smith) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 16, 84 and 111 ............................................................... 77

L.  The NAIS Article in Combination with the *Enabling Mobile Network Managers* Article and the '100 patent establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22-24, 90 and 91 ............................... 79

M.  The NAIS Article in Combination with the *Enabling Mobile Network Managers* Article, the '100 patent, and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90 and 91 ................................................................................................................. 81

N.  The NAIS Article in Combination with the '100 Patent (Kane) and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 28-30, 32, 33, 38, 41, 42, 95, 96, 97, 99, 100 and 103-108 ... 83

O.  The NAIS Article in Combination with the '100 Patent (Kane), JP H8-181781 (Furuta), and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106 ............ 84

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

P.   The NAIS Article in Combination with the '100 Patent (Kane), the '616 Patent
     (Bjorndahl) and the *Enabling Mobile Network Managers* Article Establishes a
     Reasonable Likelihood that the Requester Will Prevail with Respect to Claims
     37, 39 and 40 ................................................................................................. 86

Q.   The NAIS Article in Combination with the '100 Patent (Kane), the '616 Patent and
     the '973 Patent (Smith) Establishes a Reasonable Likelihood that the Requester
     Will Prevail with Respect to Claims 31, 43, 98 and 109 ............................................. 87

R.   The '973 Patent (Smith) in Combination with the '100 Patent Establishes a
     Reasonable Likelihood that the Requester Will Prevail with Respect to Claims
     15-18, 21-27, 83-86, 89-94, and 110-115 .................................................................. 89

S.   The '973 Patent (Smith) in Combination with the '100 Patent and JP H8-181781
     (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail
     with Respect to Claims 22, 23, 90, 91, 114 and 115 .................................................... 94

T.   The '973 Patent in Combination with the '100 Patent and the '616 Patent Establishes
     a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims
     28-33, 37-43, 95-100, and 103-109 ............................................................................ 96

U.   The '973 Patent in Combination with the '100 Patent, JP H8-181781 (Furuta), and
     the '616 Patent Establishes a Reasonable Likelihood that the Requester Will
     Prevail with Respect to Claims 38, 39, 105 and 106 .................................................... 98

IX.  DETAILED EXPLANATION OF THE PROPOSED REJECTIONS AND
     PERTINENCY AND MANNER OF APPLYING THE PATENTS AND PRINTED
     PUBLICATIONS PURSUANT TO 37 C.F.R. § 1.915(b)(3) ........................................ 100

A.   The '415 Patent (Rossmann) in Combination with the *Enabling Mobile Network
     Managers* Article Renders Claims 15, 17, 18, 21, 24-27, 83, 92-94, 110, 112 and
     113 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ........................................ 103

B.   The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network
     Managers* Article and the '973 Patent (Smith) Renders Claims 16, 84 and 111 of
     the '716 Patent Obvious Under 35 U.S.C. § 103(a) .................................................... 201

C.   The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network
     Managers* Article and the '100 Patent (Kane) Renders Claims 22, 23, 90, 91, 114
     and 115 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................... 227

D.   The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network
     Managers* Article, and JP H8-181781 (Furuta) Renders Claims 22, 23, 90, 91,
     114 and 115 Obvious Under 35 U.S.C. § 103(a) ........................................................ 259

E.   The '415 Patent (Rossmann) in Combination with the *Enabling Mobile Network
     Managers* Article and the '616 Patent (Bjorndahl) Renders Claims 28-30, 32, 33,
     37, 40-42, 85, 86, 89, 95-97, 99, 100 and 103, 104, 107, and 108 of the '716
     Patent Obvious Under 35 U.S.C. § 103(a) ................................................................. 293

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

F.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, the '973 Patent (Smith) Patent and the '616 Patent (Bjorndahl) Renders Claims 31, 43, 98, and 109 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................................................................................................... 379

G.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, the '100 Patent (Kane) and the '616 Patent (Bjorndahl) Renders Claims 38, 39, 105 and 106 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................................................................................................... 431

H.  The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, JP H8-181781 (Furuta), and the '616 Patent (Bjorndahl) Renders Claims 38, 39, 105 and 106 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................................................................................................... 462

I.  The NAIS Article in Combination with the '100 Patent (Kane) Renders Claims 15, 17, 18, 21, 25-27, 83, 85, 86, 89, 92-94, 110 and 112-115 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ............................................................................ 494

J.  The NAIS Article in Combination with the '100 Patent (Kane) and JP H8-181781 (Furuta) Renders Claims 114 and 115 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................................................................................................... 548

K.  The NAIS Article in Combination With the '100 Patent (Kane) and the '973 Patent (Smith) Renders Claims 16, 84 and 111 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................................................................................................... 553

L.  The NAIS Article in Combination with the '100 Patent (Kane) and the *Enabling Mobile Network Managers* Article Renders Claims 22-24, 90 and 91 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................................................ 570

M.  The NAIS Article in Combination with the *Enabling Mobile Network Managers* Article, the '100 patent, and JP H8-181781 (Furuta) Renders Claims 22, 23, 90 and 91 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................... 590

N.  The NAIS Article in Combination with the '100 Patent (Kane) and the '616 Patent (Bjorndahl) Renders Claims 28-30, 32, 33, 38, 41, 42, 95, 96, 97, 99, 100 and 103-108 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) ................................ 611

O.  The NAIS Article in Combination with the '100 Patent (Kane), JP H8-181781 (Furuta), and the '616 Patent (Bjorndahl) Renders Claims 38, 39, 105 and 106 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) .................................................... 680

P.  The NAIS Article in Combination with the '100 Patent (Kane), the '616 Patent and the *Enabling Mobile Network Managers* Article (Bjorndahl) Renders Claims 37, 39 and 40 Obvious Under 35 U.S.C. § 103(a) ......................................................... 704

Q.  The NAIS Article in Combination with the '100 Patent (Kane), the '616 Patent (Bjorndahl) and the '973 Patent (Smith) Renders Claims 31, 43, 98 and 109 of the '716 Patent Obvious Under 35 U.S.C. § 103(a) .................................................... 707

7

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                  Docket No.: 032697.0007-US07

R.  The '973 Patent (Smith) in Combination with the '100 Patent (Kane) Renders
    Claims 15-18, 21-27, 83-86, 89-94, and 110-115 of the '716 Patent Obvious
    Under 35 U.S.C. § 103(a) ...................................................................................... 740

S.  The '973 Patent (Smith) in Combination with the '100 Patent (Kane) and JP H8-
    181781 (Furuta) Renders Claims 22, 23, 90, 91, 114 and 115 of the '716 Patent
    Obvious Under 35 U.S.C. § 103(a) ......................................................................... 911

T.  The '973 Patent (Smith) in Combination with the '100 Patent (Kane) and the '616
    Patent (Bjorndahl) Renders Claims 28-33, 37-43, 95-100, and 103-109 of the
    '716 Patent Obvious Under 35 U.S.C. § 103(a) ...................................................... 955

U.  The '973 Patent in Combination with the '100 Patent, JP H8-181781 (Furuta), and
    the '616 Patent (Bjorndahl) Renders Claims 38, 39, 105 and 106 of the '716
    Patent Obvious Under 35 U.S.C. § 103(a) ............................................................ 1125

X.  CONCLUSION ............................................................................................................ 1164

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

## I.     INTRODUCTION

Reexamination of Claims 15-18, 21-33, 37-43, 83-86, 89-100, and 103-115 of U.S. Patent No. 7,499,716, ("the '716 patent") is respectfully requested pursuant to 35 U.S.C. §§ 311-318 and 37 C.F.R. § 1.915. The application issuing as the '716 patent (Exhibit A) was filed on April 7, 2006, and, as such, the '716 patent is eligible for *inter partes* reexamination.  An *Ex Parte* Reexamination Certificate for the '716 patent issued on December 13, 2011.  Reexamination is requested in view of the prior patents and printed publications identified below.

## II.     REQUEST FOR ASSIGNMENT OF EXAMINATION

Examiner Ovidio Escalante previously reexamined the '716 patent in the prior concluded *ex parte* reexamination proceeding (Control No. 90/009,880), and decided the request for *inter partes* reexamination under Control No. 95/001,738 (concluded by denial; *See* M.P.E.P. § 2694).  As such, M.P.E.P. § 2636 precludes assignment of this reexamination request to Examiner Escalante, and, as such, it is respectfully requested that a different examiner be assigned to review this request.

## III.     REQUIREMENTS FOR INTER PARTES REEXAMINATION UNDER 37 C.F.R. §§ 1.913 AND 1.915

### A.     PAYMENT OF FEES PURSUANT TO 37 C.F.R. § 1.915(a)

As indicated above, Requester authorizes the U.S. Patent and Trademark Office ("PTO") to charge Deposit Account No. 50-0740 under Order No. 032697.0007-US07 for the fees set forth in 37 C.F.R. § 1.20(c)(2) for reexamination. 37 C.F.R. § 1.915(a).  The fee for reexamination is $8,800.00.. 37 C.F.R. § 1.20(c)(2).

### B.     IDENTIFICATION PURSUANT TO 37 C.F.R. § 1.915(b)(1)

*Inter partes* Reexamination of claims 15-18, 21-33, 37-43, 83-86, 89-100, and 103-115 of the '716 patent is respectfully requested.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

### C. CITATION OF PATENTS AND PRINTED PUBLICATIONS THAT PROVIDE A SHOWING THAT THERE IS A REASONABLE LIKELIHOOD THAT REQUESTER WILL PREVAIL WITH RESPECT TO AT LEAST ONE OF THE CLAIMS CHALLENGED IN THE REQUEST PURSUANT TO 37 C.F.R. § 1.915(b)(2)

The accompanying Information Disclosure Statement form PTO/SB/08 ("Exhibit B") lists the patents and printed publications upon which this Request is based. A complete copy of each listed patent and printed publication is included herewith. This request for reexamination is based on the following patents and printed publications:

1.     U.S. Patent No. 5,809,415 to Rossmann ("the '415 patent" or "Rossmann")

2.     The *Nomadic Access to Information Services By A GSM Phone* article (M. Kylänpää et al.) ("the NAIS article" or "NAIS")

3.     U.S. Patent No. 6,333,973 to Smith ("the '973 patent" or "Smith")

4.     U.S. Patent No. 5,406,616 to Bjorndahl ("the '616 patent")

5.     U.S. Patent No. 5,487,100 to Kane ("the '100 patent")

6.     The *Enabling Mobile Network Managers* article (James Reilly, *et al.*, Sixth International World Wide Web Conference)

7.     Japanese Unexamined Patent Application Publication H8-181781 ("the Furuta publication" or "Furuta" or JP H8-181781)

### D. STATEMENT ESTABLISHING A REASONABLE LIKELIHOOD THAT THE REQUESTER WILL PREVAIL WITH RESPECT TO AT LEAST ONE CLAIM (RLP) PURSUANT TO 37 C.F.R. § 1.915(b)(3)

As discussed in detail in Sections VIII and IX below, the present request provides a reasonable likelihood of prevailing with respect to at least one claim for which reexamination is requested. The basis for finding a reasonable likelihood that the Requester will prevail with respect to at least one of the claims for which reexamination is requested is particularly compelling because the present request identifies new prior art references not cited or considered by the Examiner in the original patent examination, or the concluded reexamination proceedings. As explained below, these prior art references are directed to the subject matter identified by the Examiner as reasons for confirming the patentability of claims in the Notice of Intent to Issue *Ex Parte* Reexamination

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

Certificate (NIRC) dated October 25, 2011 in connection with Reexamination Control No.
90/009,880 (referred to herein as "the *ex parte* reexamination proceeding"), as well as other
technical features that establish a reasonable likelihood of prevailing with respect to the claims
presented in this request. The claims of the '716 patent for which reexamination is requested are
identified in III. B. above and discussed below in accordance with 37 C.F.R. § 1.915.

      The present request provides a reasonable likelihood of prevailing with respect to the claims
for which reexamination is requested as it establishes a *prima facie* case of unpatentability
justifying a rejection for each these claims. As explained in M.P.E.P. § 2143, "[t]he key to
supporting any rejection under 35 U.S.C. 103 is the clear articulation of the reason(s) why the
claimed invention would have been obvious." Exemplary rationales that may support a conclusion
of obviousness include: "(A) Combining prior art elements according to known methods to yield
predictable results"; and "(D) Applying a known technique to a known device (method or product)
ready for improvement to yield predictable results." M.P.E.P. § 2143, Rationales "A" and "D". As
detailed in the discussion and claim charts in Sections VIII and IX below, the combinations of prior
art presented in the present Request are at most the mere combination of known elements according
to a known method to yield predictable results, or the mere application of known techniques to a
known system ready for improvement to yield predictable results, thereby establishing a *prima facie*
case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims for which
reexamination is requested.

      As detailed in the discussion and claim charts in Sections VIII and IX below, in accordance
with M.P.E.P. § 2616, the combination of references utilized in the present request provide new,
non-cumulative technological teachings that were not before the Office in the prior proceedings for
the '716 patent, and therefore properly establish RLPs. The new technological teaching of each
cited prior art document is not cumulative to the technological teachings provided in the other cited
prior art documents, because each document presents the new teaching in a new light, particularly in
view of amendments made to certain claims during the course of prosecution of reexamination
Control No. 90/009,880 (*see* M.P.E.P. § 2258.01[1]). In addition, newly cited prior art references

---

[1] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is
one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                    Docket No.: 032697.0007-US07

contained in the present request provide new technological teachings with regard to various claim limitations. For example, as discussed in more detail in Sections V.C. - V.E. below, the NIRC in the *ex parte* proceeding confirms the patentability of claims 1, 15, 30, 44 and 51, as well as claims 70, 83, 97, 110 and 116, stating that the claims require that the cell phone send a request signal to the identified content's location, and not to an intermediate server, such as the InfoCast server disclosed in the Tso patent. As will be explained in more detail in Sections VII-IX below, the prior art patents and publications on which the present request is based disclose this feature - sending a request signal from the cell phone to the identified content's location, and not to an intermediate server. As explained in Sections VII-IX below, this feature is disclosed in, for example, the '973 patent, the '415 patent, the *Enabling Network Managers* Article, and the NAIS article, all of which thus provide a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding. For at least this reason, the present request establishes a reasonable likelihood of prevailing with respect to at least one claim for which reexamination is requested.

Further, the RLPs presented in the present request are not cumulative to the substantial new questions of patentability (SNQs) presented in the Request for *Inter Partes* Reexamination filed on September 6, 2011[2], Control No. 95/001,738 (referred to herein as "the denied *inter partes* reexamination"), because the Examiner's denial of that request was based, at least in part, on the <u>original claims as issued in the '716 patent</u>, and <u>not</u> on various <u>claims that were substantively amended to distinguish over the prior art during the course of the prosecution of reexamination Control No. 90/009,880, and now issued in the reexamination certificate</u>. For example, as discussed above, both the '973 patent and the *Enabling Network Managers* Article disclose the feature of sending a request signal from the cell phone to the identified content's location, and not to an intermediate server, which led to the confirmation of patentability of claims 1, 15, 30, 44 and 51 <u>as amended</u>, as well as <u>new</u> claims 70, 83, 97, 110 and 116, in the *ex parte* proceeding. Neither the

---

discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."
[2] The PTO issued an Order Denying the Request for *Inter Partes* Reexamination (reexamination control number 95/001,738) of the '716 patent on November 4, 2011.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

'973 patent nor the *Enabling Network Managers* Article was included in the Request for *Inter Partes* Reexamination filed on September 6, 2011, and the technological teaching regarding the feature of sending a request signal from the cell phone to the identified content's location, and not to an intermediate server, was not discussed on the record or considered by the Examiner in denying the request. For at least this reason as well, the RLPs included in the present request are not cumulative to the substantial new questions of patentability (SNQs) presented in the Request for *Inter Partes* Reexamination filed on September 6, 2011.

In addition, as discussed in more detail in Sections V.C. - V.E. below, consistent with the statements in the NIRC in the *ex parte* reexamination proceeding, the Order in the denied *inter partes* reexamination construed the limitation regarding "a time the content is available" as recited, for example, in claim 22, to relate to the <u>content itself</u>, and not to an identifier of the content. As will be explained in more detail in Sections VII-IX below, the prior art patents and publications on which the present request is based disclose this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As explained in Sections VII-IX below, this feature is disclosed in, for example, the '100 patent and the Japanese Unexamined Patent Application Publication H8-181781 (Furuta), both of which thus provide a new, non-cumulative technological teaching not considered by the Examiner in either the *ex parte* reexamination proceeding or in the denied *inter partes* reexamination. For at least this reason as well, the present request establishes a reasonable likelihood of prevailing with respect to at least one claim for which reexamination is requested.

Finally, the RLPs presented in the present request are not cumulative to the original prosecution history of the patent for at least the reason that the teachings of the newly cited references were not discussed on the record or otherwise considered by the Examiner during the original examination.

### E.    STATEMENT POINTING OUT A DETAILED EXPLANATION OF THE PERTINENCY AND MANNER OF APPLYING REFERENCES PURSUANT TO 37 C.F.R. § 1.915(b)(3)

A detailed explanation of establishing a reasonable likelihood that the Requester will prevail with respect to at least one claim is found below in Section VIII. Requester has identified the prior

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

art relied upon in Section I.C above, and has discussed aspects of the relied upon prior art in Section V below. As explained in Sections VII and VIII, and as shown in the accompanying claim charts in Section IX, the prior art references or combination of references render claims 15-18, 21-33, 37-43, 83-86, 89-100, and 103-115 unpatentable, in compliance with the relevant statutes, rules and procedures.

### F.      COPIES OF PRIOR ART AND TRANSLATIONS PURSUANT TO 37 C.F.R. § 1.915(b)(4)

As discussed above in Section III.C, a copy of every patent and printed publication relied upon in this Request is included as an attachment to the accompanying Information Disclosure Statement form PTO/SB/08 as an exhibit as required by 37 C.F.R. § 1.915(b)(4).

### G.      COPY OF THE '716 PATENT PURSUANT TO 37 C.F.R. § 1.915(b)(5)

Pursuant to 37 C.F.R. § 1.915(b)(5), annexed hereto as Exhibit A is a copy of the entire '716 patent including the front face, drawings, specification, and claims (in double column format). A copy of the Certificate of Correction dated May 12, 2009 is also enclosed as Exhibit A. A copy of the Terminal Disclaimer Applicant filed on March 30, 2007 and a copy of the U.S. Patent and Office's approval of the Terminal Disclaimer on April 16, 2007 are also enclosed as Exhibit A. Finally, a copy of the *Ex Parte* Reexamination Certificate dated December 13, 2011 is also enclosed in Exhibit A.

### H.      CERTIFICATION OF SERVICE ON PATENT OWNER PURSUANT TO 37 C.F.R. § 1.915(b)(6)

The undersigned certifies that a complete and entire copy of this Request for *Inter Partes* Reexamination and all supporting documents have been provided to the Patent Owner by serving the attorneys of record as recorded at the Patent Office for the '716 patent as set forth in 37 C.F.R. § 1.33(a).

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                         Docket No.: 032697.0007-US07

Law Offices of Steven G. Lisa, LTD.
c/o Intellevate, LLC.
P.O. Box 52050
Minneapolis, MN 55402
Attn: Jon E. Kappes

## I.      CERTIFICATION THAT ESTOPPEL PROVISIONS DO NOT PROHIBIT INTER PARTES REEXAMINATION PURSUANT TO 37 C.F.R. § 1.915(b)(7)

Requester hereby certifies that it is not prohibited under the provisions of 35 U.S.C. § 317 or
37 C.F.R. § 1.907 from filing this Request for *Inter Partes* reexamination. Requester may request
*Inter Partes* reexamination for at least the reason that there is no currently co-pending *Inter Partes*
reexamination of the '716 patent. 37 C.F.R. § 1.907; 35 U.S.C. § 317(a); M.P.E.P. § 2614.

## J.      STATEMENT IDENTIFYING REAL PARTY IN INTEREST PURSUANT TO 37 C.F.R. § 1.915(B)(8)

The real parties in interest are identified in the Request for *Inter Partes* Reexamination
Transmittal Form PTO/SB/58 filed herewith (item 2.b.).

## IV.     PRIOR REEXAMINATION PROCEEDINGS, AND CONCURRENT AND PREVIOUS LITIGATION INVOLVING THE '716 PATENT

### A.      Prior *Ex Parte* Reexamination Proceeding

The Office is hereby informed of the following *Ex Parte* reexamination proceeding for U.S.
Patent No. 7,449,716: Control No. 90/009,880, filed February 25, 2011.  An *Ex Parte*
Reexamination Certificate issued on December 13, 2011.

### B.      Previously Filed Inter Partes Request for Reexamination

The Office is also informed that a Request for *Inter Partes* Reexamination was filed for U.S.
Patent No. 7,449,716: Control No. 95/001,738, filed on September 6, 2011. This proceeding was
concluded by denial of the Request in a decision dated November 4, 2011.

15

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

### C.     Concurrent Litigation

The Office is also hereby informed of the following litigation, which is pending as of the date of this request, involving the '716 patent:

On November 30, 2010, plaintiff Helferich Patent Licensing, LLC filed a second amended complaint in *Helferich Patent Licensing, LLC v. New York Times Co.*, Case No. 1:10CV4387 (N.D. Ill.), asserting the '716 patent. The original complaint had been filed on July 14, 2010.

On September 30, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. Best Buy Co., Inc.*, Case No. 1:11CV6914 (N.D. Ill.), asserting the '716 patent.

On October 11, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. The Bon-Ton Stores, Inc.*, Case No. 1:11CV7189 (N.D. Ill.), asserting the '716 patent.

On October 18, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. G4 Media, LLC*, Case No. 1:11CV7395 (N.D. Ill.), asserting the '716 patent.

On October 25, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. CBS Corporation*, Case No. 1:11CV7607 (N.D. Ill.), asserting the '716 patent.

On October 26, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. Bravo Media, LLC*, Case No. 1:11CV7647 (N.D. Ill.), asserting the '716 patent.

On November 1, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. ValueVision Media, Inc.*, Case No. 1:11CV7766 (N.D. Ill.), asserting the '716 patent.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

On November 22, 2011, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. Suns Legacy Partners LLC*, Case No. 2:2011cv02304 (D. Ariz.), asserting the '716 patent.

On December 14, plaintiff Helferich Patent Licensing, LLC filed a complaint in *Helferich Patent Licensing, LLC v. Phoenix Newspapers Inc.*, Case No. 2:11cv02476 (D. Ariz.), asserting the '716 patent.

In the above-identified litigations, U.S. Patent No. 7,835,757 ("the '757 patent") and U.S. Patent No. 7,280,838 ("the '838 patent'), which are directed to related subject matter, have also been asserted against the *ValueVision Media*, *Bon-Ton Stores*, *Best Buy Co.*, *G4 Media*, *Suns Legacy Partners* and *Phoenix Newspapers* defendants. In the above identified litigations, the '757 patent, the '838 patent, and U.S. Patent No. 7,155,241, which is also directed to related subject matter, have been asserted against the *Bravo Media*, *CBS Corporation*, and *Suns Legacy Partners* defendants.

In the above-identified litigations, the court has yet to schedule a Markman hearing to construe any claim terms. The PTO and the courts recognize that the standard for construing claims in reexamination is different than the standard for construing claims in litigation. Unlike in litigation, claims in reexamination must be given the broadest reasonable construction consistent with the specification. M.P.E.P. § 2258. This request utilizes the broadest reasonable construction of the claim terms that is consistent with the specification, which in many instances will not reflect the construction that Requester would propose or expect the court to adopt in litigation. The original complaints for each identified litigation is attached hereto as Exhibit C.

### D.    Previous Litigation

The Office is also hereby informed of the following previous litigations, which are not pending as of the date of this request, involving the '716 patent. A review of the public record reveals that the plaintiff, Helferich Patent Licensing, LLC, dismissed each of these cases at an extremely early stage of the corresponding litigation where no substantive rulings had been made.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

    *Helferich Patent Licensing, LLC v. Huawei Technology Co., Ltd., et al.*, Case No.
1:10CV7387 (N.D. Ill.) (filed November 16, 2010);

    *Helferich Patent Licensing, LLC v. Palm, Inc.,* Case No. 1:10CV2411 (N.D. Ill.) (filed April
19, 2010);

    *Helferich Patent Licensing, LLC v. Hewlett-Packard Company,* Case No. 1:10CV1905
(N.D. Ill.) (filed March 25, 2010);

    *Helferich Patent Licensing, LLC v. Sanyo Electronic Co., Ltd., et al.*, Case No. 1:09CV7053
(N.D. Ill.) (filed November 10, 2009);

    *Helferich Patent Licensing, LLC v. Panasonic Corp., et al.*, Case No. 1:09CV3557 (N.D.
Ill.) (filed June 11, 2009); and

    *Helferich Patent Licensing, LLC v. NEC Corp., et al.,* Case No. 1:09CV3558 (N.D. Ill.)
(filed June 11, 2009).

## V.    OVERVIEW OF THE '716 PATENT AND REMARKS MADE DURING PROSECUTION

### A.    The Disclosure of the '716 Patent

    The '716 patent pertains to selective paging. According to the '716 patent, a paging system
notifies a paging transceiver that a message has been received but does not initially transmit the
associated message. The user, upon being notified of the message, can then download the entire
message at a time convenient to the user, which allows the user to download messages at less-
expensive off-peak hours and allows the user to place the paging transceiver at a location where it
can easily receive the message and reply to the message. Since the messages are not initially
transmitted to the paging transceiver, the paging transceiver can receive and store a greater number
of pages with minimal increase in the size of memory. Further, because entire messages are not
automatically transmitted and since the user can position the paging transceiver to issue a
sufficiently strong reply, traffic in the paging system can be controlled and actually reduced. '716
patent, 3:3-19.

### B.    Summary of the Prosecution History of the '716 Patent

    The '716 patent was filed with only one claim, which was a method claim. In the first Office
Action dated October 3, 2006, claim 1 was rejected under 35 U.S.C. § 112, ¶ 2, as being indefinite

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

for failing to particularly point out and distinctly claim the subject matter which the applicant regards as the invention. Claim 1 was also rejected on the grounds of nonstatutory obviousness-type double patenting as being unpatentable over claim 32 of U.S. Patent No. 6,233,430. There were no prior art based rejections in this Office Action.

In response to the October 3, 2006 Office Action, Applicant filed an Amendment and a Terminal Disclaimer on March 30, 2007. In the Amendment, the Applicant amended claim 1 in order to overcome the rejection under 35 U.S.C. § 112, ¶ 2, and added claims 2-35.

In a filing on June 6, 2007, the Applicant submitted the remarks (as an Affidavit under 37 C.F.R. § 1.132) that were also (and originally) filed in connection with application Serial No. 11/082,913 (now U.S. Patent No. 7,280,838) that traversed the rejection of various claims under 35 U.S.C. §§ 101, 112, ¶ 1, and 132 in the '913 application.[3]

The Patent Office issued a Notice of Allowance and Notice of Allowability on August 23, 2007, allowing all pending claims, 1-13 and 15-70. The Notice of Allowability stated:

> The Affidavit under 37 CFR 1.132 filed 06/06/2007 is sufficient to overcome the rejection of claims 1-13 and 15-70 based upon the view of the examiner on co-pending application 11/082,913 drawing to a similar situation under USC 101 as lacking utility and to 35 USC 112, first paragraph.

> August 23, 2007, Notice of Allowability, pg. 2

The August 23, 2007 Notice of Allowability also included the following Reasons for Allowance:

> The prior art of record fails to teach or suggest a system and its corresponding method, wherein the method comprising: receiving a notification at a cell phone, the notification at least identifying content intended for the cell phone and identifying the content's location, and identifying the type of content from among at least text, image, audio, and

---

[3] In particular, the Applicant stated the following: "In Applicant's co-pending Application Serial No. 11/082,913, the same Examiner handling this case entered a rejection based primarily on 35 U.S.C. § 112, first paragraph, noting that certain claim terms were, in his view, not described in the specification as originally filed. Since some of the same or similar terms are used in the claims pending in this application, Applicant wishes to make of record and provide for the Examiner's consideration, in the above-captioned application, the Remarks portion (pages 17 - 45) of Applicant's response that was filed in the co-pending '913 application."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

> video content wherein alerting informing a user of the cell phone that the
> notification has been received; receiving input from the user indicating
> that the content should be downloaded to the cell phone; generating a
> request signal including a request to download the content; and sending
> the request signal from the cell phone so that the desired content may be
> downloaded to the phone; and receiving the desired content to the cell
> phone only in response to sending the request signal as claimed in claims
> 1, and similarly for a content communication system of claim 7[4], a method
> that delivers content to an intended recipient of claim 18[5], a wireless
> communication system of claim 29, and its method of claim 52.
>
> August 23, 2007, Notice of Allowability, pp. 2-3.

The Applicant paid the issue fee on August 27, 2007.

On January 24, 2008, the Applicant petitioned to withdraw the application from issue
pursuant to 37 C.F.R. § 1.313(c) because "Applicant has recently been made aware of several
references that were brought to the Applicant's attention during negotiations with a third party
regarding the parent patents." January 24, 2008 Petition, pg. 1. The Applicant also filed a Request
for Continued Examination (RCE) with an accompanying Information Disclosure Statement on
January 24, 2008.

On January 30, 2008, the Applicant filed an Amendment that added claims 71-114.

In an Office Action dated June 30, 2008, claims 1-13 and 15-70 were allowed. The Office
Action stated that the Applicant's remarks filed on June 6, 2007 were sufficient to overcome the
rejection of claims 1-13 and 15-70. The Office Action also stated that claims 71-114 are directed to
a plurality of inventions that are independent or distinct from the invention originally claimed and
were withdrawn from consideration as being directed to a non-elected invention since the Applicant
received an action on the merits for the originally presented invention. The Examiner provided the
same Reasons for Allowance for claims 1-13 and 15-70 as in the prior Notice of Allowability dated
August 23, 2007.

---

[4] Independent system claim 7 during prosecution issued as independent claim 15 of the '716 patent.
[5] Independent method claim 18 during prosecution issued as independent claim 30 of the '716 patent.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

In an Amendment pursuant to 37 C.F.R. § 1.312 filed on July 2, 2008, the Applicant made various amendments to the claims. The Applicant amended claim 15, which issued as claim 22, as follows:

> 15. (Currently Amended) The system of claim 15, wherein the content's location is identified based on an address of a computer system, and wherein the data signal specifies a time that the content is available.

A Notice of Allowance and Notice of Allowability were issued on January 9, 2009. The Notice of Allowability for claims 1-13 and 15-70 provided the same statement regarding the Affidavit under 37 C.F.R. § 1.132 filed 06/06/2007, and the same Reasons for Allowance, as in the August 23, 2007 Notices of Allowance and Allowability.

### C.    Summary of the Prosecution History of the *Ex Parte* Reexamination Proceeding of the '716 Patent

On February 25, 2011, a request for *Ex Parte* reexamination was filed for the '716 patent, reexamination Control No. 90/009,880, requesting reexamination of claims 1-18 and 21-69. The PTO ordered reexamination of the '716 patent on March 25, 2011.

On June 17, 2011 a first office action issued that rejected claims 1-16, 17, 18, 21-30, 32, 33, 36-42, 44-57 and 56-69 over U.S. Patent No. 6,047,327 to Tso et al. ("the Tso patent" or "Tso"), and confirmed claims 16, 31, 34, 35, 43 and 58.  A request for reconsideration was filed on June 29, 2011 that included remarks, but did not include any amendment to any of the claims.

On August 5, 2011, a Final Office Action issued that rejected claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57 and 59-69 over the Tso patent, and confirmed claims 2, 16, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52 and 58.

On October 5, 2011, an amendment after final action was filed.  Notwithstanding that a final rejection had been issued, and that no showing was provided in accordance with 37 C.F.R. § 1.116(b) and M.P.E.P. § 2272, new claims 70-134 were newly added, and the following amendments were entered.[6]

---

[6] In addition, confirmed dependent claims 2, 16, 19, 20, 22, 31, 34, 35, 38, 43, 48, 52, 58 were amended into independent form.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                          Docket No.: 032697.0007-US07

Claim 1 was amended to recite "sending the request signal from the cell phone <u>to the identified content's location</u> so that the desired content may be downloaded to the phone;"

Independent claim 15 was amended to recite "a memory controller including a processor coupled to the memory configured to cause a <u>paging</u> data signal to be directed to a cell phone… wherein the memory controller is configured to direct the content corresponding to the content identifier from the memory to the cell phone only upon receiving a request from the cell phone <u>at the identified content's location</u> to do so."

Independent claim 30 was amended to recite "causing a <u>paging</u> data signal to be directed to a cell phone… transmitting the available content corresponding to the content identifier to the cell phone upon receiving a request <u>at the identified content's location</u> to do so."

Independent claim 44 was amended to recite "wherein the radio transmitter is configured to send via the antenna the content corresponding to the notification to the cell phone only upon receiving a request from the cell phone <u>at the identified content's location,</u> to send it."

Independent claim 51 was amended to recite "(b) sending a request <u>to the identified address of the remote content storage system</u> to retrieve the content from the remote content storage system via a cellular network, the request including information at least identifying the content and the address of the remote content storage system."

A Notice of Intent to Issue Reexamination Certificate (NIRC) was issued on October 25, 2011 for claims 1-134.  As discussed below, the NIRC contained a number of statements that explain the reasoning for confirming patentability of the claims, particularly in light of the Tso patent.

As noted above, each of claims 1, 15, 30, 44, and 51 was amended to recite a limitation whereby the request signal from the cell phone is received at the identified content's location. Although the Examiner disagreed with the patent owner's assertions regarding the "resource identifier" disclosed in the Tso patent, the Examiner noted the following in the NIRC:

> Nonetheless, the examiner notes that while the patent owner's arguments in general are not agreed upon with respect to the examiner's interpretation of "resource identifier", the examiner concedes that **the claims as amended make it clear that the client device must send the request signal (in for example claim 1) to the identified content's location**.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

> As noted above, **Tso discloses that the request signal is directed to the InfoCast Server and not to the system identified in the resource identifier**.
>
> Reexamination Control No. 90/009,880, NIRC, pg. 7 (emphasis added).

Similarly, with respect to newly added independent claims 70, 83, 97, 110 and 116 that include a similar limitation, the NIRC states:

> The examiner notes that the above claims are similar to claims 1, 15, 30, 44 and 55 [sic] respectively. As noted by the patent owner, these claims 'further recite use of an included system identifier to establish to the cell phone an address of a particular system to which to respond.' The patent owner notes that these new claims recite 'both the term "system identifier' and for clarity, the associated definition expressly.
>
> The examiner disagrees that ' ... and identifying the content's location using an included system identifier that establishes to the cell phone an address of a particular system to which to respond ...' represents a definition of the term system identifier. This phrase represents a limitation from the specification regarding how a system identifier is used.
>
> Nonetheless, the examiner notes that like claims 1, 15, 30, 44 and 55 [sic], note above, **Tso does not disclose** of a notification (e.g. as recited in claim 1) which includes **a system identifier "that establishes to the cell phone the address of a particular system to which to respond" as well as the sending of the a request signal "to the particular system established by the system identifier**."
>
> As explained above, Tso sends a request to the InfoCast server. The system identifier of the InfoCast server is independent of the system identifier identified in the resource identifier. The examiner notes that Tso does not contact the location of the content until a fully qualified URL is received by the client device and a subsequent request is made. Thus, **Tso's InfoBite does not comprise "an included system identifier that establishes to the cell phone an address of a particular system to which to respond**".
>
> Reexamination Control No. 90/009,880, NIRC. pp. 12-13 (emphasis added).

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                     Docket No.: 032697.0007-US07

In sum, the NIRC confirms the patentability of claims 1, 15, 30, 44 and 51, as well as claims 70, 83, 97, 110 and 116, stating that the claims require that the cell phone send a request signal to the identified content's location, and not to an intermediate server, such as the InfoCast server disclosed in the Tso patent.  As will be explained in more detail in Sections VII-IX below, the prior art patents and publications on which the present request is based disclose this feature[7] - sending a request signal from the cell phone to the identified content's location, and not to an intermediate server - thereby providing a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding for the '716 patent.  For at least this reason, the present request establishes a reasonable likelihood of prevailing with respect to at least one claim for which reexamination is requested.

The NIRC also provides an explanation with respect to claims 2, 22, 38, 48 and 52, each of which recites a limitation regarding "a time that the content is available."  The NIRC contains the following explanation with respect to these claims:

> The examiner concedes that the Info Bite of Tso does not indicate a time that <u>the content is available.</u> Instead, as Tso clearly indicates, the "Time-To-Live" value is a time value <u>for the Info Bite</u> in the client device. That is, how long the InfoBite will remain in the client device.
>
> Thus, the examiner now maintains that Tso fails to disclose wherein the notification that is sent to the client device indicates a time the content is available.
>
> Reexamination Control No. 90/009,880, pg. 7 (underline emphasis in original).

In sum, the NIRC confirms the patentability of claims 2, 22, 38, 48, and 52, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available.

---

[7] As explained in Sections VII-IX below, this feature is disclosed in, for example, the '973 patent, the '415 patent, the *Enabling Network Managers* Article, and the NAIS article, all of which thus provide a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

### D.       Summary of the Prosecution History of the *Inter Partes* Reexamination Proceeding of the '716 Patent

On September 6, 2011, a request for *Inter Partes* reexamination was filed for the '716 patent, requesting reexamination of claims 15, 17, 18 and 21-29. The PTO issued an Order ("Order") denying the Request on November 4, 2011, thereby concluding the proceeding by denial. In denying the Request, the Order stated that U.S. Patent No. 5,809,415 to Rossmann, U.S. Patent No. 6,119,167 to Boyle et al., and the NAIS Article as proposed and cited therein (and prior to the issuance of the *Ex Parte* Reexamination Certificate), did not present a substantial new question of patentability that was not previously asserted.

Consistent with the statements in the NIRC in the *ex parte* reexamination proceedings, the Order in the *inter partes* reexamination proceeding construed the limitation regarding "a time the content is available" as recited, for example, in claim 22, to relate to the content itself, and not to an identifier of the content.  As will be explained in more detail in Sections VII-IX below, the prior art patents and publications on which the present request is based disclose this feature[8] - notification indicating a time the content itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available - thereby providing a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding for the '716 patent.  For at least this reason as well, the present request establishes a reasonable likelihood of prevailing with respect to at least one claim for which reexamination is requested.

### E.       Claim Interpretation During Reexamination

In proceedings before the U.S. Patent and Trademark Office, including reexamination proceedings, claims are to be given their ***broadest*** reasonable interpretation ***consistent with the specification***, and claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art.  *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) (emphasis added); *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984) (broadest reasonable interpretation, consistent with the specification, applies in reexamination proceedings) (emphasis

---

[8] As explained in Sections VII-IX below, this feature is disclosed in, for example, the '100 patent and the JP H8-181781 application (Furuta), both of which thus provide a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                          Docket No.: 032697.0007-US07

added); M.P.E.P. § 2258; *see* § 2658 (citing § 2258). Moreover, limitations in the specification are
**not** read into the claims. *Yamamoto*, 740 F.2d at 1571; M.P.E.P. § 2258.

     Of the claims for which reexamination is requested, independent claims 22 and 38, as well
as dependent claims 90, 105, and 114, recite a notification that specifies "***a time*** that the content is
available" (emphasis added). For the reasons set forth below, Requester submits that the broadest
reasonable interpretation consistent with the specification for specifying "***a time***" that the content is
available encompasses specifying a certain or set clock time.

     The specification of the '716 patent describes two alternative ways of specifying "time": (i)
a "certain time of day" or "set time"; or (ii) "period of time." For example, as explained at column
5, line 66 - column 6, line 4 of the '716 patent (emphasis added):

> The transceiver 2 also preferably includes a delay circuit 28. The delay circuit 28 may
> comprise a timer which informs the processor 27 of when a period of time has expired. The
> timer, for instance, may expire at <u>a certain time of day, week, or month</u>, **or** may expire <u>a
> fixed period of time</u> after a triggering event, <u>such as one hour</u> after the event.

     The above passage describes two alternative ways of specifying time - a certain time of day,
**or** a period of time, such as a duration of one hour. Similarly, column 11, lines 1-4 of the '716
patent also describes these two alternative ways of specifying time (emphasis added):

> As discussed above, the delay circuit 28 may be a timer which expires at <u>a set time, such as
> at 1:00 a.m.</u>, when traffic and costs are low **or** may expire after <u>a period of time, such as 1
> hour</u>. The <u>set time</u> **or** the <u>period of time</u> may be programmed by the user or may be
> determined by default values.

     The consistent and repeated use of the disjunctive term **or** in the passages cited above from
the '716 patent make clear to one skilled in the art that a "certain time" or "set time" such as 1:00
a.m. is distinct from a "period of time" such as one hour. As such, the specification of the '716
patent would be understood by one skilled in the art to describe two alternative ways of specifying
"a time." Moreover, the specification of the '716 patent repeatedly uses the term "period of time"
in those situations where "time" was meant to be <u>limited</u> to a duration, such as one hour. *See, e.g.,*
'716 patent, 8:37-41 ("If an acknowledgment is not a system requirement, as determined at step 70,
. . . ,the system 30 sets a timer at step 64 and <u>waits a period of time</u> before proceeding to step 65.")
(emphasis added); 11:42-46 ("For example, if the system 30 erases a message that has resided in its

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

memory <u>for too long a period of time</u>, . . . ,the system 30 may inform the paging transceiver 100 that the message no longer exists.") (emphasis added).

Therefore, the interpretation for specifying "*a time* that the content is available" cannot be limited to *__require__* that "a period of time," *i.e.,* a time period or duration of time, be specified; such an interpretation would exclude the alternative method of specifying a time described in the specification - a "set time" or "certain time" of day - and, as such, would ***not*** be the ***broadest*** reasonable interpretation ***consistent with the specification*** as required by the M.P.E.P. and Federal Circuit case law. Moreover, an interpretation for specifying "*a time* that the content is available" that <u>requires</u> "<u>a period of</u> time" to be specified impermissibly reads a limitation from the specification into the claims. *Yamamoto*, 740 F.2d at 1571; M.P.E.P. § 2258. Although the broadest reasonable interpretation consistent with the specification may encompass "a period of time," a proper interpretation cannot be ***limited*** to a period of time.

For at least the reasons discussed above, Requester submits that the broadest reasonable interpretation consistent with the specification for specifying "*a time*" that the content is available encompasses specifying a certain or set clock time that the content is available. Applying the broadest reasonable interpretation consistent with the specification, the limitation recited in independent claims 22 and 38, as well as dependent claims 90, 105, and 114, that a notification specifies "*a time* that the content is available" is met when the notification specifies a "set time" or "certain time" of day that the content itself is available.

## VI.     PATENT OWNER'S CLAIM INTERPRETATIONS MADE IN A COURT RECORD

The following section contains excerpts from various complaints filed by the patentee pertaining to alleged infringement of the claims of the '716 patent. The originally filed complaints identified in Section IV.C are attached hereto as Exhibit C.

Although request for reexamination is limited to prior art patents and printed publications, the Examiner may also consider admissions by the patent owner of record in the file or in a court record. *See* M.P.E.P. § 2617(III). An admission by the patent owner of record in the file or in a court record may be utilized in combination with a patent or printed publication. *Id.* The admission

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                               Docket No.: 032697.0007-US07

can reside in the patent file (made of record during the prosecution of the patent application) or may be presented during the pendency of the reexamination proceeding or in litigation. *Id.*

The following paragraphs are quoted from the originally filed Complaint in *Helferich Patent Licensing, LLC v. Best Buy Co., Inc.*, No. 1:11-cv-06914 (N.D. Ill. Sept. 30, 2011). This information is provided to inform the Examiner of the breadth of the constructions asserted by the patentee in the litigation with respect to certain features the patentee contends are covered by the '716 patent.

> 8. The '716 patent provides for methods and systems that relate to wireless messaging to mobile devices (e.g., cellular devices). More particularly, the patent includes claims that relate to the transmission of notification messages to mobile devices that include an identifier (such as a URL) that identifies available content that may be provided to a mobile user upon request, examples of which are shown in Paragraph 14, below. Additionally, in some instances, the notifications include a time the identified content is to be available. An example of such a notification is an SMS "24 hour sale" offering, wherein the notification includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available. After the specified time has expired, the content provider either removes or changes the content.

> 15. Within the last six (6) years, Best Buy has initiated and caused millions of infringing messages to be sent in connection with at least the following product and service offerings:

> a) Best Buy's "Hot Deals" Mobile Alert, whereby Best Buy causes thousand, if not millions, of infringing messages to be sent to its customers' mobile devices alerting them to the "Deal of the Week." The "Deal of the Week" item is typically reduced in price for a limited period of time. After the period lapses, Best Buy modifies the linked content to reflect the regular price of the item. For example, on October 10th, 2009, Best Buy sent an SMS message to its "Hot Deals" Mobile Alert subscribers for a week-long deal starting on October, 11th, 2009. The SMS message linked to the product page for the listed item at the price indicated in the alert. As of October 19th, 2009, the "Deal of the Week" price was replaced with the regular item price. Figures 1 and 2, below, show the message and the content retrieved.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07



**Figure 1.**
Screenshot of message sent from Best Buy's
Hot Deals Mobile Alert Program on October 10th, 2009.



**Figure 2.**
Screenshot of the content linked to from Best Buy's
Hot Deals Mobile Alert Program on October 10th, 2009,
as viewed on October 19th, 2009.

(b) Best Buy also causes infringing messages to be sent through its various social media websites. For example, in conjunction with its @BestBuy_Deals Twitter feed, Best Buy causes thousands, if not millions, of infringing SMS messages to be sent to its "followers" daily. As demonstrated below, many of the messages indicate the time the content is available; and others contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by Best Buy's customers, such as: changing prices, updated user reviews, and indications for when a product has sold out, as shown below in Figures 3 and 4.

29

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07



**Figures 3 and 4.** Content pushed through the
@BestBuy_Deals Twitter feed including both dynamic
and time sensitive content.

27. HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes notifications of the type described in Paragraph 8 to be sent to its customers' mobile devices. HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 15, above.

## VII. OVERVIEW OF THE PRIOR ART PATENTS AND PRINTED PUBLICATIONS

The following section provides an overview of the prior art patents and printed publications discussed in this request. The application issuing as the '716 patent claims priority as a continuation of U.S. patent application Ser. No. 09/688,282, filed on October 13, 2000 (now U.S. Patent No. 7,039,428), which claims priority as a divisional of U.S. patent application Ser. No. 08/933,344, filed on September 19, 1997 (now U.S. Patent No. 6,253,061). In establishing that the cited documents qualify as prior art, Requester has ***assumed*** an effective priority date of September 19, 1997, but reserves the right to challenge the priority date as appropriate issues arise during the course of the proceeding.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

### A.        U.S. Patent No. 5,809,415 to Rossmann ("the '415 patent")

The '415 patent was filed on December 11, 1995 and, as such, qualifies as prior art to the '716 patent under 35 U.S.C. § 102(e). The '415 patent was submitted to the Examiner in an Information Disclosure Statement during prosecution of the '716 patent. However, the '415 patent was not cited or applied by the Examiner during prosecution of the application that gave rise to the '716 patent, nor were any teachings of the '415 patent discussed on the record. Accordingly, the portions of the '415 patent discussed below were not relied upon, or otherwise addressed, in a rejection during the original examination of the '716 patent. As such, the instant Request presents the teachings of the '415 patent in a "new light" that was not considered by the Examiner during original examination.

The '415 patent was submitted in the *ex parte* reexamination proceeding in an Information Disclosure Statement dated November 2, 2011 ("the November 2d IDS"), along with a petition under 37 C.F.R. § 1.182 to consider the November 2d IDS as this IDS was filed **after** the October 25, 2011 NIRC.  In a decision dated December 22, 2011, the petition was dismissed, denying entry of the November 2d IDS for consideration by the Examiner.  Accordingly, none of the documents cited in the November 2d IDS, including the '415 patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding.[9]  As such, the instant Request presents the teachings of the '415 patent in a "new light" that was not considered by the Examiner during the *ex parte* reexamination proceeding.

Figure 1 of the '415 patent illustrates one embodiment of the invention that includes the two-way data communication devices. In Figure 1, the cellular telephone user must address, i.e., connect to, each computer of interest to access the different services. Consequently, each computer requires the information necessary to communicate with cellular telephone **100** with display **105**. In another embodiment, cellular telephone **100** contacts a single central computer over data capable

---

[9] The patentee also subsequently filed an additional IDS submission in the *ex parte* reexamination proceeding on November 28, 2011.  Although no petition accompanied the November 28th IDS, such a petition would be denied for the same reasons as for the November 2d IDS, and, as such, none of the documents cited in the November 28th IDS have been considered on the record during the *ex parte* reexamination proceeding, including the '415 patent.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

cellular telephone network **110**. This computer is connected to each of the other networks illustrated in Figure 1. Consequently, the use of cellular telephone **100** sends a message including a resource locator to the central computer, the central computer processes the message and retrieves the information addressed by the resource locator from the appropriate network shown in Figure 1. After the requested information is retrieved, the central computer generates a card deck and transmits the card deck to cellular telephone **100**. In this embodiment, only one computer must be configured to communicate with cellular telephone **100**. '415 patent, 19:1-19.



**FIG. 1**

The client process on a two-way data communication device can initiate an interaction with a particular server computer. The server computer transmits (i) information to the client process to generate a user interface, and (ii) a resource locator for each possible selection by the user from the user interface. The resource locators can address applications on the server computer, applications on over server computers, or an application on the server computer that in turn accesses other server computers. Consequently, the user of a two-way data communication device is limited only by the applications provided on the server computers. '415 patent, 19:20-41.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

Network **150** is a two-way data communication network that interconnects any one, any combination, or all of two-way data communication devices **100**, **101**, or **102**, with a wide variety of computer networks **120**, **130**, and **140**. Each two-way data communication device **100**, **101**, and **102** can be configured to transmit data to and receive data from any desired combination of computers on computer networks **120**, **130**, and **140**. '415 patent, 7:57 - 8:3.

Each wireless communication device **100** can communicate over network **150** with any server computer **121**, **131**, and **141** on network **150**. Thus, device **100** can access information on the computer network and provide information to the computer network. Similarly, a two-way pager **101**, and a telephone **102** with a modem **103**, can communicate over network **150** with any of server computers **121**, **131**, and **141**. '415 patent, 8:4-17.

Specifically, a wireless communication device **100** e.g., a cellular telephone, with a telephone like keypad, communicates via a data capable cellular telephone network **110**, e.g., a cellular digital packet data telephone network, with an application on a server computer on a computer network that has an interface to data capable cellular telephone network **110**. For example, the computer network can be a corporate wide area network **120**, a corporate local area network **130**, or perhaps the Internet **140**. '415 patent, 8:37-45.

Similarly, a two-way pager **101** communicates via a two-way pager network **111** with an application on a server computer on a computer network that has an interface to two-way pager network **111**. Again, for example, the computer network can be a corporate wide area network **120**, a corporate local area network **130**, or perhaps the Internet **140**. Finally, a telephone **102** communicates via a modem **103** and public switched telephone network **112** with an application on a server computer on a computer network that has an interface to public switched telephone network **112**. As with the other two-way data communication devices, the computer network can be, for example, a corporate wide area network **120**, a corporate local area network **130**, or perhaps the Internet **140**. '415 patent, 8:46-59.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

If initially, two-way pager **101** receives a response to a message from an application on server computer **121** on corporate wide area network **120**, the interpreter in two-way pager **101** generates a user interface on display screen **106** using information in the message. Options presented in the user interface can allow the user to access information, or provide information to any one, any combination of, or all of networks **120**, **130**, and **140**. '415 patent, 10:14-23.

As discussed above in section V.C, independent claim 15 was amended to recite "a memory controller including a processor coupled to the memory configured to cause a <u>paging</u> data signal to be directed to a cell phone... wherein the memory controller is configured to direct the content corresponding to the content identifier from the memory to the cell phone only upon receiving a request from the cell phone <u>at the identified content's location</u> to do so."

Independent claim 30 was amended to recite "causing a <u>paging</u> data signal to be directed to a cell phone... transmitting the available content corresponding to the content identifier to the cell phone upon receiving a request <u>at the identified content's location</u> to do so."

The Examiner indicated that these were the features that distinguished claims 15 and 30 over the prior art. *See* IFW of Reexamination Control No. 90/009,880, NIRC, pg. 7. Newly added independent claims 83, 97 and 110 recite the same or substantially same limitations.

The '415 patent discloses this feature, among others. For example, the '415 patent discloses that the cellular telephone transmits a request for content from the cellular telephone to the identified content's location:

> "In another example, the user of cellular telephone 100 connects to Internet service provider computer 141 on Internet 140 using data capable cellular telephone network 110. Upon connection of cellular telephone 100, service provider 141 transmits to cellular telephone 100 a card deck to generate FIGS. 4A to 4C." '415 patent, 17:50-55.

> . . . "In this example, the user depresses the three key on the kepad of cellular telephone 100 to select the stock quotes and item three in screen display 402 is highlighted. In response to this selection, **cellular telephone 100 transmits a request** for a stock quote, i.e, a message

including a resource locator, over cellular telephone network 100 and internet 140 **to service provider 141**. In response to the request, service provider computer 141 executes the application addressed by the resource locator. The application retrieves a card deck that, in turn is transmitted to cellular telephone 100. The card deck includes a display card and an entry card." '415 patent, 18:8-18 (bold and underline emphasis added).

## B.      The NAIS Article

The NAIS (Nomadic Access to Information Services by a GSM Phone) article was published in 1996 and, as such, qualifies as prior art to the '716 patent under 35 U.S.C. § 102(a). The NAIS article was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent.

As with the '415 patent discussed above, the NAIS article was submitted in the *ex parte* reexamination proceedings in the November 2d IDS.  As the petition to consider the November 2d IDS was denied, none of the documents cited in the November 2d IDS, including the NAIS article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings.[10]  As such, the instant Request presents the teachings of the NAIS article in a "new light" that was not considered by the Examiner during the *ex parte* reexamination proceedings.

---

[10] The patentee also subsequently filed an additional IDS submission in the *ex parte* reexamination proceeding on November 28, 2011.  Although no petition accompanied the November 28th IDS, such a petition would be denied for the same reasons as for the November 2d IDS, and, as such, none of the documents cited in the November 28th IDS have been considered on the record during the *ex parte* reexamination proceeding, including the NAIS article.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

Figure 1 below show a configuration of the NAIS system.



Fig. 1. The NAIS configuration.

As shown above in Figure 1, the NAIS system consists of user terminals, which are GSM mobile phones equipped with short message send and receive functionality, and a NAIS server, which is a GSM phone with a GSM data card connected to the computer. The server can also be implemented with a direct network access to SMSC (short message service center). In this case, the server does not need a GSM phone with the data card to establish the connection. The NAIS server also contains a voice/fax/data modem, which can be used to record and send voice messages and to send fax messages. NAIS article, pg. 652.

The communication between the user terminals and the server is made using SMS. The user has a predefined command set, which can be used to execute different applications in the NAIS server. These applications are normally information queries updates. The possible results of the executions can be sent back to the user using SMS, fax or making a voice call. NAIS article, pg. 652.

One application for the NAIS system is to provide remote access to the user's e-mail. When traveling, it is useful to be able to receive and send e-mail messages. However, it is not always convenient to carry a notebook PC with a modem everywhere. The NAIS system can be used to provide e-mail access services for the GSM phone user. NAIS article, pg. 653.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

The purpose of the alerting service is to notify the mobile user of incoming mail. When the user receives a new e-mail, the NAIS system generates a new SMS message and sends it to the user's GSM phone. The message contains the sender and subject fields of the e-mail message. The user can also specify which kinds of e-mails cause alerting and thereby eliminate unnecessary alerting. Alerting is a typical pager service. Use of GSM SMS eliminates the need for an additional pager. NAIS article, pg. 653.

The mail list service allows a user to get a list of incoming mails. This list contains the sender and subject fields of e-mails. The NAIS system attaches a message ID to each e-mail list item, so that the ID can be used to retrieve the message itself. It is also possible to list the contents of another mail folder with the mail list service. NAIS article, pg. 653.

With the message retrieval service a user can retrieve his e-mail messages. This may be done in several ways as described below. Figure 2 illustrates an example of how an incoming SMS message is processed for the email message retrieval. The incoming message sender is first authenticated by checking valid users from the user database. Mail handling application is then started as specified in the user's profile. Special media conversion utilities are used to convert MIME multimedia mail bodyparts to the transfer media. NAIS article, pg. 654.

Audio mail messages and audio MIME bodyparts can be retrieved using a voice modem. Also textparts can be converted into audio using a speech synthesizer. Almost everything printable can be converted to fax format and can be retrieved using a fax modem. This includes text and pictures in several formats. Short mail messages in text format can be retrieved using SMS. Mail messages or bodyparts longer than 160 characters are split into several SMS messages. The conversion mechanism converts only those MIME bodyparts which are meaningful for the transfer media (voice, fax, SMS). NAIS article, pg. 654.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07



Fig. 2. The NAIS server data-flow diagram for the e-mail message retrieval.

As discussed above in section V.C, independent claim 15 was amended to recite "a memory controller including a processor coupled to the memory configured to cause a <u>paging</u> data signal to be directed to a cell phone… wherein the memory controller is configured to direct the content corresponding to the content identifier from the memory to the cell phone only upon receiving a request from the cell phone <u>at the identified content's location</u> to do so."

Independent claim 30 was amended to recite "causing a <u>paging</u> data signal to be directed to a cell phone… transmitting the available content corresponding to the content identifier to the cell phone upon receiving a request <u>at the identified content's location</u> to do so."

The Examiner indicated that these were the features that distinguished claims 15 and 30 over the prior art. *See* IFW of Reexamination Control No. 90/009,880, NIRC, pg. 7. Newly added independent claims 83, 97 and 110 recite the same or substantially same limitations.

The NAIS article discloses this feature, among others. For example, the NAIS article discloses transmitting the content corresponding to the content identifier upon receiving a request at

the identified content's location to do so - an incoming SMS message is processed for the email message retrieval as explained below:

> "The mail list service allows a user to get a list of incoming mails. This list contains the sender and subject fields of e-mails. The NAIS system attaches a message ID to each e-mail list item, so that the ID can be used to retrieve the message itself using another service described in later chapters. It is also possible to list the contents of another mail folder with this service. The list can also be sent to a fax machine instead of using GSM SMS." NAIS article, pg. 653.

> "4.1.4. *Message retrieval service.* With the message retrieval service a user can retrieve his e-mail messages. This may be done in several ways as described below. Figure 2 illustrates an example of how an incoming SMS message is processed for the email message retrieval. The incoming message sender is first authenticated by checking valid users from the user database. Mail handling application is then started as specified in the user's profile. Special media conversion utilities are used to convert MIME [citation omitted] multimedia mail bodyparts to the transfer media. Audio mail messages and audio MIME bodyparts can be retrieved using a voice modem. Also textparts can be converted into audio using a speech synthesizer. Almost everything printable can be converted to fax format and can be retrieved using a fax modem. This includes text and pictures in several formats. Short mail messages in text format can be retrieved using SMS. Mail messages or bodyparts longer than 160 characters are split into several SMS messages. The conversion mechanism converts only those MIME bodyparts which are meaningful for the transfer media (voice, fax, SMS). There is no way to convert an attached audio message to fax format or a graphics drawing to audio message though." NAIS article, pg. 654.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                Docket No.: 032697.0007-US07



Fig. 2. The NAIS server data-flow diagram for the e-mail message retrieval.

### C.      U.S. Patent No. 6,333,973 to Smith ("the '973 patent")

The Smith '973 patent entitled "Systems and Methods for Enabling a User of a
Communication Device to Manage Remote Information" issued on December 25, 2001, from an
application filed on April 23, 1997, and, as such, qualifies as prior art to the '241 patent under 35
U.S.C. § 102(e). The '973 patent was not considered by the Examiner during prosecution of the
application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination
proceeding or the denied *inter partes* reexamination.

Figure 1 below shows a diagram of a communication network disclosed and claimed by the
'973 patent.

40

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07



*FIG. 1*

An integrated message center is a logical entity that resides in mobile telephone 1100 and operates in conjunction with network services provider 1200 to inform a user of incoming and pending messages, such as fax mail, e-mail, voice mail, etc. The integrated message center also serves as a mechanism by which the user can retrieve, manipulate, and reply to all types of messages. User manipulation of the pending messages might include the ability to view, prioritize, edit, playback, discard, and/or forward messages.  '973 patent, 3:50-59.

In the '973 system, the user uses mobile telephone 1100 to view messages from callers having different types of caller equipment. '973 patent, 3:60-61. The callers leave different types of messages for the user, depending upon the type of caller equipment. '973 patent, 3:65-67.

Network services provider 1200 stores many of the messages awaiting retrieval by the user and notifies the user of the pending messages. Subscriber mobile telephone 1100 and caller equipment 1300 through 1700 communicate with network services provider 1200 over a communications network, such as Global System for Mobile Communications (GSM) switching fabric 1800. '973 patent, 4:1-7.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

When the caller uses computer 1600 to send an e-mail message to the user, the caller enters

the message into the computer and affixes the user's e-mail address. The user's e-mail address

directs the e-mail message to network services provider 1200. Network services provider 1200

stores the e-mail message, and then sends a short message to mobile telephone 1100, notifying the

user of the pending e-mail message. '973 patent, 4:57-64.

Figure 5 below shows the networks services provider 1200 in more detail.



**FIG. 5**

FIG. 5 is a block diagram of the elements of network services provider 1200, including

interface 5100, transcoder and rate adapter unit (TRAU) 5200, SMS server 5300, interworking

function (IWF) servers 5400 and 5500, voice mail server 5600, fax 5 mail server 5700, e-mail

server 5800, and backup 5900. Interface 5100 interfaces the elements of network services provider

1200 to GSM switching fabric 1800. '973 patent, 7:1-8.

The e-mail server 5800 processes and stores e-mail messages, and informs SMS server 5300

of the pending message and the identity of the caller. SMS server 5300, in turn, notifies the user of

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

the pending message via an SMS e-mail notification message. The SMS notification message might include the sender's name, telephone number, and e-mail address, a time and date stamp, and the name and address of e-mail server 5800. Backup 5900 serves as a backup memory device that stores pending messages in the event of a failure in one of the servers. '973 patent, 8:1-10.

When the user wants to retrieve the e-mail message after viewing the e-mail notification message, the user first selects the e-mail icon corresponding to the e-mail message from the message center display (FIGS. 7A and 7B), and then instructs mobile telephone 1100 to retrieve the e-mail message by pressing the "View" button. In response, mobile telephone 1100 establishes a connection with network services provider 1200 to download the e-mail message from e-mail server 5800. '973 patent, 10:48-56.

The system disclosed by the '973 patent works for many types of messages including fax mail, e-mail, voice mail, etc. 3:53-54. One particular type of message is a web page. Figures 9A and 9B below provide a detailed example of sending an SMS message the includes HTML code such as a hot-link to a web page.



**FIG. 9A**



**FIG. 9B**

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                    Docket No.: 032697.0007-US07

FIGS. 9A and 9B are examples of screen displays for SMS text messages with hypertext markup language (HTML) code. The HTML code permits the caller to insert selection buttons or hot-links into the text message. FIG. 9A is an example of a screen display for a text message that includes two selection buttons. To respond to the text message, the user can simply press the "Yes" or "No" button. FIG. 9B is an example of screen display of a text message that includes a hot-link. By pressing the "TravelNorth" hot-link, mobile telephone 1100 establishes a telephone connection to the TravelNorth company or accesses their web page. '973 patent, 9:23-35.

The '973 patent also discloses executing a command sent from a cell phone, that is performed on the content prior to the system directing the content to the cell phone. The command includes at least one of deleting the content, forwarding the content to a specified recipient, saving the content, or replying to the content. For example the '973 patent discloses that message center 6100 permits the user to view the fax notification message, select and view the contents or a portion of the contents of the fax, forward the fax to facsimile equipment, a printer, or a computer, delete the fax, and change the password to fax mail server 5700. '973 patent, 10:11-17.

When the user wants to retrieve the fax after viewing the fax notification message, the user first selects the fax icon corresponding to the fax from the message center display (FIGS. 7A and 7B), and then instructs mobile telephone 1100 to retrieve the fax by pressing the "View" button. In response, mobile telephone 1100 establishes a B-channel connection with network services provider 1200 to download the fax from fax mail server 5700. Display 2400 only displays a portion of the downloaded fax at a time due to display 2400's limited size. Mobile telephone 1100 provides on-screen graphical scroll keys, or hard keys on main housing 2100, to allow the user to scroll horizontally and vertically to view the entire fax. '973 patent, 10:18-29.

When the user wants to **forward the fax <u>after</u>** viewing the <u>fax notification message</u>, the user first selects the fax icon from the message center display, and then presses the graphical button corresponding to the destination location. In response, mobile telephone 1100 establishes a connection with network services provider 1200 and informs fax mail server 5700 where to forward the fax. '973 patent, 10:30-37.

44

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

### D.        U.S. Patent No. 5,487,100 to Kane ("the '100 patent")

The '100 patent issued on January 23, 1996. As such, the '100 patent qualifies as prior art

for the '716 patent under 35 U.S.C. § 102(b). The '100 patent is cited on the face of the '716 patent,

but was not considered by the Examiner or discussed on the record during prosecution of the '716

patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes*

reexamination.

Figure 1 of the '100 patent is shown below:



Figure 1 shows a communication system 100 utilizing a paging transmitter system **120**, **122**,

**124**, **126**, for delivering messages to at least one portable remote unit, such as a portable selective

call receiver **130**. A central terminal **102** includes input sections **110**, **112** for receiving inputs from

a number of different devices **104**, **106**, **108**, including receiving page requests for initiating pages

that are transmitted by the paging transmitter system **120**, **122**, **124**, **126**, to the at least one portable

remote unit **130**. The central terminal **102** has input sections **110** that interface with the telephone

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

company equipment, such as the public switched telephone network (PSTN) **107**. Personal

computers or other computing devices **104** can access the input sections **110** through the PSTN

using a dial-up telephone line and modem communication. Typically, these input devices **104**, **106**,

can remotely initiate page requests through the central terminal **102** by calling up the input sections

**110** of the central terminal **102** over dial-up telephone lines of the PSTN 107. *See* '100 patent, 2:58

- 3:12.

 Alternatively, other input sections **112** of the central terminal **102** can receive inputs, such

as page requests, from local computing interfaces **108**, such as for interfacing with a local personal

computer, a console, or other terminal device. Also, an interface **109** to an X.400 network **113** can

handle message delivery between the input sections **112** of the central terminal **102** and one or more

originating devices on the X.400 network **113**. *See* '100 patent, 3:13-24.

 The input sections **110**, **112**, communicate page requests to a controller **114** through a

communication bus **116**. The controller **114** may include controller circuitry and associated memory

such that an incoming page request may be accepted and stored into available memory for

subsequent transmission to one or more selective call receivers **130**. *See* '100 patent, 3:25-30.

 A non-volatile memory device **118**, such as battery backed up RAM, one or more disc drive

units, or other non-volatile storage medium, is utilized by the controller **114** for longer term storage

of messages destined for the one or more selective call receivers **130**. **The controller 114 typically**

**couples the message information and other associated information to the memory device 118**

**via the bus 116**. The message information, which can include numeric, alphanumeric, or binary

information, and other associated information, is stored in the memory **118** and can be used by the

controller **114** for keeping track of the messages being delivered to the remote units **130**. The

message information can also be used by the controller **114** to provide a means through the central

terminal **102** for delivering reply messages from the remote units **130** back to one or more X.400

originating devices on the X.400 network **113**. *See* '100 patent, 3:31-48.

 Additionally, a timing module **128** provides time information to the controller **114**. The time

information, e.g., date and time of day information, can be utilized for keeping track of messages

being processed by the central terminal **102**, for communicating time information along with the

delivered messages to the selective call receivers **130**, and for other system administrative and

maintenance functions for the central terminal **102**. This time information can also be used to facilitate X.400 message addressing and delivery between the X.400 network **113** and the remote units **130**, as will be more fully discussed below. *See* '100 patent, 3:49-59.

The controller **114** couples messages to the paging encoder **120** over the bus **116** for encoding the messages for transmission over a paging channel. The paging encoder **120** then couples the encoded messages over a communication path **122** to one or more paging transmitter systems **124**, **126**, for transmission over a paging communication channel. The communication path **122**, in this example, routes the messages from the central terminal **102** to a paging transmitter system **124**, **126**, and over a paging communication channel for reception by the one or more selective call receivers **130**. *See* '100 patent, 3:60 - 4:9.

The selective call receiver **130** preferably incorporates a paging receiver **134** that operates to receive messages transmitted over the paging communication channel through the antenna **132**. *See* '100 patent, 4:10-18.

The paging receiver **134** couples a received message to the controller **136** through the bus **138**. The controller **136** operates to decode the received message and match address information in the received message to a predetermined address in the selective call receiver **130**. In this way, the controller **136** can determine whether the received message is intended for the particular selective call receiver **130**. Further, a memory **140** is coupled to the paging receiver **134** and the controller **136** through the bus **138** for storing the received message in the memory **140**. A user can access user input means **141**, such as buttons or switches, at the remote unit **130** to cause the message data of a received message to be displayed on a display, e.g., a liquid crystal display (not shown). The user can then read the message that is visible on the display. User input at the remote unit **130** can also cause the remote unit **130** to perform other functions known to users of selective call receivers and portable personal computing devices. *See* '100 patent, 4:19-36.

A real time clock **142** is also coupled through the bus **138** to the controller **136** for providing time information thereto. The remote unit **130** is then capable of providing time information to the user as part of displaying information on the display (not shown). Additionally, the controller **136** can utilize the time information provided by the real time clock **142** for other useful operations in the selective call receiver **130**.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

Figure 2 of the '100 patent is shown below:



## FIG.2

FIG. 2 shows a message database **202** in the central terminal memory **118** for keeping track of X.400 electronic mail messages delivered through the central terminal **102** and for allowing reply messages from the remote units **130** through the central terminal **102** and back to the originating device through the X.400 network **113**. The message database **202** is maintained for each subscriber identified by a subscriber address in the communication system **100**. The subscriber address is typically located in a subscriber database (not shown) in the terminal memory **118** for sending messages to the remote units **130**. On the other hand, the message database **202** allows the central terminal **102** to keep track of the X.400 messages being sent to the remote units **130** while allowing

48

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

the central terminal **102** to service reply message requests from the remote units and destined for the originating device in the X.400 network **113**. '100 patent, 5:23-39.

When the controller **114** determines that an X.400 message is requested to be sent to one or more remote units **130** from an X.400 originating device, the controller **114** stores a copy of the X.400 message intact in the central terminal memory **118**. **A message record 204 is stored in the message database 202 including a message I.D. field 208 and a time tag field 210 for identifying the message record 204 in the message database 202.** The X.400 message information, such as the originator's I.D. **212**, the message body **214**, and other associated X.400 information **216** are also stored in the message record **204** in the message database **202**. Similarly, as other messages are received by the central 102 additional message records **206** are created in the message database **202** for keeping track of those messages being processed through the communication system 100. '100 patent, 5:40-54.

Preferably, the message I.D. 208 is a short string of characters, which can identify the originator of the X.400 message from the X.400 network 113. For example, the message I.D. **208** can comprise the surname (SN) information from the X.400 message which identifies the originating device of the X.400 message. **Further, the controller 114 accesses the timing module 128 to get timing information which the controller 114 then adds to the message record 204 as part of a time tag field 210**. **The combination of the message I.D. 208 and the time tag 210 identify the originator of the message and the specific occurrence of the message, e.g., the time of occurrence, through the central terminal 102**. Hence, if multiple messages originate from the same originating device, they are distinguishable from each other due to the time tag field **210**. In this way, the central terminal **102** can keep track of the X.400 messages that it services. **Additionally, the central terminal 102 sends along with the transmitted message the message I.D. information 208, and the time tag information 210 for identifying the message to the destination remote unit 130**. The message I.D. information **208** and the time tag information **210** require typically about 20 characters to be transmitted with the message over the paging communication channel. This is much more efficient than transmitting the original X.400 address information which can require upwards of 400 characters to identify the X.400 address for the X.400 network 113. Therefore the paging communication channel bandwidth is more efficiently

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

utilized by the communication system **100** in delivering the electronic mail messages to the remote

units **130**. '100 patent, 5:55 - 6:17.

       As discussed above in section V.C, the NIRC in the *ex parte* reexamination proceeding

confirms the patentability of claims 2, 22, 38, 48, and 52, stating that the claims require that the

notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info

Bite disclosed in the Tso patent -- is available.  The '100 patent discloses this feature, among others.

For example, the '100 patent discloses a notification that specifies a time that <u>the content</u> that is the

subject of the notification is available - the notification sent to remote unit 130 includes time tag

210, that is, the time of occurrence of the message to be sent to remote unit 130:

> "Preferably, the message I.D. 208 is a short string of characters, which can
> identify the originator of the X.400 message from the X.400 network 113.
> For example, the message I.D. 208 can comprise the surname (SN)
> information from the X.400 message which identifies the originating
> device of the X.400 message. Further, the controller 114 accesses the
> timing module 128 to get timing information which the controller 114 then
> adds to the message record 204 as part of a time tag field 210. **The
> combination of the message I.D. 208 and the time tag 210 identify the
> originator of the message and the specific occurrence of the message,
> e.g., the time of occurrence, through the central terminal 102. Hence,
> if multiple messages originate from the same originating device, they
> are distinguishable from each other due to the time tag field 210.** In
> this way, the central terminal 102 can keep track of the X.400 messages
> that it services. **Additionally, the central terminal 102 sends along with
> the transmitted message the message I.D. information 208, and the
> time tag information 210 for identifying the message to the destination
> remote unit 130.** The message I.D. information 208 and the time tag
> information 210 require typically about 20 characters to be transmitted
> with the message over the paging communication channel. This is much
> more efficient than transmitting the original X.400 address information
> which can require upwards of 400 characters to identify the X.400 address
> for the X.400 network 113. Therefore the paging communication channel
> bandwidth is more efficiently utilized by the communication system 100
> in delivering the electronic mail messages to the remote units 130." '100
> patent, 5:55 - 6:17 (emphasis added to non-numeric text).

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

### E.    Japanese Unexamined Patent Application Publication H8-181781 (Furuta)

Japanese Unexamined Patent Application Publication H8-181781 (Furuta) published on July 12, 1996.  As such, the Furuta publication qualifies as prior art for the '716 patent under 35 U.S.C. § 102(b). The Furuta publication is not of record and as such was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination.

The Furuta publication discloses a system (*e.g.*, service management station 2) that transmits a notification (*e.g.*, a voicemail notification transmission) that specifies a time (*e.g.*, a time (reception date and time) that indicates a time period (retention period)) that the content (*e.g.*, voicemail) is available at the service management station.

More particularly, Furuta discloses that when a new voicemail message is received at the service management station 2, the service management station transmits a reception notification message to a Personal Handy Phone System (PHS) terminal 6.  The service management station transmits the reception time and date and the caller telephone number with the reception notification that is sent to the PHS terminal 6.  Using the transmitted information, the PHS terminal 6 monitors the retention period expiration date of the voicemail messages that are stored on the service management station.  If the PHS terminal does not transmit a message extending the expiration date, the service management station deletes the message.  *See, e.g.*, Furuta ¶¶ 4, 5, 9, 38 and 45.

With regard to Figure 1 below, 1 is a network management station which connects to each radio base station and manages communication between the base stations and the PHS by controlling a telephone line network 4. Symbol 2 is a service management station which stores voicemails and various types of data in a database 3 and provides various services to supply the voicemails or data to users in response to requests from a PHS terminal 6 described below. In response to requests from the PHS terminal, the service management station 2 provides various voicemail services such as establishing an area (mailbox) for storing voicemails (audio data) in the database, storing the voicemails, and transmitting them to users. The network management station 1 and the service management station 2 may also be a single station.  *See* Furuta Publication ¶ 13.

51

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07



Figure 1: Block diagram showing the configuration of a radio communication system.

Still further, Furuta discloses that the PHS terminal 6 retains "**the reception date and time of a voicemail** and the caller telephone number, which is transmitted automatically from the service management station 2 each time a voicemail is stored in the mailbox." Furuta ¶ 38 (emphasis added.) Furuta also discloses that it is possible to confirm information related to the voicemail, such as whether it has reached the **retention expiration date**, as shown in Figure 13 below. Furuta ¶ 38 (emphasis added.)

In addition, Furuta discloses **a retention period**, which is the time period from the reception date and time to the retention expiration date. At the end of the retention period, the service management station 2 deletes the voicemail unless the user indicates that the message should be retained. Furuta ¶ 41; *see also*, Figure 13 below. The PHS terminal 6 determines whether a voicemail has reached the retention expiration date using the information transmitted with the notification message. *See, e.g.*, Furuta ¶ 38, claims 1 & 3. Accordingly, when the PHS terminal 6 receives the **reception date and time of a voicemail**, as disclosed, for example, in ¶ 38 of Furuta, the PHS terminal 6 also knows the time that the content (voicemail) is available because the PHS terminal also knows when the voicemail will be deleted (*i.e.*, the retention expiration date as disclosed in Furuta ¶ 38, and Figure 13 below). Therefore, the reception notification message sent from the service management station to the PHS terminal specifies a time (reception date and time)

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

that indicates a time period (retention period) during which the content (voicemail) is available at the service management station.



Figure 13: Schematic diagram showing an example of the display by the display part during retention expiration date extension processing on the PHS terminal side.

## F.    The *Enabling Mobile Network Managers* Article

As detailed in the declaration of co-author Luca Deri, the *Enabling Mobile Network Managers* article was orally presented and publicly disseminated during the Sixth International World Wide Web Conference, which was held April 7-11, 1997 in Santa Clara, California, at the Santa Clara Convention Center. (*See* Declaration of Luca Deri Under 37 C.F.R. § 1.132, dated November 1, 2011, attached hereto as Exhibit D; "the Deri Declaration"). As explained in the Deri Declaration, the conference was an open forum, open to all persons interested in the subject matter. Deri Declaration, ¶ 6. The *Enabling Mobile Network Managers* paper was orally presented between April 7-11, 1997, and was included on compact discs that were disseminated without restriction to Conference attendees from April 7-11, 1997. Deri Declaration, ¶¶ 8-9. Accordingly, the *Enabling Mobile Network Managers* paper as presented and disseminated at the Word Wide Web Conference

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

April 7-11, 1997 constitutes a printed publication, and is prior art to the '716 patent under 35 U.S.C. § 102(a). M.P.E.P. § 2128.01 II (paper which is orally presented in a forum open to all interested person constitutes a "printed publication" if written copies are disseminated without restriction; *citing Massachusetts Institute of Technology v. AB Fortia*, 774 F.2d 1104, 1109 (Fed. Cir. 1985) (paper orally presented to between 50 and 500 persons at a scientific meeting open to all persons interested in the subject matter, with written copies distributed without restriction to all who requested, is a printed publication)). The *Enabling Mobile Network Managers* paper was also published in paper conference proceedings by Elsevier Science B.V. in the journal Computer Networks and ISDN Systems, Volume 29, Issues 8-13, September 1997, pages 1417-1428. *See*, Deri Declaration, Exhibit B.

The *Enabling Mobile Network Managers* article is in fact highly material to the issued claims of the '716 patent. Instead of relying on the efforts of a user to find and retrieve information, the *Enabling Mobile Network Managers* article allows a URL to be sent to a cellular phone of a user. This allows the user to choose whether or not to download further information, and when to do so. *See*, *Enabling Mobile Network Managers* article, pg. 7. The user can utilize the URL to obtain additional information. *Id.* Accordingly, among other things, the *Enabling Mobile Network Managers* article provides a URL that allows a request signal to be sent from a "cell phone *to the identified content's location* so that the desired content may be downloaded to the phone," as recited, for example, in claim 1 of the '716 patent, as amended during *ex parte* reexamination.

As discussed above in section V.C, independent claim 15 was amended during *ex parte* reexamination to recite "a memory controller including a processor coupled to the memory configured to cause a *paging* data signal to be directed to a cell phone… wherein the memory controller is configured to direct the content corresponding to the content identifier from the memory to the cell phone only upon receiving a request from the cell phone *at the identified content's location,* to do so." Similarly, independent claim 30 was amended to recite "causing a *paging* data signal to be directed to a cell phone… transmitting the available content corresponding to the content identifier to the cell phone upon receiving a request *at the identified content's location,* to do so." Newly added independent claims 83, 97 and 110 recite the same or substantially same limitations.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

The Examiner indicated that the feature relating to receiving the request for content *at the identified content's location* distinguished independent claims 15 and 30 over the prior art. *See* IFW of Reexamination Control No. 90/009,880, NIRC, pages 3, 7. The *Enabling Mobile Network Managers* article discloses this feature, among others. For example, the *Enabling Mobile Network Managers* article discloses that with SMS messages, instructions can be included where to get more information - a URL to connect to with a web browser.

Figure 3.4 of the *Enabling Mobile Network Managers* article is shown below.



Figure 3.4. Managed Objects, Attributes and CMIP operations displayed using HTML.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

Figure 3.4 of the *Enabling Mobile Network Managers* article shows URLs for multiple subordinate Management Objects (MOs), such as:

    atmAccessPoint=pString "atmNAP1")
    atmAccessPoint=pString "atmNAP1")
    atmAccessPoint=pString "atmNAP1")

One skilled in the art knows that the URLs shown above would have been clicked on (or otherwise activated) by a user to direct content corresponding to the content identifier from the memory to the cell phone only upon receiving a request from the cell phone at the identified content's location, to do so.  In other words, a request for the content is being sent from the cell phone to the identified content's location.

### G.      U.S. Patent No. 5,406,616 to Bjorndahl ("the '616 patent")

The '616 patent issued on April 1, 1995. As such, the '616 patent qualifies as prior art for the '716 patent under 35 U.S.C. § 102(b). The '616 patent was not considered by the Examiner during prosecution of the '716 patent.

As with the '415 patent discussed above, the '616 patent was submitted in the *ex parte* reexamination proceedings in the November 2d IDS.  As the petition to consider the November 2d IDS was denied, none of the documents cited in the November 2d IDS, including the '616 patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings.[11]  As such, the instant Request presents the teachings of the '616 patent in a "new light" that was not considered by the Examiner during the *ex parte* reexamination proceedings.

The '616 patent provides for automatic callback in a cellular mobile telecommunication network even in cases in which a calling subscriber and/or a called subscriber has/have traveled a long distance in the network from the time of initiating the callback service to the time at which the service is carried out. The '616 patent stores the location identity characters of the two (calling and called) subscribers in an existing central database in the mobile telecommunication network.

---

[11] The patentee also subsequently filed an additional IDS submission in the *ex parte* reexamination proceeding on November 28, 2011.  Although no petition accompanied the November 28th IDS, such a petition would be denied for the same reasons as for the November 2d IDS, and, as such, none of the documents cited in the November 28th IDS have been considered on the record during the *ex parte* reexamination proceeding, including the '616 patent.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

The central database, which is known as the home location register (HLR), maintains a record of the whereabouts in the network of all mobile units that are registered in the system and are located in the network at that moment in time. This is made possible by connecting the HLR to all local databases, known as visitor location registers (VLRs), in which there is stored a traffic area code which discloses the geographic positions of the mobile units at each moment in time.

The '616 patent provides the ability of the HLR to know in which VLR(s) all mobile units are registered. This enables calls to be connected even when the subscribers have moved from a first VLR to a second VLR in the time lapse between initiating callback and executing callback. See '616 patent, 2:1-35.

## VIII. STATEMENT ESTABLISHING A REASONABLE LIKELIHOOD THAT THE REQUESTER WILL PREVAIL WITH RESPECT TO AT LEAST ONE CLAIM (RLP) PURSUANT TO 37 C.F.R. § 1.915(b)(3)

### A. The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 15, 17, 18, 21, 24-27, 83, 92-94, 110, 112 and 113

The '415 patent in combination with the *Enabling Mobile Network Managers* article establishes a RLP for claims 15, 17, 18, 21, 24-27, 83, 92-94, 110, 112 and 113 of the '716 patent, as set forth in detail below in Section IX.A Claims 17, 18, 21, and 24-27 depend from independent claim 15, claims 92-94 depend from independent claim 83, and claims 112 and 113 depend from independent claim 110.  The '415 patent in combination with the *Enabling Mobile Network Managers* article teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '415 patent and the *Enabling Mobile Network Managers* article was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, the Examiner considered U.S. Patent No. 6,047,327 ("Tso"). In order to distinguish over Tso, the patentee amended the original independent claims of the '716 patent to require sending a request signal to the content's location.  For example, claim 1 was

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                            Docket No.: 032697.0007-US07

amended to require sending a request signal <u>from the cell phone to the identified content's</u>
<u>location</u>.[12]  The examiner allowed these amended claims over Tso because, according to the
Examiner, Tso does not use the resource identifier to send a request signal to the identified content's
location. Instead, Tso discloses that the request signal is directed to the InfoCast Server—a server
which does not contain content—and that the request signal is <u>not</u> transmitted to the content's
locations (for example, a server that includes (or stores) content).  *See*, IFW of Reexamination
Control No. 90/009,880, NIRC, pg. 6.

  As explained in detail in Section IX.A below, the '415 patent in combination with the
*Enabling Mobile Network Managers* Article discloses a system wherein the cell phone sends a
request signal to the identified content's location, without the use of an InfoCast (or similar) server
that does <u>not</u> store content, as disclosed in Tso.  In particular, the '415 patent teaches that "in
response to the key press, the client module in cellular telephone 100 transmits a message, including
a resource locator associated with the menu item selected by pressing the four key, <u>to server</u>
<u>computer 131</u> using data capable cellular telephone network 110 and corporate local area network
130."  *Id.* at 17:1-6.  That is, the '415 patent discloses that a resource locator is sent to the content's
location (server computer 131), and that the resource locator is <u>not</u> sent to an intermediate server
(which does not contain content and is not the content's location) as disclosed in Tso.  And the
*Enabling Mobile Network Managers* article states that "with Fax, Short Message Service (SMS), or
e-mail instructions can be given to the human manager where to get more information (e.g. a URL
to connect to with their WWW browser)"( *Id.* at pg. 7), again showing that the SMS message is sent
to the content's location, not an intermediate server.

  Accordingly, the '415 patent, as well as the *Enabling Mobile Network Managers* article,
provide a new, non-cumulative technological teaching that was not before the Office in the prior
proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological
teaching of the '415 patent is not cumulative to the technological teachings provided in the other
cited prior art documents, because the '415 patent presents the new teaching in a new light,
particularly in view of amendments made to claim 15 (and included in new independent claims 83

---

[12] Claim 1 inserted "to the identified content's location."  Claim 15, 30, and 44 inserted "at the identified content's
location."  Claim 51 inserted "to the identified address of the remote content storage system."  *See* Supplemental
Request for Reconsideration after Final Office Action Pursuant to 37 C.F.R. §§ 1.116 and 1.530 filed October 13, 2011.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                                    Docket No.: 032697.0007-US07

and 110) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01[13]), as discussed above. In addition, the '415 patent and the *Enabling Mobile Network Managers* article provide the additional teaching regarding sending a request signal to the identified content's location. For at least the foregoing reasons, the '415 patent (Rossmann) in combination with the *Enabling Mobile Network Managers* article establishes a reasonable likelihood that the requester will prevail with respect to claims 15, 17, 18, 21, 24-27, 83, 92-94, 110, 112 and 113.

Furthermore, the '415 patent was not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Moreover, with regard to Reexamination Control No. 95/001,738, the Examiner only considered the '415 patent <u>alone</u> as rendering claim 15, as <u>originally issued</u> in the '716 patent, as being obvious under 35 U.S.C. § 103(a). The Examiner took the position that for claim 15, as <u>originally issued</u> in the '716 patent, the '415 patent was cumulative with respect to U.S. Patent No. 6,047,327 to Tso et al. ("Tso") as used in Reexamination Control No. 90/009,880, because Tso also disclosed the limitations of claim 15 as <u>originally issued</u> in the '716 patent. In contrast to the Examiner's analysis in Reexamination Control No. 95/001,738, the present request relies on the '415 patent <u>in combination</u> with the *Enabling Mobile Network Managers* article for <u>claim 15 as amended</u> during the course of the Reexamination Control No. 90/009,880 proceeding.

As detailed in Section IX.A, the '415 patent in combination with the *Enabling Mobile Network Managers* article discloses all of the limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article is at most the mere application of known techniques to a known system ready for improvement to yield predictable results, thereby establishing a *prima facie* case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

---

[13] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

### B. The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article and the '973 Patent (Smith) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 16, 84, and 111

The '415 patent in combination with the *Enabling Mobile Network Managers* article and the '973 patent establishes a RLP for claims 16, 84, and 111 of the '716 patent, as set forth in detail below in Section IX.B. The '415 patent in combination with the *Enabling Mobile Network Managers* and the '973 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '415 patent, the *Enabling Mobile Network Managers* article and the '973 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, claim 16 was placed in independent form. The Examiner confirmed the patentability of independent claim 16, stating the following:

> The examiner further notes that each of these claims require the reception of a command (to be executed for content) from the cell phone prior to the cell phone receiving the content. The commands, as recited in the claims include one of delete the content, forward the content to a specified recipient, save the content, or reply to the content.
>
> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 8 (emphasis in original).
>
> The examiner notes that the citations relied upon in the Request failed to meet the claim language. The claim requires the cell phone to send a command to the system prior to receiving content. Thus, in the context of the claims, the cell phone user will get a notification of the content, and in response, the cell phone user will send a command so that the system can e.g., forward, save, delete etc., the content prior to the system sending the content to the cell phone.
>
> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 9 (emphasis in original).

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                  Docket No.: 032697.0007-US07

As explained in detail below in Section IX.B., the '415 patent in combination with the *Enabling Mobile Network Managers* and the '973 patent discloses a system wherein the cell phone sends a command to the system prior to receiving content. In particular, the '973 patent discloses the claimed "wherein the memory controller is configured to execute a command sent from the cell phone, the execution being performed on the content prior to the system directing the content to the cell phone and comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" limitation.

Accordingly, the '973 patent provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '973 patent presents the new teaching in a new light, particularly in view of the Examiner's reason for confirmation of patentability for claim 16 (and claims 84 and 111 that include the same limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. For at least the foregoing reasons, the '415 patent (Rossmann) in combination with the *Enabling Mobile Network Managers* article and the '973 patent establishes a reasonable likelihood that the requester will prevail with respect to claims

Furthermore, neither the *Enabling Mobile Network Managers* nor the '973 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Moreover, with regard to Reexamination Control No. 95/001,738, claim 16 was not requested for reexamination.

The '973 patent is not cumulative[14] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent are contextually different from those of previously considered prior art,

---

[14] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

and discloses the additional feature of "wherein the memory controller is configured to execute a command sent from the cell phone, the execution being performed on the content prior to the system directing the content to the cell phone and comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.B, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the '973 patent discloses all of limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the '973 patent is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

**C.     The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article and the '100 Patent (Kane) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90, 91, 114 and 115**

The '415 patent in combination with the *Enabling Mobile Network Managers* article and the '100 patent establishes a RLP for claims 22, 23, 90, 91, 114 and 115 of the '716 patent, as set forth in detail below in Section IX.C. The '415 patent in combination with the *Enabling Mobile Network Managers* and the '100 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '415 patent, the *Enabling Mobile Network Managers* article and the '100 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 22, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.C. below, the '100

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

patent (Kane) discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the '100 patent provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '100 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '100 patent presents the new teaching in a new light, particularly in view of amendments made to claim 22 (and included in new claims 90, 91, 114 and 115) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the '100 patent provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the '415 patent (Rossmann) in combination with the *Enabling Mobile Network Managers* article and the '100 patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the *Enabling Mobile Network Managers* nor the '100 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the *Enabling Mobile Network Managers* article nor the '100 patent are cumulative[15] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the *Enabling Mobile Network Managers* article and the '100 patent are contextually different from those of previously considered prior art. Moreover, the '100 patent discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

---

[15] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

As detailed in Section IX.C, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the '100 patent discloses all of limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the '100 patent is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

D.      **The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90, 91, 114 and 115**

The '415 patent in combination with the *Enabling Mobile Network Managers* article and the Furuta publication establishes a RLP for claims 22, 23, 90, 91, 114 and 115 of the '716 patent, as set forth in detail below in Section IX.D. The '415 patent in combination with the *Enabling Mobile Network Managers* and the Furuta publication teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '415 patent, the *Enabling Mobile Network Managers* article and the Furuta publication was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 22, stating that the claims require that the notification indicate a time the content itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.D. below, the Furuta publication discloses this feature - notification indicating a time the content itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the Furuta publication provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the Furuta publication is not cumulative to the technological

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                          Docket No.: 032697.0007-US07

teachings provided in the other cited prior art documents, because the Furuta publication presents the new teaching in a new light, particularly in view of amendments made to claim 22 (and included in new claims 90, 91, 114 and 115) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the Furuta publication provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the '415 patent (Rossmann) in combination with the *Enabling Mobile Network Managers* article and the Furuta publication establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the *Enabling Mobile Network Managers* nor the Furuta publication are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the *Enabling Mobile Network Managers* article nor the Furuta publication are cumulative[16] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the *Enabling Mobile Network Managers* article and the Furuta publication are contextually different from those of previously considered prior art. Moreover, the Furuta publication discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.D, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the Furuta publication discloses all of limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the Furuta publication is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such,

---

[16] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

the present Request establishes a reasonable likelihood of success on the merits with respect to the

claims listed above.

> **E.      The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 28-30, 32, 33, 37, 40-42, 85, 86, 89, 95-97, 99, 100, 103, 104, 107, and 108**

The '415 patent in combination with the *Enabling Mobile Network Managers* article and the

'616 patent establishes a RLP for claims 28-33, 37, 40-42, 85, 86, 89, 95-97, 99, 100, 103, 104, 107,

and 108 of the '716 patent, as set forth in detail below in Section IX.E. The '415 patent in

combination with the *Enabling Mobile Network Managers* article and the '616 patent teaches all of

the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success

on the merits of the instant request. Furthermore, the combination of the '415 patent, the *Enabling*

*Mobile Network Managers* article and the '616 patent was not cited or discussed in the prosecution

history of the '716 patent, or during the course of the respective proceedings of Reexamination

Control Nos. 90/009,880 and 95/001,738.

As noted above in Section VIII.A, claims 15 and 30 were amended in the *ex parte*

reexamination proceeding to recite that the request from the cell phone was received at the

identified content's location.  The examiner allowed these amended claims over Tso because,

according to the Examiner, Tso does not use the resource identifier to send a request signal to the

identified content's location. Instead, Tso discloses that the request signal is directed to the InfoCast

Server—a server which does not contain content—and that the request signal is <u>not</u> transmitted to

the content's locations (for example, a server that includes (or stores) content).  *See*, IFW of

Reexamination Control No. 90/009,880, NIRC, pg. 6.  Each of the claims listed above depend

directly or indirectly from amended claims 15 and 30, or new claims 83 and 97 that include a

similar limitation.

As explained in detail in Section VIII.A and shown in Section IX.A below, the '415 patent

in combination with the *Enabling Mobile Network Managers* Article discloses a system wherein the

cell phone sends a request signal to the identified content's location, without the use of an InfoCast

(or similar) server that does <u>not</u> store content, as disclosed in Tso.  As such, the '415 patent, as well

as the *Enabling Mobile Network Managers* article, provide a new, non-cumulative technological

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs for claims 15 and 30, and the claims depending therefrom, as well as claims 83 and 97, and the claims depending therefrom.

   Furthermore, the '415 patent was not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Moreover, with regard to Reexamination Control No. 95/001,738, the Examiner only considered the '415 patent <u>alone</u> as rendering claim 15, as <u>originally issued</u> in the '716 patent, as being obvious under 35 U.S.C. § 103(a). The Examiner took the position that for claim 15, as <u>originally issued</u> in the '716 patent, the '415 patent was cumulative with respect to U.S. Patent No. 6,047,327 to Tso et al. ("Tso") as used in Reexamination Control No. 90/009,880, because Tso also disclosed the limitations of claim 15 as <u>originally issued</u> in the '716 patent. In contrast to the Examiner's analysis in Reexamination Control No. 95/001,738, the present request relies on the '415 patent <u>in combination</u> with the *Enabling Mobile Network Managers* article for <u>claim 15 as amended</u> during the course of the Reexamination Control No. 90/009,880 proceeding.

   As detailed in Section IX.E, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the '616 patent discloses all of the limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the '616 patent is at most the mere application of known techniques to a known system ready for improvement to yield predictable results, thereby establishing a *prima facie* case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims listed above.  As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

   **F.     The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, the '973 Patent (Smith) and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 31, 43, 98, and 109**

   The '415 patent in combination with the *Enabling Mobile Network Managers* article and the '973 and '616 patents establishes a RLP for claims 31, 43, 98, and 109 of the '716 patent, as set forth in detail below in Section IX.F. The '415 patent in combination with the *Enabling Mobile Network Managers* article, and the '973 patent and the '616 patent teaches all of the limitations of

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of

the instant request. Furthermore, the combination of the '415 patent, the *Enabling Mobile Network*

*Managers* article, the '973 patent and the '616 patent was not cited or discussed in the prosecution

history of the '716 patent, or during the course of the respective proceedings of Reexamination

Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination

Control No. 90/009,880 proceeding, claims 31 and 43 were placed in independent form. The

Examiner confirmed the patentability of these claims, citing the following features:

> for claim 31; "receiving from the cell phone, prior to transmitting the
> available content to the cell phone, a command created at the cell phone"
> for claim 43 and "the cellular phone, prior to receiving the media content,
> instructing the remote content storage system, via the cellular network, to
> forward the media content to another" for claim 58.

> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 8.

As explained in detail below in Section IX.F., the '415 patent in combination with the

*Enabling Mobile Network Managers* and the '973 patent discloses a system wherein the cell phone

sends a command to the system prior to receiving content. In particular, the '973 patent discloses

the claimed "receiving from the cell phone, prior to transmitting the available content to the cell

phone, a command created at the cell phone" (claim 31) and "the cellular phone, prior to receiving

the media content, instructing the remote content storage system, via the cellular network, to

forward the media content to another" (claim 43) limitations.

Accordingly, the '973 patent provides a new, non-cumulative technological teaching that

was not before the Office in the prior proceedings for the '716 patent, and therefore properly

establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the

technological teachings provided in the other cited prior art documents, because the '973 patent

presents the new teaching in a new light, particularly in view of the Examiner's reason for

confirmation of patentability for claims 31 and 43 (and claims 98 and 109 that include a similar

limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P.

§ 2258.01), as discussed above. For at least the foregoing reasons, the '415 patent (Rossmann) in

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

combination with the *Enabling Mobile Network Managers* article and the '973 patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

The '973 patent is not cumulative[17] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent are contextually different from those of previously considered prior art, and discloses the additional feature of "performing an action requested by the cell phone on the available content prior to transmitting the available content to the cell phone comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.F, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the '973 and '616 patents discloses all of limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the '973 and '616 patents is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

>    **G.      The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, the '100 Patent (Kane) and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106**

The '415 patent in combination with the *Enabling Mobile Network Managers* article, the '100 patent and the '616 patent establishes a RLP for claims 38, 39, 105 and 106 of the '716 patent, as set forth in detail below in Section IX.G. The '415 patent in combination with the *Enabling*

---

[17] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                            Docket No.: 032697.0007-US07

*Mobile Network Managers*, the '100 patent and the '616 patent teaches all of the limitations of claim 38, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '415 patent, the *Enabling Mobile Network Managers* article, the '100 patent and the '616 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

      As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 38, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available.  As will be explained in more detail in Section IX.G. below, the '100 patent (Kane) discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available.  As such, the '100 patent provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs.  The new technological teaching of the '100 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '100 patent presents the new teaching in a new light, particularly in view of amendments made to claim 38 (and claim 105 that includes a similar limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above.  In addition, the '100 patent provides the additional teaching regarding the notification indicating a time the content itself is available.  For at least the foregoing reasons, the '415 patent (Rossmann) in combination with the *Enabling Mobile Network Managers* article and the '100 and '616 patents establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

      Furthermore, neither the *Enabling Mobile Network Managers* nor the '100 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request.  Neither the *Enabling Mobile Network Managers* article nor the '100 patent are

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                    Docket No.: 032697.0007-US07

cumulative[18] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the *Enabling Mobile Network Managers* article and the '100 patent are contextually different from those of previously considered prior art. Moreover, the '100 patent discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.G, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the '100 and '616 patents discloses all of limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the '100 and '616 patents is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

**H.      The '415 Patent (Rossmann) in Combination With the *Enabling Mobile Network Managers* Article, JP H8-181781 (Furuta), and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106**

The '415 patent in combination with the *Enabling Mobile Network Managers* article, the Furuta publication and the '616 patent establishes a RLP for claims 38, 39, 105 and 106 of the '716 patent, as set forth in detail below in Section IX.H. The '415 patent in combination with the *Enabling Mobile Network Managers*, the Furuta publication and the '616 patent teaches all of the limitations of claim 38, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '415 patent, the *Enabling Mobile Network Managers* article, the Furuta publication and the '616 patent was not cited or discussed in the

---

[18] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

prosecution history of the '716 patent, or during the course of the respective proceedings of
Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the
patentability of amended claim 38, stating that the claims require that the notification indicate a
time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the
Tso patent -- is available. As will be explained in more detail in Section IX.H. below, the Furuta
publication discloses this feature - notification indicating a time the <u>content</u> itself, and not an
identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the
Furuta publication provides a new, non-cumulative technological teaching not considered by the
Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The
new technological teaching of the Furuta publication is not cumulative to the technological
teachings provided in the other cited prior art documents, because the Furuta publication presents
the new teaching in a new light, particularly in view of amendments made to claim 38 (and claim
105 that includes a similar limitation) during the course of prosecution of reexamination Control
No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the Furuta publication
provides the additional teaching regarding the notification indicating a time the content itself is
available. For at least the foregoing reasons, the '415 patent (Rossmann) in combination with the
*Enabling Mobile Network Managers* article and the Furuta publication and '616 patent establishes a
reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the *Enabling Mobile Network Managers* nor the Furuta publication are
of record, and were not relied on by the Examiner during prosecution of the application that gave
rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the
denied *inter partes* request. Neither the *Enabling Mobile Network Managers* article nor the Furuta
publication are cumulative[19] to any of the technical teachings discussed during the prosecution
history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880

---

[19] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is
one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed
in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is
expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare
occurrence since most references teach additional information or present information in a different way than other
references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716          Docket No.: 032697.0007-US07

proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the *Enabling Mobile Network Managers* article and the Furuta publication are contextually different from those of previously considered prior art. Moreover, the Furuta publication discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.H, the '415 patent in combination with the *Enabling Mobile Network Managers* article and the Furuta publication and the '616 patent discloses all of limitations of the claims listed above, and the combination of the '415 patent and the *Enabling Mobile Network Managers* article and the Furuta publication and the '616 patent is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

**I.     The NAIS Article in Combination with the '100 Patent (Kane) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 15, 17, 18, 21, 25-27, 83, 85, 86, 89, 92-94, 110 and 112-115**

The NAIS article in combination with the '100 patent establishes a RLP for claims 15, 17, 18, 21, 25-27, 83, 85, 86, 89, 92-94, 110 and 112-115 of the '716 patent, as set forth in detail below in Section IX.I. Claims 17, 18, 21, and 25-27 depend from independent claim 15, claims 85, 86, 89, and 92-94 depend from independent claim 83, and claims 112-115 depend from independent claim 110. The NAIS article in combination with the '100 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article and the '100 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, the Examiner considered U.S. Patent No. 6,047,327 ("Tso"). In order to distinguish over Tso, the patentee amended original independent claim 15 of the '716 patent. The examiner allowed these amended claims over Tso because, according to the Examiner,

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                           Docket No.: 032697.0007-US07

Tso does not use the resource identifier to send a request signal to the identified content's location. Instead, Tso discloses that the request signal is directed to the InfoCast Server—a server which does not contain content—and that the request signal is <u>not</u> transmitted to the content's locations (for example, a server that includes (or stores) content). *See*, IFW of Reexamination Control No. 90/009,880, NIRC, pg. 6.

As explained in detail in Section IX.I below, the NAIS Article discloses a system wherein the cell phone sends a request signal to the identified content's location, without the use of an InfoCast (or similar) server that does <u>not</u> store content, as disclosed in Tso. In particular, the NAIS article discloses a system wherein an "incoming SMS message is processed for the email message retrieval." *Id.* at pg. 654; *see also* NAIS article Fig. 2. That is, the NAIS article discloses that a resource locator is sent to the content's location (NAIS System), and that the resource locator is <u>not</u> sent to an InfoCast or other intermediate server (which does not contain content and is not the content's location) as disclosed in Tso.

Accordingly, the NAIS article provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the NAIS article is not cumulative to the technological teachings provided in the other cited prior art documents, because the NAIS article presents the new teaching in a new light, particularly in view of amendments made to claim 15 (and included in new independent claims 83 and 110) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01[20]), as discussed above. In addition, the NAIS article provides the additional teaching regarding sending a request signal to the identified content's location. For at least the foregoing reasons, the NAIS Article in combination with the '100 Patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

---

[20] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

As detailed in Section IX.I, the NAIS article in combination with the '100 patent discloses all of the limitations of the claims listed above, and the combination of the NAIS article and the '100 patent is at most the mere application of known techniques to a known system ready for improvement to yield predictable results, thereby establishing a *prima facie* case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

**J.      The NAIS Article in Combination with the '100 Patent and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 114 and 115**

The NAIS Article in combination with the '100 patent and JP H8-181781 (Furuta) establishes a reasonable likelihood that the requester will prevail with respect to claims 114 and 115 as set forth in detail below in Section IX.J. The combination of the NAIS article with the '100 patent and the Furuta publication teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article with the '100 patent and the Furuta publication was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of claim 114 (from which claim 115 depends), stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.M. below, the Furuta publication discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the Furuta publication provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the Furuta publication is not cumulative to the technological teachings provided in the other cited prior art documents, because the Furuta publication presents the new teaching in a new light, particularly in view of amendments made to

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

claim 22 (and included in new claims 114 and 115) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the Furuta publication provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, NAIS article in combination with the '100 patent and the Furuta publication establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, the Furuta publication is not of record, and was not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. The Furuta publication is not cumulative[21] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the Furuta publication are contextually different from those of previously considered prior art. Moreover, the Furuta publication discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.J, the NAIS article in combination with the '100 patent and the Furuta publication discloses all of limitations of the claims listed above, and the combination of the NAIS article with the '100 patent and the Furuta publication is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

---

[21] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

### K. The NAIS Article in Combination with the '100 Patent (Kane) and the '973 Patent (Smith) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 16, 84 and 111

The NAIS article in combination with the '100 patent and the '973 patent establishes a RLP for claims 16, 84 and 111 of the '716 patent, as set forth in detail below in Section IX.K. The NAIS article in combination with the '100 patent and the '973 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article, the '100 patent and the '973 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, claim 16 was placed in independent form. The Examiner confirmed the patentability of independent claim 16, stating the following:

> The examiner further notes that each of these claims require the reception of a command (to be executed for content) from the cell phone <u>prior</u> to the cell phone receiving the content. The commands, as recited in the claims include one of delete the content, forward the content to a specified recipient, save the content, or reply to the content.

> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 8 (emphasis in original).

> The examiner notes that the citations relied upon in the Request failed to meet the claim language. The claim requires the cell phone to send a command to the system <u>prior</u> to receiving content. Thus, in the context of the claims, the cell phone user will get a notification of the content, and in response, the cell phone user will send a command so that the system can e.g., forward, save, delete etc., the content prior to the system sending the content to the cell phone.

> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 9 (emphasis in original).

As explained in detail below in Section IX.K., the NAIS article in combination with the '100 patent and the '973 patent discloses a system wherein the cell phone sends a command to the system <u>prior</u> to receiving content. In particular, the '973 patent discloses the claimed "wherein the

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

memory controller is configured to execute a command sent from the cell phone, the execution being performed on the content prior to the system directing the content to the cell phone and comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" limitation.

Accordingly, the '973 patent provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '973 patent presents the new teaching in a new light, particularly in view of the Examiner's reason for confirmation of patentability for claim 16 (and claims 84 and 111 that include the same limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. For at least the foregoing reasons, the NAIS article and the 100 and '973 patents establishes a reasonable likelihood that the requester will prevail with respect to claims

Furthermore, neither the '100 patent nor the '973 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Moreover, with regard to Reexamination Control No. 95/001,738, claim 16 was not requested for reexamination.

The '973 patent is not cumulative[22] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent are contextually different from those of previously considered prior art, and discloses the additional feature of "wherein the memory controller is configured to execute a command sent from the cell phone, the execution being performed on the content prior to the system directing the content to the cell phone and comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content"

---

[22] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                        Docket No.: 032697.0007-US07

that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.K, the NAIS article and the '100 and '973 patents discloses all of limitations of the claims listed above, and the combination of the NAIS article and the '100 and '973 patents is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

**L.** **The NAIS Article in Combination with the *Enabling Mobile Network Managers* Article and the '100 patent establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22-24, 90 and 91**

The NAIS article in combination with the *Enabling Mobile Network Managers* article and the '100 patent establishes a RLP for claims 22-24, 90 and 91 of the '716 patent, as set forth in detail below in Section IX.L. The NAIS article in combination with the *Enabling Mobile Network Managers* and the '100 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article, the *Enabling Mobile Network Managers* article and the '100 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 22, stating that the claims require that the notification indicate a time the content itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.L below, the '100 patent (Kane) discloses this feature - notification indicating a time the content itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the '100 patent provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. For at least this reason, a reasonable examiner would necessarily consider the NAIS article in combination with

79

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

the *Enabling Mobile Network Managers* article and the '100 patent important in determining the likelihood of prevailing over claims 22-24, 90 and 91, since the '100 patent discloses the claimed "specifying a time that the content is available" limitation that the Examiner considered to be the distinguishing feature over the prior art of record in the *ex parte* proceeding.

The new technological teaching of the '100 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '100 patent presents the new teaching in a new light, particularly in view of amendments made to claim 22 (and included in new claims 90 and 91) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the '100 patent provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the NAIS article in combination with the *Enabling Mobile Network Managers* article and the '100 patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the *Enabling Mobile Network Managers* nor the '100 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the *Enabling Mobile Network Managers* article nor the '100 patent are cumulative[23] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the *Enabling Mobile Network Managers* article and the '100 patent are contextually different from those of previously considered prior art. Moreover, the '100 patent discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

---

[23] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

As detailed in Section IX.L, the NAIS article in combination with the *Enabling Mobile Network Managers* article and the '100 patent discloses all of limitations of the claims listed above, and the combination of the NAIS article and the *Enabling Mobile Network Managers* article and the '100 patent is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

M.    **The NAIS Article in Combination with the *Enabling Mobile Network Managers* Article, the '100 patent, and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90 and 91**

The NAIS article in combination with the *Enabling Mobile Network Managers* article and the '100 patent and the Furuta publication establishes a RLP for claims 22, 23, 90 and 91 of the '716 patent, as set forth in detail below in Section IX.M. The NAIS article in combination with the *Enabling Mobile Network Managers* and the '100 patent and the Furuta publication teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article, the *Enabling Mobile Network Managers* article and the '100 patent and the Furuta publication was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 22, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.M below, the Furuta publication discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the Furuta publication provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. For at least this reason, a reasonable examiner would necessarily consider the NAIS article in

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

combination with the *Enabling Mobile Network Managers* article and the '100 patent and the Furuta
publication important in determining the likelihood of prevailing over claims listed above, since the
Furuta publication discloses the claimed "specifying a time that the content is available" limitation
that the Examiner considered to be the distinguishing feature over the prior art of record in the *ex
parte* proceeding.

The new technological teaching of the Furuta publication is not cumulative to the
technological teachings provided in the other cited prior art documents, because the Furuta
publication presents the new teaching in a new light, particularly in view of amendments made to
claim 22 (and included in new claims 90 and 91) during the course of prosecution of reexamination
Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above.  In addition, the Furuta
publication provides the additional teaching regarding the notification indicating a time the content
itself is available.  For at least the foregoing reasons, the NAIS article in combination with the
*Enabling Mobile Network Managers* article and the '100 patent and the Furuta publication
establishes a reasonable likelihood that the requester will prevail with respect to the claims listed
above.

Furthermore, neither the *Enabling Mobile Network Managers* nor the '100 patent or the
Furuta publication are of record, and were not relied on by the Examiner during prosecution of the
application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor
considered in the denied *inter partes* request.  Neither the *Enabling Mobile Network Managers*
article nor the '100 patent or the Furuta publication are cumulative[24] to any of the technical
teachings discussed during the prosecution history of the '716 patent, or during the course of the
Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738
proceeding, because the teachings of the *Enabling Mobile Network Managers* article and the '100
patent and the Furuta publication are contextually different from those of previously considered
prior art. Moreover, the Furuta publication discloses the feature "specifying a time that the content

---

[24] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is
one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed
in a prior Office proceeding even though the title or the citation of the reference may be different.  However, it is
expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare
occurrence since most references teach additional information or present information in a different way than other
references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.M, the NAIS article in combination with the *Enabling Mobile Network Managers* article and the '100 patent and the Furuta publication discloses all of limitations of the claims listed above, and the combination of the NAIS article and the *Enabling Mobile Network Managers* article and the '100 patent and the Furuta publication is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

> **N.    The NAIS Article in Combination with the '100 Patent (Kane) and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 28-30, 32, 33, 38, 41, 42, 95, 96, 97, 99, 100 and 103-108**

The NAIS article in combination with the '100 patent and the '616 patent establishes a RLP for claims 28-30, 32, 33, 38, 41, 42, 95, 96, 97, 99, 100 and 103-108 of the '716 patent, as set forth in detail below in Section IX.N. The NAIS article in combination with the '100 patent and the '616 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article, the '100 patent and the '616 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above, claims 15 and 30 were amended in the *ex parte* reexamination proceeding to recite that the request from the cell phone was received at the identified content's location. The examiner allowed these amended claims over Tso because, according to the Examiner, Tso does not use the resource identifier to send a request signal to the identified content's location. Instead, Tso discloses that the request signal is directed to the InfoCast Server—a server which does not contain content—and that the request signal is <u>not</u> transmitted to the content's locations (for example, a server that includes (or stores) content). *See*, IFW of Reexamination Control No. 90/009,880,

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                      Docket No.: 032697.0007-US07

NIRC, pg. 6. Each of the claims listed above depend directly or indirectly from amended claims 15 and 30, or new claims 83 and 97 that include a similar limitation.

As explained in detail in Section IX.N below, the NAIS article in combination with the '100 patent discloses a system wherein the cell phone sends a request signal to the identified content's location, without the use of an InfoCast (or similar) server that does <u>not</u> store content, as disclosed in Tso. Both the NAIS article and the '100 patent disclose the claimed "memory controller is configured to direct the content corresponding to the content identifier from the memory to the cell phone only upon receiving a request from the cell phone <u>at the identified content's location</u> to do so" limitation. As such, the NAIS article, as well as the '100 patent, provide a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs for claims 15 and 30, and the claims depending therefrom, as well as claims 83 and 97, and the claims depending therefrom.

As detailed in Section IX.N, the NAIS article in combination with the '100 patent and the '616 patent discloses all of the limitations of the claims listed above, and the combination of the NAIS article and the 100 patent and the '616 patent is at most the mere application of known techniques to a known system ready for improvement to yield predictable results, thereby establishing a *prima facie* case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

**O.     The NAIS Article in Combination with the '100 Patent (Kane), JP H8-181781 (Furuta), and the '616 Patent (Bjorndahl) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106**

The NAIS article in combination with the '100 patent, the Furuta publication and the '616 patent establishes a RLP for claims 38, 39, 105 and 106 of the '716 patent, as set forth in detail below in Section IX.O. The NAIS article in combination with the '100 patent, the Furuta publication and the '616 patent teaches all of the limitations of claim 38, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article, the '100 patent, the Furuta publication and the '616 patent was not cited or

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                                 Docket No.: 032697.0007-US07

discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 38, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.O. below, the Furuta publication discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the Furuta publication provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the Furuta publication is not cumulative to the technological teachings provided in the other cited prior art documents, because the Furuta publication presents the new teaching in a new light, particularly in view of amendments made to claim 38 (and claim 105 that includes a similar limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the Furuta publication provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the NAIS article in combination with the '100 patent and the Furuta publication and '616 patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the '100 patent nor the Furuta publication are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the '100 patent nor the Furuta publication are cumulative[25] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738

---

[25] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

proceeding, because the teachings of the '100 patent and the Furuta publication are contextually different from those of previously considered prior art. Moreover, the Furuta publication discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.O, the NAIS article in combination with the '100 patent and the Furuta publication and the '616 patent discloses all of limitations of the claims listed above, and the combination of the NAIS article and the '100 patent and the Furuta publication and the '616 patent is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above.  As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

P.      **The NAIS Article in Combination with the '100 Patent (Kane), the '616 Patent (Bjorndahl) and the *Enabling Mobile Network Managers* Article Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 37, 39 and 40**

The NAIS article in combination with the '100 patent, the '616 patent and the *Enabling Mobile Network Managers* article establishes a RLP for claims 37, 39 and 40 of the '716 patent, as set forth in detail below in Section IX.P. The NAIS article in combination with the '100 patent, the '616 patent and the *Enabling Mobile Network Managers* article teaches all of the limitations of claims 37, 39 and 40, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the NAIS article, the '100 patent, the '616 patent and the *Enabling Mobile Network Managers* article was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

Claims 37, 39 and 40 depend from claim 30.  As noted above, claim 30 was amended in the *ex parte* reexamination proceeding to recite that the request from the cell phone was received at the identified content's location.  The examiner allowed these amended claims over Tso because, according to the Examiner, Tso does not use the resource identifier to send a request signal to the identified content's location. Instead, Tso discloses that the request signal is directed to the InfoCast Server—a server which does not contain content—and that the request signal is <u>not</u> transmitted to

86

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

the content's locations (for example, a server that includes (or stores) content). *See*, IFW of

Reexamination Control No. 90/009,880, NIRC, pg. 6.

As explained in detail in Section IX.P below, the NAIS article in combination with the '100

patent discloses a system wherein the cell phone sends a request signal to the identified content's

location, without the use of an InfoCast (or similar) server that does <u>not</u> store content, as disclosed

in Tso. The NAIS article and the '100 patent disclose the claimed "memory controller is configured

to direct the content corresponding to the content identifier from the memory to the cell phone only

upon receiving a request from the cell phone <u>at the identified content's location</u> to do so" limitation.

As such, the NAIS article, as well as the '100 patent, provide a new, non-cumulative technological

teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore

properly establishes RLPs for claim 30, and the claims depending therefrom.

As detailed in Section IX.P, the NAIS article in combination with the '100 patent and the

'616 patent and the *Enabling Mobile Network Managers* article discloses all of the limitations of the

claims listed above, and the combination of the NAIS article, the '100 patent, the '616 patent and

the *Enabling Mobile Network Managers* article is at most the mere application of known techniques

to a known system ready for improvement to yield predictable results, thereby establishing a *prima

facie* case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims listed

above. As such, the present Request establishes a reasonable likelihood of success on the merits

with respect to the claims listed above.

Q.      **The NAIS Article in Combination with the '100 Patent (Kane), the '616 Patent
        and the '973 Patent (Smith) Establishes a Reasonable Likelihood that the
        Requester Will Prevail with Respect to Claims 31, 43, 98 and 109**

The NAIS article in combination with the '100 patent, the '616 patent and the '973 patent

establishes a RLP for claims 31, 43, 98 and 109 of the '716 patent, as set forth in detail below in

Section IX.Q. The NAIS article in combination with the '100 patent, the '616 patent and the '973

patent teaches all of the limitations of the claims 31, 43, 98 and 109, and thus, demonstrates a

reasonable likelihood of success on the merits of the instant request. Furthermore, the combination

of the NAIS article in combination with the '100 patent, the '616 patent and the '973 patent was not

cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, claims 31 and 43 were placed in independent form. The Examiner confirmed the patentability of these claims, citing the following features:

> for claim 31; "receiving from the cell phone, prior to transmitting the available content to the cell phone, a command created at the cell phone" for claim 43 and "the cellular phone, prior to receiving the media content, instructing the remote content storage system, via the cellular network, to forward the media content to another" for claim 58.

> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 8.

As explained in detail below in Section IX.Q., the NAIS article in combination with the '100 patent, the '616 patent, and the '973 patent discloses a system wherein the cell phone sends a command to the system <u>prior</u> to receiving content. In particular, the '973 patent discloses the claimed "receiving from the cell phone, prior to transmitting the available content to the cell phone, a command created at the cell phone" (claim 31) and "the cellular phone, prior to receiving the media content, instructing the remote content storage system, via the cellular network, to forward the media content to another" (claim 43) limitations.

Accordingly, the '973 patent provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '973 patent presents the new teaching in a new light, particularly in view of the Examiner's reason for confirmation of patentability for claims 31 and 43 (and claims 98 and 109 that include a similar limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. For at least the foregoing reasons, the NAIS article and the '100, '616 and '973 patents establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                  Docket No.: 032697.0007-US07

The '973 patent is not cumulative[26] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent are contextually different from those of previously considered prior art, and discloses the additional feature of "performing an action requested by the cell phone on the available content prior to transmitting the available content to the cell phone comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.Q, the NAIS article and the '100, '973 and '616 patents discloses all of the limitations of the claims listed above, and the combination of the NAIS article and the '100, '973 and '616 patents is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

> **R.** **The '973 Patent (Smith) in Combination with the '100 Patent Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 15-18, 21-27, 83-86, 89-94, and 110-115**

The '973 patent in combination with the '100 patent establishes a RLP for claims 15-18, 21-27, 83-86, 89-94, and 110-115 of the '716 patent, as set forth in detail below in Section IX.R. The '973 patent in combination with the '100 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '973 patent and the '100 patent was not cited or discussed in

---

[26] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, the Examiner considered U.S. Patent No. 6,047,327 ("Tso"). In order to distinguish over Tso, the patentee amended original independent claim 15 of the '716 patent. The examiner allowed these amended claims over Tso because, according to the Examiner, Tso does not use the resource identifier to send a request signal to the identified content's location. Instead, Tso discloses that the request signal is directed to the InfoCast Server—a server which does not contain content—and that the request signal is <u>not</u> transmitted to the content's locations (for example, a server that includes (or stores) content). *See*, IFW of Reexamination Control No. 90/009,880, NIRC, pg. 6.

As explained in detail in Section IX.R below, the '973 patent discloses a system wherein the cell phone sends a request signal to the identified content's location, without the use of an InfoCast (or similar) server that does <u>not</u> store content, as disclosed in Tso.  Accordingly, the '973 patent provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '973 patent presents the new teaching in a new light, particularly in view of amendments made to claim 15 (and included in new independent claims 83 and 110) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01[27]), as discussed above.  In addition, the '973 patent provides the additional teaching regarding sending a request signal to the identified content's location.  For at least the foregoing reasons, the '973 patent in combination with the '100 Patent establishes a reasonable likelihood that the requester will prevail with respect to independent claim 15, dependent claims 17, 18, 21 and 24-27 which depend therefrom, and newly added claims 83-86, 89-94, and 110-115, since the '973

---

[27] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different.  However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

patent discloses the claimed <u>"receiving a request from the cell phone at the identified content's</u> <u>location"</u> limitation.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, claim 16 was placed in independent form. The Examiner confirmed the patentability of independent claim 16, stating the following:

> The examiner further notes that each of these claims require the reception of a command (to be executed for content) from the cell phone <u>prior</u> to the cell phone receiving the content. The commands, as recited in the claims include one of delete the content, forward the content to a specified recipient, save the content, or reply to the content.
>
> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 8 (emphasis in original).
>
> The examiner notes that the citations relied upon in the Request failed to meet the claim language. The claim requires the cell phone to send a command to the system <u>prior</u> to receiving content. Thus, in the context of the claims, the cell phone user will get a notification of the content, and in response, the cell phone user will send a command so that the system can e.g., forward, save, delete etc., the content prior to the system sending the content to the cell phone.
>
> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 9 (emphasis in original).

As explained in detail below in Section IX.R., the combination of the '973 patent with the '100 patent discloses a system wherein the cell phone sends a command to the system <u>prior</u> to receiving content.  In particular, the '973 patent discloses the claimed "wherein the memory controller is configured to execute a command sent from the cell phone, the execution being performed on the content prior to the system directing the content to the cell phone and comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" limitation.

Accordingly, the '973 patent provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '973 patent

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

presents the new teaching in a new light, particularly in view of the Examiner's reason for confirmation of patentability for claim 16 (and claims 84 and 111 that include the same limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. For at least the foregoing reasons, the '100 and '973 patents establishes a reasonable likelihood that the requester will prevail with respect to claims

Furthermore, neither the '100 patent nor the '973 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Moreover, with regard to Reexamination Control No. 95/001,738, claim 16 was not requested for reexamination.

The '973 patent is not cumulative[28] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent are contextually different from those of previously considered prior art, and discloses the additional feature of "wherein the memory controller is configured to execute a command sent from the cell phone, the execution being performed on the content prior to the system directing the content to the cell phone and comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 22, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.R below, the '100 patent (Kane) discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the

---

[28] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                     Docket No.: 032697.0007-US07

'100 patent provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. For at least this reason, a reasonable examiner would necessarily consider the '973 patent and the '100 patent important in determining the likelihood of prevailing over claims 22-23, 90 and 91, since the '100 patent discloses the claimed "specifying a time that the content is available" limitation that the Examiner considered to be the distinguishing feature over the prior art of record in the *ex parte* proceeding.

The new technological teaching of the '100 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '100 patent presents the new teaching in a new light, particularly in view of amendments made to claim 22 (and included in new claims 90 and 91) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the '100 patent provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the '973 patent and the '100 patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the '973 patent nor the '100 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the '973 patent nor the '100 patent are cumulative[29] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent and the '100 patent are contextually different from those of previously considered prior art. Moreover, the '100 patent discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

---

[29] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                          Docket No.: 032697.0007-US07

As detailed in the claim charts below Section IX.R, the combination of the '973 and '100 patents discloses all of the limitations of the claims listed above, and the combination of the '100 and '973 patents is at most the mere application of known techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

     **S.**     **The '973 Patent (Smith) in Combination with the '100 Patent and JP H8-181781 (Furuta) Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 22, 23, 90, 91, 114 and 115**

The '973 patent in combination with the '100 patent and the Furuta publication establishes a RLP for claims 22, 23, 90, 91, 114 and 115 of the '716 patent, as set forth in detail below in Section IX.S. The '973 patent in combination with the '100 patent and the Furuta publication teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '973 patent and the '100 patent and the Furuta publication was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 22, stating that the claims require that the notification indicate a time the content itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.S below, the Furuta publication discloses this feature - notification indicating a time the content itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the Furuta publication provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. For at least this reason, a reasonable examiner would necessarily consider the '973 patent in combination with the '100 patent and the Furuta publication important in determining the likelihood of prevailing over claims listed above, since the Furuta publication discloses the claimed

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716

Docket No.: 032697.0007-US07

"specifying a time that the content is available" limitation that the Examiner considered to be the distinguishing feature over the prior art of record in the *ex parte* proceeding.

The new technological teaching of the Furuta publication is not cumulative to the technological teachings provided in the other cited prior art documents, because the Furuta publication presents the new teaching in a new light, particularly in view of amendments made to claim 22 (and included in new claims 90, 91, 114 and 115) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the Furuta publication provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the '973 patent in combination with the '100 patent and the Furuta publication establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the '973 patent nor the '100 patent or the Furuta publication are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the '973 patent nor the '100 patent or the Furuta publication are cumulative[30] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent and the '100 patent and the Furuta publication are contextually different from those of previously considered prior art. Moreover, the Furuta publication discloses the feature "specifying a time that the content is available" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.S, the '973 patent in combination with the '100 patent and the Furuta publication discloses all of limitations of the claims listed above, and the combination of the '973 patent and the '100 patent and the Furuta publication is at most the mere application of known

---

[30] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                     Docket No.: 032697.0007-US07

techniques to a known system ready for improvement to yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection 35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

> ### T. The '973 Patent in Combination with the '100 Patent and the '616 Patent Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 28-33, 37-43, 95-100, and 103-109

The '973 patent in combination with the '100 patent and the '616 patent establishes a RLP for claims 28-33, 37-43, 95-100, and 103-109 of the '716 patent, as set forth in detail below in Section IX.T. The '973 patent in combination with the '100 patent and the '616 patent teaches all of the limitations of the claims listed above, and thus demonstrates a reasonable likelihood of success on the merits of the instant request. Furthermore, the combination of the '973 patent, the '101 patent and the '616 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above, claims 15 and 30 were amended in the *ex parte* reexamination proceeding to recite that the request from the cell phone was received at the identified content's location. The examiner allowed these amended claims over Tso because, according to the Examiner, Tso does not use the resource identifier to send a request signal to the identified content's location. Instead, Tso discloses that the request signal is directed to the InfoCast Server—a server which does not contain content—and that the request signal is <u>not</u> transmitted to the content's locations (for example, a server that includes (or stores) content). *See*, IFW of Reexamination Control No. 90/009,880, NIRC, pg. 6. Each of the claims listed above depend directly or indirectly from amended claims 15 and 30, or new claim 97 that includes a similar limitation.

As explained in detail in Section IX.T below, the '973 patent in combination with the '100 and '616 patents discloses a system wherein the cell phone sends a request signal to the identified content's location, without the use of an InfoCast (or similar) server that does <u>not</u> store content, as disclosed in Tso. Both the '973 patent and the '100 patent disclose the claimed "memory controller is configured to direct the content corresponding to the content identifier from the memory to the

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

cell phone only upon receiving a request from the cell phone <u>at the identified content's location</u> to do so" limitation. As such, the '973 patent, as well as the '100 patent, provide a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs for claims 15 and 30, and the claims depending therefrom, as well as claims 97, and the claims depending therefrom.

As noted above in Section V.C, during the course of prosecution of the Reexamination Control No. 90/009,880 proceeding, claims 31 and 43 were placed in independent form. The Examiner confirmed the patentability of these claims, citing the following features:

> for claim 31; "receiving from the cell phone, prior to transmitting the available content to the cell phone, a command created at the cell phone" for claim 43 and "the cellular phone, prior to receiving the media content, instructing the remote content storage system, via the cellular network, to forward the media content to another" for claim 58.

> IFW of Reexamination Control No. 90/009,880, NIRC, pg. 8.

As explained in detail below in Section IX.T., the '973 patent in combination with the '100 patent and the '616 patent discloses a system wherein the cell phone sends a command to the system <u>prior</u> to receiving content. In particular, the '973 patent discloses the claimed "receiving from the cell phone, prior to transmitting the available content to the cell phone, a command created at the cell phone" (claim 31) and "the cellular phone, prior to receiving the media content, instructing the remote content storage system, via the cellular network, to forward the media content to another" (claim 43) limitations.

Accordingly, the '973 patent provides a new, non-cumulative technological teaching that was not before the Office in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the '973 patent is not cumulative to the technological teachings provided in the other cited prior art documents, because the '973 patent presents the new teaching in a new light, particularly in view of the Examiner's reason for confirmation of patentability for claims 31 and 43 (and claims 98 and 109 that include a similar limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. For at least the foregoing reasons, the '973 patent, the '100 and

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

'616 patents establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

The '973 patent is not cumulative[31] to any of the technical teachings discussed during the prosecution history of the '716 patent, or during the course of the Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738 proceeding, because the teachings of the '973 patent are contextually different from those of previously considered prior art, and discloses the additional feature of "performing an action requested by the cell phone on the available content prior to transmitting the available content to the cell phone comprising at least one of the following: delete the content, forward the content to a specified recipient, save the content, or reply to the content" that the Examiner relied upon in confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.T, the '973 patent in combination with the '100 patent and the '616 patent discloses all of the limitations of the claims listed above, and the combination of the '973 patent and the 100 patent and the '616 patent is at most the mere application of known techniques to a known system ready for improvement to yield predictable results, thereby establishing a *prima facie* case of obviousness justifying a rejection under 35 U.S.C. § 103 for each of the claims listed above. As such, the present Request establishes a reasonable likelihood of success on the merits with respect to the claims listed above.

    U.    **The '973 Patent in Combination with the '100 Patent, JP H8-181781 (Furuta), and the '616 Patent Establishes a Reasonable Likelihood that the Requester Will Prevail with Respect to Claims 38, 39, 105 and 106**

The '973 patent in combination with the '100 patent, the Furuta publication and the '616 patent establishes a RLP for claims 38, 39, 105 and 106 of the '716 patent, as set forth in detail below in Section IX.U. The '973 patent in combination with the '100 patent, the Furuta publication and the '616 patent teaches all of the limitations of claim 38, and thus demonstrates a reasonable

---

[31] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                    Docket No.: 032697.0007-US07

likelihood of success on the merits of the instant request. Furthermore, the combination of the '973 patent, the '100 patent, the Furuta publication and the '616 patent was not cited or discussed in the prosecution history of the '716 patent, or during the course of the respective proceedings of Reexamination Control Nos. 90/009,880 and 95/001,738.

As noted above in Section V.C, the NIRC in the *ex parte* reexamination confirmed the patentability of amended claim 38, stating that the claims require that the notification indicate a time the <u>content</u> itself -- and not an identifier of the content, such as the Info Bite disclosed in the Tso patent -- is available. As will be explained in more detail in Section IX.U. below, the Furuta publication discloses this feature - notification indicating a time the <u>content</u> itself, and not an identifier of the content, such as the Info Bite disclosed in the Tso patent, is available. As such, the Furuta publication provides a new, non-cumulative technological teaching not considered by the Examiner in the prior proceedings for the '716 patent, and therefore properly establishes RLPs. The new technological teaching of the Furuta publication is not cumulative to the technological teachings provided in the other cited prior art documents, because the Furuta publication presents the new teaching in a new light, particularly in view of amendments made to claim 38 (and claim 105 that includes a similar limitation) during the course of prosecution of reexamination Control No. 90/009,880 (*see* M.P.E.P. § 2258.01), as discussed above. In addition, the Furuta publication provides the additional teaching regarding the notification indicating a time the content itself is available. For at least the foregoing reasons, the '973 patent in combination with the '100 patent and the Furuta publication and '616 patent establishes a reasonable likelihood that the requester will prevail with respect to the claims listed above.

Furthermore, neither the '973 patent nor the Furuta publication are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880, nor considered in the denied *inter partes* request. Neither the '973 patent nor the Furuta publication are cumulative[32] to any of the technical teachings

---

[32] As M.P.E.P. 2258.01(B)(3) states in part: "For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter."

Request for *Inter Partes* Reexamination of
U.S. Patent No. 7,499,716                                   Docket No.: 032697.0007-US07

discussed during the prosecution history of the '716 patent, or during the course of the
Reexamination Control No. 90/009,880 proceeding or the Reexamination Control No. 95/001,738
proceeding, because the teachings of the '973 patent and the Furuta publication are contextually
different from those of previously considered prior art. Moreover, the Furuta publication discloses
the feature "specifying a time that the content is available" that the Examiner relied upon in
confirming patentability over the art of record in the *ex parte* reexamination proceeding.

As detailed in Section IX.U, the '973 patent in combination with the '100 patent and the
Furuta publication and the '616 patent discloses all of limitations of the claims listed above, and the
combination of the '973 patent and the '100 patent and the Furuta publication and the '616 patent is
at most the mere application of known techniques to a known system ready for improvement to
yield predicable results, thereby establishing a *prima facie* case of obviousness justifying a rejection
35 U.S.C. § 103(a) for each of the claims listed above. As such, the present Request establishes a
reasonable likelihood of success on the merits with respect to the claims listed above.

IX.   **DETAILED EXPLANATION OF THE PROPOSED REJECTIONS AND
      PERTINENCY AND MANNER OF APPLYING THE PATENTS AND PRINTED
      PUBLICATIONS PURSUANT TO 37 C.F.R. § 1.915(b)(3)**

The following statements are made, pursuant to 37 C.F.R. § 1.915(b)(3), pointing out the
pertinency and manner of applying the patents and printed publication such that the Requester has
provided a reasonable likelihood that the Requester will prevail on these claims (based on the prior
art patents and printed publications listed above in Section V and annexed hereto), in accordance
with the "broadest reasonable interpretation" standard as set forth in, *e.g.*, M.P.E.P. §§ 2658;
2258(I)(G). ("During reexamination, as with original examination, the PTO must give claims their
broadest reasonable construction consistent with the specification." *In re ICON Health & Fitness,
Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) (citing *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359,
1364 (Fed. Cir. 2004))). As set forth in detail below, the foregoing prior art patents and printed
publications would have been considered important by a reasonable Examiner in deciding whether
to allow claims 15-18, 21-33, 37-43, 83-86, 89-100 and 103-115 of the '716 patent, particularly in
light of the arguments made by the Applicants during prosecution, and therefore these prior art
patents and printed publications provide a reasonable likelihood that the Requester will prevail on
these claims: