**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC., | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-07189 |
| | ) | |
| THE BON-TON STORES, INC., | ) | |
| a Pennsylvania corporation, | ) | |
| Defendant. | ) | (Jury Trial Demanded) |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against Defendant The Bon-Ton Stores, Inc ("Bon-Ton" or "Defendant") as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. § 101 et seq., including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## THE PARTIES

2.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of thirty (30) U.S. patents, six (6) pending U.S.

patent applications, and over a dozen related foreign patents and patent applications all relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio"). The HPL Portfolio includes the patents and applications listed in Exhibit A.

3.     Defendant Bon-Ton is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. Bon-Ton is a retailer of apparel, shoes, cosmetics, jewelry, furniture, and bedding, among other things. Bon-Ton operates 275 stores through its subsidiaries, with two (2) stores in Chicago, Illinois.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Bon-Ton because Bon-Ton conducts substantial and continuous business in the State of Illinois and in this District, including operating two stores in Chicago, Illinois. Further, Bon-Ton purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

5.     Venue is appropriate pursuant to 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, has a regular and established place of business in this District, and has directed or sent infringing content to residents of this State and District.

## BACKGROUND

The Patents in Suit

6.      On October 9, 2007, United States Patent and Trademark Office ("PTO") issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent").  HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

7.      On March 3, 2009, the PTO issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

8.      On November 16, 2010, the PTO issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent").  HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

9.      On January 31, 2012, the PTO issued Patent No. 8,107,601 entitled "Wireless Messaging System" (the "'601 patent").  HPL is the exclusive licensee of all right, title, and interest in the '601 patent.

10.     On February 14, 2012, the PTO issued Patent No. 8,116,741 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'741 patent").  HPL is the exclusive licensee of all right, title, and interest in the '741 patent.

11.     On March 13, 2012, the PTO issued Patent No. 8,134,450 entitled "Content Provision to Subscribers via Wireless Transmission" (the "'450 patent").  HPL is the exclusive licensee of all right, title, and interest in the '450 patent.

12.     The '757, '716, '838, '601, '741, and '450 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones.  The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message).  The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message.  The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers', and fans' mobile phones via SMS or MMS.  Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone.  The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such as "24 hour sale" information; (4) a request for a delivery confirmation of an MMS message; (5) error status information when retrieving content; and/or (6) MMS messages from which users can request—and content providers receive—commands regarding the content such as commands to delete, reply to, or forward the content.

Representative Infringement

13.     Within the last six (6) years, Defendant has initiated and caused numerous such messages to be sent in connection with at least the following product and service offerings:

(a) Bon-Ton creates and causes (or has created and caused) text alerts to be sent to its customers' mobile devices alerting its customers of various coupons and other offerings that often include(or included) an identifier of content (such as a URL) within the notification.  Moreover, such notifications often link to dynamic content (e.g., content that is changed between the time of the original notification and the time such content is requested), indicate the time the identified content is to be available, or include shortened URLs which rely on error status information to be used when requesting the content.  For example, on November 22, 2010, Bon-Ton created and caused an SMS message to be sent to its mobile alert subscribers related to Bon-Ton's "hottest deals."  The SMS message linked to a listing of sale items at a local Bon-Ton store location.  Figures 1 and 2, below, show the message and the content.



266866: Want a sneak peek of Bon-Ton doorbusters? Find our hottest deals here! http://bit.ly/bjPrMh RplySTOP2quit
Mon, Nov 22, 2010, 9:03 AM

**Figures 1 and 2.**

Figure 1 provides an example of an SMS message created and caused to be delivered by Bon-Ton containing a specific URL identifying

the Bon-Ton content shown in Figure 2, which Bon-Ton delivered to a mobile phone upon a request (using the provided URL) to do so. The provided content relates to Bon-Ton sales.



(b)   Bon-Ton also causes (or has caused) infringing messages to be sent through its various social media websites.  For example, in conjunction with its @thebonton Twitter feed, Bon-Ton causes infringing SMS messages to be sent to its "followers" daily.  As demonstrated below in Figures 3 and 4, many of the messages indicate the time the content is available, contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by Bon-Ton's customers, or include shortened URLs which rely on error status information to be used when requesting the content.





**Figures 3 and 4.** Content pushed through the @thebonton Twitter feed including both dynamic and time sensitive content.

14.    On or about March 28, 2011, HPL gave written notice to Bon-Ton of its infringement of the '716, '838, and '757 patents, and notice that U.S. Patent Application Nos. 11/598,202, 12/167,971, and 12/367,358 (now the '601, '741, and '450 patents, respectively) would be infringed once issued as patents. The notice letter provided Bon-Ton with a detailed description of the claims, and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.

15.    For nearly a year, Bon-Ton has continued to infringe HPL's patents while repeatedly refusing to accept a license on HPL's well-established and reasonable licensing terms. Bon-Ton refused a license even in the face of the PTO both confirming existing claims and allowing new claims over express consideration of the prior art and

arguments proffered by New York Times Company and others now cooperating with New York Times Company and Bon-Ton. For example:

(a)     Prior to filing suit, HPL advised Bon-Ton of its progress in licensing, litigation and patent prosecution, including providing periodic updates regarding the pending reexamination proceedings filed by New York Times Company. For example, on May 26 and June 10, 2011, respectively, HPL requested that Bon-Ton reconsider its refusal to accept a license on HPL's established terms and advised Bon-Ton that HPL anticipated a significant number of infringed claims to be confirmed as patentable over the reexamination requests. Bon-Ton never acknowledged HPL's May 26 or June 10 letters.

(b)     As previously mentioned,  the PTO confirmed as patentable numerous infringed claims in the three *ex parte* reexamination proceedings over express consideration of New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint. Notwithstanding the PTO confirming the claims asserted in this Complaint, Bon-Ton continued to refuse a license.

(c)     On September 6, 2011, after the PTO confirmed and allowed numerous infringed claims of HPL's patents and applications over New York Times Company's invalidity arguments, Bon-Ton joined with several other companies (including New York Times Company) in filing yet another round of reexamination requests for the same three (3) patents asserted herein. These new reexamination requests failed to seek reexamination of all claims asserted to be

infringed by Bon-Ton, including ***at least*** asserted claim 1 of the '757 patent, and claims 38 and 39 of the '716 patent. Notwithstanding the *inter partes* reexamination requests failing to seek reexamination of all claims asserted herein, Bon-Ton refused a license on terms consistent with HPL's many licensees and continued to infringe HPL's patents.

(d)     As previously stated, on October 28, 2011 and November 4, 2011, respectively, the PTO issued non-appealable orders fully denying all three of the New York Times defense group's requests for *inter partes* reexaminations. Notwithstanding the outright denial of all three *inter partes* reexamination requests, Bon-Ton continued to refuse a license on terms consistent with HPL's many licensees and continued to infringe HPL's patents.

(e)     As discussed above, the PTO has allowed and issued HPL three new patents over express consideration of the *ex parte* and first *inter partes* reexamination requests (including all of the art and arguments proffered by New York Times, Bon-Ton and their defense group members in those requests). Notwithstanding, Bon-Ton continued to refuse a license on terms consistent with HPL's many licensees and to infringe HPL's patents.

(f)     To date, over one hundred substantial companies have agreed to a license to the '838, '716, '757, '601, '741 and '450 patents, including the following entities: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle

Outfitters, American Greetings, Apple, Carnival Cruise Lines, Dairy Queen, Dell, DexOne, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steven Madden, Taco Bell, Walgreens, Wal-mart, Yamaha, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

The Prior Reexamination Requests

16.     On February 25, 2011, the New York Times Company ("NYT") filed three *ex parte* reexamination requests in the PTO, one for each of the '757, '716, and '838 patents (referred to as the "first round" of reexamination requests).  In the initial office actions in each of the three *ex parte* reexamination requests, without any substantive input from HPL, the PTO summarily determined that numerous invalidity contentions presented by NYT failed to raise a substantial new question of patentability with respect to any HPL claim.  In its final orders, after consideration of all of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests (discussed below), the PTO did not require HPL to cancel any claims or find any claims invalid; rather, the PTO confirmed as patentable a total of 313 claims in the '716, '757, and '838 patents on October 25, 2011, December 9, 2011, and February 6, 2012 respectively as follows:

(a) With respect to the '716 patent, the PTO confirmed patentable 16 original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and 65 new claims, including claims 70-134.

(b) With respect to the '757 patent, the PTO confirmed patentable 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims stated by the Examiner to have minor clarifying amendments, including claims 2-5, 7-10, and 12-17; and 49 new claims, including claims 21-69.

(c) With respect to the '838 patent, the PTO confirmed as patentable 76 original claims, including claims 1-44 and 48-84; 20 claims with minor clarifying amendments, including claims 45-47 and 85-96; and 14 new claims, including claims 97-110.

17.    At some time prior to September 6, 2011, NYT, and several other alleged infringers of HPL's patents formed a patent defense group for the purpose of opposing HPL's patent licensing program.  This defense group includes, on information and belief, at least NYT, Best Buy, Inc., Bon-Ton, Bravo, CBS, G4 Media, and likely others (referred to collectively as "the NYT Defense Group").   On information and belief, the NYT Defense Group is operating under one or more written "defense group agreements" that set forth the terms and conditions upon which the members hire and pay for their operations and coordinate working together to oppose HPL's licensing and enforcement

efforts, and establish the consequences if one of the defense group members settles with HPL.

18.     On September 6, 2011, after the PTO confirmed as patentable numerous infringed claims of HPL's patents and applications over NYT's *ex parte* reexamination requests, the NYT Defense Group filed a second round of reexamination requests against the '757, '716, and '838 patents—this time *inter partes* reexamination requests.

(a)  On October 28, 2011, without any substantive input from HPL, the PTO issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety.  According to the order, the PTO had reviewed each of the references and combinations cited by the NYT Defense Group, stating that "The references set forth in the request have been considered both alone and in combination.  They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims.  Accordingly, the request for reexamination is denied."

(b)  On November 4, 2011, without any substantive input from HPL, the PTO issued non-appealable orders similarly denying the requests for *inter partes* reexaminations of the '757 and '716 patents as failing to raise a substantial new question of patentability.

In sum, the PTO has disposed of six reexamination requests (including denying outright all three *inter partes* reexaminations) filed by NYT and the NYT Defense Group against HPL's patents.

19.     During the same period, the PTO issued the '741, '601, and '450 patents after express consideration of all of NYT's and NYT Defense Group's *ex parte* and *inter partes* reexamination requests, art, and arguments.  As discussed below, the '741, '601, and '450 patents include more than fifty additional claims that HPL believes are infringed by content providers, such as NYT.

20.     On December 25, 2011 and January 6, 2012, Defendant and the NYT Defense Group began filing a third round of reexamination requests (in this case *inter partes* requests) against HPL Patent Nos. 7,155,241 (not asserted herein and not previously the subject of a reexamination request) and 7,499,716 (asserted herein and subject to two prior requests as discussed above).  Defendant and the NYT Defense Group requested that the reexamination request of the '716 patent be assigned to new examiners that would not have detailed knowledge of the prior two rounds of reexamination requests.

21.     In January 2012, HPL filed Information Disclosure Statements in the still-pending *ex parte* reexamination proceeding of the '838 patent and in related pending applications.  That IDS included copies of the NYT Defense Group's newest *inter partes* reexamination requests of the '241 and '716 patents (and the art and arguments discussed therein).

        (a) Shortly thereafter, the '838 patent reexamination Examiner reviewed
    that IDS and issued the Notice of Intent to Issue a Reexamination Certification
    ("NIRC").  In that NIRC, the reexamination Examiner confirmed as patentable the

claims of the '838 patent over the NYT Defense Group's third round

reexamination art and arguments.

(b) On March 20, 2012, one of HPL's related pending applications,

Application No. 12/580,189 received an official Notice of Allowance. In that

Notice of Allowance, the Examiner allowed all of the claims of the '189

application over the NYT Defense Group's third round reexamination art and

arguments.

HPL believes the NYT Defense Group intends to continue filing intentionally staggered

requests for reexamination to hamper this litigation indefinitely.

<u>Additional Conduct by Defendant Establishing Willful Infringement</u>

22.    Defendant and the NYT Defense Group have willfully, intentionally,

inequitably, and in bad faith infringed HPL's patents, without reasonable basis to believe

it had the right to do so, and engaged in other conduct injurious to HPL as evidenced by

the totality of the circumstances, including among other things, the following wrongful

actions:

(a)    As set forth above in Paragraphs 16-21, the NYT Defense Group

approved and agreed to a strategy of filing repeated, staggered and seriatim

reexamination requests, including making at least 69 invalidity arguments that

were determined by the PTO to be without merit or merely cumulative without

requiring any substantive comment from HPL. On information and belief, the

NYT Defense Group has done so in furtherance of a plan to harass HPL, increase

HPL's expenses, and stall HPL's licensing program.

(b)     NYT (and if in existence at the time, the NYT Defense Group) made numerous false or misleading statements to the PTO in the first round of reexaminations filed on February 25, 2011 (*ex parte* reexaminations Control Nos. 90/009,880, 90/009,882, and 90/009,883), as set forth in detail in Paragraph 27, below.

(c)     Defendant and the NYT Defense Group made numerous false or misleading statements to the PTO in the second round of reexaminations filed on September 6, 2011 (*inter partes* reexaminations Control Nos. 95/001,738, 95/001,739, 95/001,740), as set forth in detail in Paragraph 28, below.

(d)     Defendant and the NYT Defense Group made numerous false or misleading statements in the third round reexamination request of the '716 patent, filed on January 6, 2012 (*inter partes* reexamination Control No. 95/001,867) and the '241 patent, filed December 29, 2011 (*inter partes* reexamination Control No. 95/001,864), as set forth in detail in Paragraph 29, below.

(e)     Defendant and the NYT Defense Group repeated several of the false or misleading statements made to the PTO in the first, second and third rounds of reexaminations in court filings before the United States District Court for the Northern District of Illinois, as set forth in detail in Paragraph 30, below.

(f)     Defendant and the NYT Defense Group approved Phoenix Newspapers, Inc. (which is, on information and belief, a member of the NYT Defense Group represented by the same counsel) repeating many of the false or misleading statements made to the PTO in the first, second and third rounds of

reexaminations in court filings in the United States District Court for the District of Arizona, as set forth in Paragraph 31, below.

(g)     Defendant and members of the NYT Defense Group declined reasonable settlement proposals from HPL, and on information and belief, agreed with other NYT Defense Group members not to conduct individual settlement negotiations with HPL, or settle with HPL without prior disclosure to or approval of other NYT Defense Group members.

(h)     Defendant and the NYT Defense Group has ignored PTO decisions favorable to HPL in the reexamination proceedings, and instead, continues to infringe HPL's patents.

23.     Every attorney and patent agent who practices before the PTO is subject to the disciplinary rules of the PTO's Office of Enrollment and Discipline (OED). 37 C.F.R. §§ 10-11. The USPTO rules relating to misconduct are set forth in 37 C.F.R. § 10.23. A practitioner engages in misconduct if he or she "[e]ngages in conduct involving dishonesty, fraud, deceit, or misrepresentation" or "[k]nowingly give[s] false or misleading information or knowingly participating in a material way in giving false or misleading information, to . . . [t]he Office or any employee of the Office." 37 C.F.R. §§ 10.23(4) and (c)(2).

24.     Many of the false or misleading statements made by Defendant and the NYT Defense Group as detailed below in Paragraphs 27-29 relate to repeated efforts to induce the PTO to believe that certain references relied upon by Defendant and the NYT Defense Group were not cited previously, or were not previously considered or relied

upon by the PTO, during prosecution of the various patents in suit. Defendant expected the PTO to rely on all the statements made in the reexamination filings, including those that were false or misleading, regarding whether references were previously cited or considered during prosecution of HPL's patents.

25. During the second round of reexaminations (the *inter partes* reexaminations), the Examiner expressly identified and noted one of the attempts by Defendant and the NYT Defense Group to induce the PTO to believe that a particular reference had not previously been considered or relied upon during prosecution of the '716 patent, when in fact that reference had been cited, considered, and relied upon. Specifically, the NYT Defense Group's September 6, 2011 *inter partes* reexamination request of the '757 patent (Control No. 95/001,739) was assigned to the same Examiner (Examiner Escalanate) that was reviewing NYT's *ex parte* reexamination request of the 757 patent (Control No. 90/009,882). Examiner Escalante pointed out that NYT and the NYT Defense Group falsely stated in its second round of reexaminations that he had "not considered" or "relied upon" the Bjorndahl reference, when indeed he *had* considered and relied upon the reference. Specifically, Examiner Escalante stated:

> "As per Bjorndahl, ***the [NYT Defense Group] Request notes that the reference was not considered by the examiner during the prosecution of the '716 patent. The Request did not provide any explicit statement of the substantial new question raised with respect to Bjorndahl. In addition, the examiner notes that Bjorndahl was relied upon during reexamination control number 90/009,880.*** The examiner, however, acknowledges that Bjorndahl is being used in a new light since it is used in conjunction with different primary references; however, as noted above, the Request has not established a substantial new question over those primary references."

*See* Order Denying *Inter partes* Reexamination, Control No. 95/001,738 at 25 (emphasis added).

26. Notwithstanding this prior correction, and knowing that new Examiners were requested and would be assigned to the newly filed *inter partes* reexamination requests, Defendant and the NYT Defense Group members continued to make numerous additional false or misleading statements to the PTO in an effort to convince the new Examiners that references had not been cited or considered in prior PTO proceedings, when in fact they had earlier been cited or considered—including the false statement previously corrected by the PTO. For example, in the newest *inter partes* reexamination request, Control No. 95/001,867, Defendant and the NYT Defense Group made the same false statement that the Bjorndahl reference was *not* earlier considered by the Examiner, when in fact it had been considered, as discussed above. *See infra* ¶ 29(e).

27. NYT (and if in existence at the time, the NYT Defense Group) made the following false or misleading statements to the PTO in the first round of reexaminations filed on February 25, 2011, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) False Statement 1: "The Tso patent was not previously and expressly considered on the record nor discussed on the record during prosecution of the '757 patent." *See* Request for *Ex Parte* Reexamination of U.S. Patent No. 7,835,757, Control No. 90/009,882 ("'882 Reexam Request") at 16.

- Fact 1: The Tso patent was cited during prosecution of the '757 patent in an IDS dated June 22, 2010, was expressly considered on the record by the

Examiner of the '757 patent as shown by his initials on a "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears of the face of the '757 patent as a "Reference Cited." *See* Exhibit B ¶ 1.

(b) <u>False Statement 2</u>: "The Applicant initially cited the Tso patent in an IDS dated June 22, 2010, along with a large volume of other prior art…. Nor did the Applicant draw any particular attention to the Tso patent to highlight its materiality from among the large number of references initially cited in the June 22, 2010 IDS." *See* '882 Reexam Request at 15.

- <u>Fact 2</u>: The Tso patent was the only U.S. patent listed on Applicant's June 22, 2010 IDS, one of only 4 total references cited therein (i.e., not a "large volume"), and the remarks accompanying the June 22, 2010 IDS drew particular attention to the Tso patent by expressly highlighting that it had been received from a "prospective licensee." *See* Exhibit B ¶ 2.

(c) <u>False Statement 3</u>: "The Applicant did not file any such petition, and the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner." *See* '882 Reexam Request at 12.

- <u>Fact 3</u>: The '757 patent issued on November 16, 2010 ***after*** consideration of the Tso patent by the Examiner who indicated that "All references considered except where lined through," on the September 17, 2010 "List of References Cited and Considered by Examiner" (and did ***not*** line through Tso). *See* Exhibit B ¶ 3.

(d)  <u>False Statement 4</u>: "The '449 [Metroka] patent was cited during prosecution but was not considered by the Examiner during prosecution of the '838 patent." *See* Request for *Ex parte* Reexamination, 90/009,883 ("'883 Reexam Request") at 26.

- <u>Fact 4</u>: The '449 Metroka patent was considered three times by the Examiner during the original prosecution of the '838 patent as shown by the Examiner's signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited." *See* Exhibit B ¶ 4.

(e)  <u>False Statement 5</u>: "The Jasinski '446 patent was not considered by the Examiner during prosecution of the '838 patent."  *See* '883 Reexam Request at 29-30.

- <u>Fact 5</u>: The Jasinski '446 patent was cited on an IDS submitted on February 15, 2007, during the original prosecution of the '838 patent, and that IDS informed the Examiner that Jasinski was applied to reject claims in a parent case, stating: "the Examiner may wish to review the decisions of the prior Examiners in the parent cases, includ[ing] the references applied in rejecting earlier-submitted claims."  Thereafter, the Jasinski '446 patent was considered by the Examiner during prosecution of the '838 patent on three separate occasions as shown by his signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and the Jasinski '446 patent appears on the face of the '838 patent as a "Reference Cited."  *See* Exhibit B ¶ 5.

28.    Defendant and the NYT Defense Group made the following false or misleading statements to the PTO in the second round of reexaminations filed on September 6, 2011, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) <u>False Statement 6</u>:  "the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner."  *See* Request for *Inter partes* Reexamination, 95/001,739 ("'739 Reexam Request") at 17.

- <u>Fact 6</u>: The Tso patent was cited during prosecution of the '757 patent in an IDS dated June 22, 2010, was expressly considered on the record by the Examiner of the '757 patent as shown by his initials on a "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears of the face of the '757 patent as a "Reference Cited."  *See supra* ¶ 27(a) and Exhibit B ¶ 6.

(b) <u>False Statement 7</u>:  "the '415 [Rossmann] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent."  *See* '739 Reexam Request at 26 (emphasis in original).

- <u>Fact 7</u>: The '415 Rossmann patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010 and its technological teachings were considered on the record during the original prosecution of the '757 patent as shown by the Examiner's initials on the "List of References Cited and

Considered" by Examiner dated September 17, 2010, and appears on the face of the '757 patent as a "Reference Cited." *See* Exhibit B ¶ 7.

(c) <u>False Statements 8 and 9</u>: "the '167 [Boyle] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent." *See* '739 Reexam Request at 29 and repeated at 32 (emphasis original in both instances).

- <u>Facts 8 and 9</u>: The '167 Boyle patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010 and its technological teachings considered on the record during the original prosecution of the '757 patent as shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears on the face of the '757 patent as a "Reference Cited." *See* Exhibit B ¶¶ 8 and 9.

(d) <u>False Statements 10 and 11</u>:

(i) "The NAIS article was not considered by the Examiner during prosecution of the application that gave rise to the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* '739 Reexam Request at 33.

(ii) "<u>the NAIS article and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent</u>." *See* '739 Reexam Request at 36 (emphasis in original).

- <u>Facts 10 and 11</u>: The NAIS article was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings considered on the record during the prosecution of the '757 patent as shown by

the Examiner's initials on the "List of References Cited and Considered by Examiner" dated October 4, 2010 and appears on the face of the '757 patent as a "Reference Cited." The NAIS article was also cited during the *ex parte* reexamination of the '757 patent in an IDS dated April 28, 2011 and its technological teaches considered on the record during the *ex parte* reexamination of the '757 patent as shown by the Examiner's signature on the "List of References Cited and Considered by the Examiner" dated June 8, 2011. *See* Exhibit B ¶¶ 10 and 11.

(e) <u>False Statements 12 and 13</u>: "The '616 [Bjorndahl] patent was not considered by the Examiner during the prosecution of the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* '739 Reexam Request at 61 and repeated at 64.

- <u>Fact 12 and 13</u>: The '616 Bjorndahl patent was cited during prosecution of the co-pending *ex parte* reexamination for the '757 patent (by HPL in its April 28, 2011 IDS and by NYT at page 15 of its reexamination request) and was considered by the Examiner in the co-pending *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. Still further, the Examiner discussed the '616 Bjorndahl patent on the record during the co-pending *ex parte* reexamination. *See* Exhibit B ¶¶ 12 and 13.

(f) <u>False Statement 14</u>: "the '415 [Rossmann] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent." *See* Request for *Inter*

*partes* Reexamination, 95/001,738 ("'738 Reexam Request") at 20 (emphasis in original).

- Fact 14: The '415 Rossmann patent was cited during the original prosecution of the '716 patent in IDSs dated March 30, 2007 and June 27, 2007, and its technological teachings were twice considered on the record during the original prosecution of the '716 patent as shown by the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated October 3, 2006 and December 7, 2017, and appears on the face of the '716 patent as a "Reference Cited." *See* Exhibit B ¶ 14.

(g) False Statement 15: "the '167 [Boyle] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent." *See* '738 Reexam Request at 25 (emphasis in original).

- Fact 15: The '167 Boyle patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and its technological teachings considered on the record during the original prosecution of the '716 patent as shown by the Examiner's signature on the "List of References Cited and Considered by Examiner" dated December 7, 2007, and appears on the face of the '716 patent as a "Reference Cited." *See* Exhibit B ¶ 15.

(h) False Statement 16: "the '415 [Rossmann] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent." *See* Request for *Inter*

*partes* Reexamination, 95/001,740 ("'740 Reexam Request") at 20 (emphasis in original).

- <u>Fact 16</u>: The '415 Rossmann patent was cited during the original prosecution of the '838 patent in IDSs dated February 15, 2007 and June 27, 2007 (which highlighted the '415 Rossmann patent), and its technological teachings were twice considered on the record during the original prosecution of the '838 patent as shown by the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated May 18, 2007 and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited." *See* Exhibit B ¶ 16.

(i) <u>False Statement 17</u>: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent." *See* Request for *Inter partes* Reexamination, 95/001,740 ("'740 Reexam Request") at 23 (emphasis in original).

- <u>Fact 17</u>: The '167 Boyle patent was cited during the original prosecution of the '838 patent in IDSs dated June 5, 2006, February 15, 2007, and June 27, 2007, and its technological teachings considered on the record by the Examiner three times during the original prosecution of the '838 patent as shown the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated June 30, 2005, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited." *See* Exhibit B ¶ 17.

29.     Defendant and the NYT Defense Group made the following false or misleading statements to the PTO in the third round of reexaminations filed on December 29, 2011 and January 6, 2012, with documented support for the correct facts set forth in Exhibit B to this Amended Complaint:

(a) <u>False Statement 18</u>:  "none of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding." *See* Request for *Inter partes* Reexamination, 95/001,867 ("'867 Reexam Request") at 31 (emphasis added).

- <u>Fact 18</u>: The '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an *earlier* IDS filed April 28, 2011, and was considered by the Examiner on the record during the '880 *ex parte* reexamination, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.  *See* Exhibit B ¶ 18.

(b) <u>False Statement 19</u>:  "none of the documents cited in the November 2d IDS, including the NAIS article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings."  *See* '867 Reexam Request at 35.

- <u>Fact 19</u>: The NAIS article was cited not only in the November 2, 2011 IDS, but also in an *earlier* IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination, as shown by his

signature and correction of the publication date on the "List of References Cited and Considered by Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 19.

(c) <u>False Statement 20</u>:  "The '973 [Smith] patent was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination."  *See* '867 Reexam Request at 31.

- <u>Fact 20</u>: The '973 Smith patent was cited in an IDS dated April 28, 2011, and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.  *See* Exhibit B ¶ 20.

(d) <u>False Statement 21</u>:  "The '100 [Kane] patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination.  *See* '867 Reexam Request at 45.

- <u>Fact 21</u>: The '100 Kane patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and was considered by the original Examiner '716 patent as shown by his signature on the "List of References Cited and Considered by Examiner" dated August 2, 2007, and the '100 patent appears on the face of the '716 patent as a "Reference Cited."  The '100 Kane patent was also cited in an IDS dated April 28, 2011 during prosecution of the *ex parte* reexamination of the '716 patent and was considered by the Examiner on the record during prosecution of the '880 *ex parte* reexamination of the '716

patent as shown by his signature on the "List of References Cited and

Considered by Examiner" dated December 7, 2011.  *See* Exhibit B ¶ 21.

(e) <u>False Statement 22</u>:  "none of the documents cited in the November 2d IDS,

including the '616 [Bjorndahl] patent and the patentee's comments regarding this

patent, was considered on the record during the *ex parte* reexamination proceedings."

*See* '867 Reexam Request at 56.

- <u>Fact 22</u>: The '616 Bjorndahl patent was cited not only in the November 2,

  2011 IDS, but also in an *earlier* IDS dated April 28, 2011, and was considered

  by the Examiner on the record during the '880 *ex parte* reexamination, as

  shown by his signature on the "List of References Cited and Considered by

  Examiner" on June 8, 2011.  *See* Exhibit B ¶ 22.

(f) <u>False Statement 23</u>:  "the '973 patent [Smith], the '415 [Rossmann] patent, the

Enabling Network Managers Article, and the NAIS article, all of which thus provide a

new, non-cumulative technological teaching not considered by the Examiner in the *ex

parte* reexamination proceeding.  *See* '867 Reexam Request at 24, note 7.

- <u>Fact 23</u>: As established in Facts 20, 18, and 19 respectively, the '973 Smith

  patent, '415 Rossmann patent, and the NAIS article were all previously cited

  and considered during the prosecution of the '716 patent during the *ex parte*

  reexamination.  Accordingly, these references do not provide new teachings, or

  teachings that are non-cumulative to those that had already been considered.

  *See* Exhibit B ¶ 23.

(g) <u>False Statement 24</u>: "Furthermore, neither the '100 [Kane] patent nor the '973 [Smith] patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880." *See* '867 Reexam Request at 78.

- <u>Fact 24</u>: As established in Facts 20 and 21, the '973 Smith patent and '100 Kane patent were cited and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent and the '100 Kane patent was also cited and considered by the Examiner during the original prosecution of the '716 patent. *See* Exhibit B ¶ 24.

(h) <u>False Statements 25 and 26</u>: "None of the '973 patent, the '351 patent, and '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent." *See* Request for *Inter partes* Reexamination, 95/001,864 ("'864 Reexam Request") at 58 *and again* at 64.

- <u>Facts 25 and 26</u>: The '100 Kane patent was cited during original prosecution of the '241 patent in an IDS dated February 7, 2005, the Examiner considered the '100 Kane patent on the record as shown by his signature on the "List of References Cited and Considered by Examiner" dated May 2, 2006, and the '100 Kane patent appears on the face of the '241 patent as a "Reference Cited." *See* Exhibit B ¶¶ 25-26.

(i) <u>False Statement 27 and 28</u>: "None of the NAIS article, the '351 patent, and the '100 patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent." *See* '864 Reexam Request at 71 *and again* at 78.

- <u>Fact 27 and 28</u>: As established in Facts 25 and 26, the '100 Kane patent was cited during original prosecution of the '241 patent in an IDS dated February 7, 2005, the Examiner considered the '100 Kane patent on the record as shown by his signature on the "List of References Cited and Considered by Examiner" dated May 2, 2006, and the '100 patent appears on the face of the '241 patent as a "Reference Cited." *See* Exhibit B ¶¶ 27 and 28.

30.     Defendant and the NYT Defense Group repeat several of the same false or misleading statements that were previously made to the PTO before the United States District Court for the Northern District of Illinois, including the following, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) <u>False Statement 29</u>: "[T]he PTO did not consider Defendants' earlier *inter partes* reexamination requests of the '716, '757, and '838 patents on the merits. . . . Rather, the PTO simply declined to consider [the NYT Group's denied *inter partes*] requests on the merits at all." *See* Def.s' Mot. Stay at 11, *Helferich Patent Licensing, LLC v. The Bon-Ton Stores, Inc.*, No. 11:11-cv-07189 (N.D. Ill.) Dkt. #38; *Helferich Patent Licensing, LLC v. Bravo Media, LLC*, No. 1:11-cv-07647 (N.D. Ill.); Dkt #31; *Helferich Patent Licensing, LLC v. CBS Corp.*, No. 1:11-cv-07607 (N.D. Ill.) Dkt. #30; and *Helferich Patent Licensing, LLC v. G4 Media, LLC*, No. 1:11-cv-07395 (N.D. Ill.) Dkt #36 (collectively hereinafter "Def.s' Mot's").

- <u>Fact 29</u>: In more than 80 pages of discussion, the *inter partes* Reexamination Examiners analyzed each reference cited in the *inter partes* requests, finding:

"The references set forth in the request have been considered both alone and in combination. They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims. Accordingly, the request for reexamination is denied." *See* Order Denying Reexamination of U.S. Patent No. 7,280,838 (Oct. 28, 2011) at 37.

"None of the above cited art provides any new technological teachings that were not present in the art cited in the previous reexamination (90/009883)." *Id*. at 16, 21, 27, 32, and 36.

"In comparing the pending reexamination and the current Request, the examiner notes that the teachings or elements that are 'new' with respect to the original reexamination are substantially the same." *See* Order Denying Reexamination of U.S. Patent No. 7,835,757 (Nov. 4, 2011) at 14, 17, and 18; and Order Denying Reexamination of U.S. Patent No. 7,499,716 (Nov. 4, 2011) at 10, 15, and 19.

"Thus, the examiner does not find that the Request's statement presents a new substantial question of patentability." *See* Order Denying Reexamination of U.S. Patent No. 7,835,757 at 9 and Order Denying Reexamination of U.S. Patent No. 7,499,716 at 13, 16, 19, 21, 23, and 25.

(b) <u>False Statements 30</u>: "Defendants disagree with a number of HPL's characterizations of the pending *inter partes* reexamination requests in HPL's 'status report.' For example, HPL represents that the PTO has already considered all the primary references cited in the *inter partes* request for the '716 patent. The '971 (Smith) patent, however, was not previously considered." *See* Def.s' Mot's at 7, note 3.

- <u>Fact 30</u>: As established in Fact 20, the '973 Smith patent was cited in an IDS dated April 28, 2011, and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.

The '973 Smith patent was similarly considered during prosecution of the *ex parte* reexaminations of the '757 and '838 patents.

(c) <u>False Statements 31</u>: "Absent the stay, the Court would have presided over litigation involving 28 invalid claims." Def.s' Mot's at 3.

- <u>Fact 31</u>: HPL preliminarily asserted 32 claims of the '838, '716, and '757 patents against NYT prior to the stay and 38 claims of the '838, '716, and '757 patents against members of the NYT Defense Group. Of the 32 claims asserted against NYT, all were confirmed patentable by the PTO including 13 claims in original substantive form and 19 claims following clarifying amendments. Of the 38 claims asserted against members of the NYT Defense Group, all were confirmed patentable by the PTO including 18 claims in original substantive form and 20 claims following clarifying amendments. Absent the stay, the Court would have presided over litigation involving *at least* the original confirmed claims. *See* Exhibit B ¶ 31.

31.     Phoenix Newspapers, Inc. ("PNI"), d/b/a "the Arizona Republic" is represented by counsel that also represents members the NYT Defense Group. On information and belief, PNI is a member of the NYT Defense Group. Further, on information and belief, NYT Defense Group members, through its counsel, approved PNI repeating in court filings in the United States District Court for the District of Arizona many of the same false or misleading statements that were made to the PTO in the first, second and third rounds of reexaminations. The following false or misleading statements

were made to the Arizona District Court by PNI, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) <u>False Statement 32</u>: "None of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding." *See* Def's Second Amended Counterclaim ¶ 52, *Helferich Patent Licensing LLC v. Phoenix Newspapers, Inc*., No. 2:11-cv-02476 (Ariz.) (hereinafter "Counterclaim").

- <u>Fact 32</u>: The '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 32.

(b) <u>False Statement 33</u>: "none of the documents cited in the November 2d IDS, including the NAIS Article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings." Counterclaim ¶ 66.

- <u>Fact 33</u>: The NAIS article was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 33.

(c) <u>False Statement 34</u>: "The '973 [Smith] patent was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." Counterclaim ¶ 83.

- <u>Fact 34</u>: The '973 Smith patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. *See* Exhibit B ¶ 34.

(d) <u>False Statement 35</u>: "The '100 [Kane] patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." Counterclaim ¶ 100.

- <u>Fact 35</u>: The '100 Kane patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. *See* Exhibit B ¶ 35.

(e) <u>False Statement 36</u>: "none of the documents cited in the November 2d IDS, including the '616 [Bjorndahl] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings." Counterclaim ¶ 145.

- <u>Fact 36</u>: The '415 Bjorndahl patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. *See* Exhibit B ¶ 36.

(f) <u>False Statements 37 and 38</u>: "Neither the *Enabling Mobile Network Managers* nor the '100 [Kane] patent are of record in the original prosecution of the '716 patent,…" Counterclaim 192 and 227.

- <u>Facts 37 and 38</u>: The '100 Kane patent was in fact of record in the original prosecution of the '716 patent, was considered by the Examiner on the "List of References Cited and Considered by Examiner," and appears on the face of the '716 patent as a "Reference Cited." *See* Exhibit B ¶¶ 37 and 38.

(g) <u>False Statement 39</u>: "Neither the '100 [Kane] patent nor the '973 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Counterclaim ¶ 250.

- <u>Fact 39</u>: The '100 Kane patent was in fact of record in the original prosecution of the '716 patent, is shown as considered by the Examiner on the "List of References Cited and Considered by Examiner," and appears on the face of the '716 patent as a "Reference Cited." Furthermore, both the '100 Kane patent and '973 Smith patent are of record in the '880 *ex parte* reexamination, and

each are shown as considered by the Examiner on a "List of References Cited and Considered by Examiner." *See* Exhibit B ¶ 39.

(h) <u>False Statement 40</u>: "The '327 patent teaches paging calls indicating the time during which media content is available." Counterclaim ¶ 320.

- <u>Fact 40</u>:  The Examiner of the '880 *ex parte* reexamination expressly found that the '327 Tso patent "fails to disclose wherein the notification that is sent to the client device indicates a time the content is available." *See* Exhibit B ¶ 40.

(i) <u>False Statement 41</u>: "The '327 patent teaches causing content to change without sending a cell phone a notification and thereafter causing the changed content to be transmitted to a cell phone." Counterclaim ¶ 321.

- <u>Fact 41</u>: The Examiner of the '882 *ex parte* reexamination expressly found that "Tso does not disclose that the content that is already stored … would be updated." *See* Exhibit B ¶ 41.

(j) <u>False Statements 42 through 54</u>: PNI repeatedly states with respect to the '838 patent that references were "not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution" including the following (with all references to the PNI Counterclaim): *Rover Toolkit* (¶ 324); *Rover Mosaic* (¶ 337); the *Always On* article (¶ 343); RFC 1911 (¶ 349);  RFC 1487 (¶ 354); '449 Metroka patent (¶ 359); '305 Sattar patent (¶ 363); '845 Buhrmann patent (¶ 368); '067 Nguyen patent (¶ '373); '382 Nikas patent (¶ 378); '616 Bjorndahl patent (¶ 383); '824 Lu patent (¶ 392); '446 Jasinski patent (¶ 397).

- <u>Facts 42 through 54</u>: As shown on Exhibit B ¶¶ 42-54, each Counterclaim statement noted above is false or misleading at least because the identified references were in fact cited by both PNI's counsel and Patentee during the prosecution of the '838 patent during the *ex parte* reexamination thereof. Each such reference was considered by the Examiner during the prosecution of the *ex parte* reexamination of the '838 patent.

## COUNT I
## (Infringement of United States Patent No. 7,280,838)

32.     HPL incorporates by reference paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

33.     HPL is informed and believes, and thereon alleges that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, and 20 (and likely others as determined through discovery) without authority or license from HPL. Additionally, upon the PTO's issuance of the forthcoming Reexamination Certificate regarding the '838 patent, Defendant likewise will be infringing one or more of claims 97-101 and 105-110.

34.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent because it causes notifications of the type described in Paragraph 13 to be sent to its customers' mobile devices. HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 13, above.

35.     In the alternative, HPL is informed and believes, and thereon alleges that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b), or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 13 have been, and continue to be, sent to its subscribers' mobile devices.

36.     More specifically, Defendant has been on notice of HPL's '838 patent and claims since December 29, 2009, and yet the messaging services discussed above continue to be available on Defendant's various websites and internet platforms, and the users of such services continue to receive millions of infringing messages in connection with such services.  HPL is informed and believes, and thereon alleges that if it is not Defendant providing such messaging services and initiating and causing the infringing messages to be sent as alleged in paragraph 13, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to  cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 patent.

37.     Having placed Defendant on notice of infringement of the '838 patent over two years ago, and in view of the conduct set forth above including in Paragraphs 13-31, Defendant's infringement of the '838 patent has been and continues to be willful.

38.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### (Infringement of United States Patent No. 7,499,716)

39.     HPL incorporates by reference paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

40.     HPL is informed and believes, and thereon alleges that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent. As mentioned previously, the PTO has issued a Reexamination Certificate confirming all of these claims after consideration of NYT's *ex parte* and *inter partes* reexamination requests.

41.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes notifications of the type described in Paragraph 13 to be sent to its customers' mobile devices. HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 13, above.

42.     In the alternative, HPL is informed and believes, and thereon alleges that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b), or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c)

because numerous SMS notifications of the type described in Paragraph 13 have been, and continue to be, sent to its subscribers' mobile devices.

43.     More specifically, Defendant has been on notice of HPL's '716 patent and claims since December 29, 2009 and yet the messaging services discussed above continue to be available on Defendant's various websites and internet platforms, and the users of such services continue to receive millions of infringing messages in connection with such services.  HPL is informed and believes, and thereon alleges that if it is not Defendant providing such messaging services and initiating and causing the infringing messages to be sent as alleged in paragraph 13, then Defendant actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 patent.

44.     Having placed Defendant on notice of infringement of the '716 patent over two years ago, and in view of the conduct set forth above including in Paragraphs 13-31, Defendant's infringement of the '716 patent has been and continues to be willful.

45.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT III
## (Infringement of United States Patent No. 7,835,757)

46.     HPL incorporates by reference paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

47.     HPL is informed and believes, and thereon alleges that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using a system or syin facstems that embody one or more of the following claims of the '757 patent within the United States: 1-13, 15-20 (and likely others as determined through discovery) without authority or license from HPL.  Additionally, upon the PTO's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, Defendants likewise will be infringing one or more of claims 21-39, 41-62, and 64-69.

48.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent because it causes notifications of the type described in Paragraph 13 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 13, above.

49.     In the alternative, HPL is informed and believes, and thereon alleges that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b), or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c)

because numerous SMS notifications of the type described in Paragraph 13 have been, and continue to be, sent to its subscribers' mobile devices.

50.     More specifically, Defendant has been on notice of HPL's '757 patent and claims since April 27, 2010 and yet the messaging services discussed above continue to be available on Defendant's various websites and internet platforms, and the users of such services continue to receive millions of infringing messages in connection with such services.  HPL is informed and believes, and thereon alleges that if it is not Defendant providing such messaging services and initiating and causing the infringing messages to be sent as alleged in paragraph 13, then Defendant  has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 Patent.

51.     Having placed Defendant on notice of infringement of the '757 patent and claims nearly two years ago, and in view of the conduct set forth above including in Paragraphs 13-31, Defendant's infringement of the '757 patent has been and continues to be willful.

52.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT IV
### (Infringement of United States Patent No. 8,107,601)

53.     HPL incorporates by reference Paragraphs 1 through 31 of this Complaint
and realleges them as though fully set forth herein.

54.     HPL is informed and believes, and thereon alleges, that Defendant has been
and is currently infringing the '601 patent in violation of 35 U.S.C. § 271(a) by, among
other things, using and practicing methods that embody one or more of claims 1, 3, 4, 9-
11, 16, and 17 of the '601 patent.

55.     HPL is informed and believes, and thereon alleges, that Defendant infringes
the '601 patent because it causes SMS notifications of the type described in Paragraph 13
to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon
alleges that Defendant infringes the '601 patent in connection with at least the product
offerings and services described in Paragraph 13, above.

56.     In the alternative, HPL is informed and believes, and thereon alleges, that
Defendant has actively induced and is currently inducing the infringement of the '601
patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently
contributing to the infringement of the '601 patent in violation of 35 U.S.C. § 271(c)
because numerous SMS notifications of the type described in Paragraph 13 have been,
and continue to be, sent to its subscribers' mobile devices.

57.     More specifically, Defendant has been on notice of its infringement of the
'601 patent since at least January 31, 2012, the issue date of the '601 patent, and since
that time numerous infringing SMS messages as described in Paragraph 13 have been,

and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 13, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '601 patent.

58.     In addition, with Defendant being on notice of infringement of the '601 patent since at least January 31, 2012, and in view of the conduct set forth above including in Paragraphs 13-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '601 patent has been and continues to be willful.

59.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT V
### (Infringement of United States Patent No. 8,116,741)

60.     HPL incorporates by reference Paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

61.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '741 patent in violation of 35 U.S.C. § 271(a) by, among

other things, using and practicing methods that embody one or more of claims 1-9, 11-18, 20, 21, 23, 24, 26, and 27 of the '741 patent.

62.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '741 patent because it causes SMS notifications of the type described in Paragraph 13 to be sent to its subscribers' mobile devices. HPL is informed and believes, and thereon alleges that Defendant infringes the '741 patent in connection with at least the product offerings and services described in Paragraph 13, above.

63.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '741 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '741 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 13 have been, and continue to be, sent to its subscribers' mobile devices.

64.     More specifically, Defendant has been on notice of its infringement of the '741 patent since at least February 14, 2012, the issue date of the '741 patent, and since that time numerous infringing SMS messages as described in Paragraph 13 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 13, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and

knew or should have known that its actions would cause actual infringement of the '741 patent.

65. In addition, with Defendant being on notice of infringement of the '741 patent since at least February 14, 2012, and in view of the conduct set forth above including in Paragraphs 13-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '741 patent has been and continues to be willful.

66. As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VI
### (Infringement of United States Patent No. 8,134,450)

67. HPL incorporates by reference Paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

68. HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-8, 10, 13-15, 17-23, and 27-28 of the '450 patent.

69. HPL is informed and believes, and thereon alleges, that Defendant infringes the '450 patent because it causes SMS notifications of the type described in Paragraph 13 to be sent to its subscribers' mobile devices. HPL is informed and believes, and thereon

alleges that Defendant infringes the '450 patent in connection with at least the product offerings and services described in Paragraph 13, above.

70.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 13 have been, and continue to be, sent to its subscribers' mobile devices.

71.     More specifically, Defendant has been on notice of its infringement of the '450 patent since at least March 13, 2012, the issue date of the '450 patent, and since that time numerous infringing SMS messages as described in Paragraph 13 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 13, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '450 patent.

72.     In addition, with Defendant being on notice of infringement of the '450 patent since at least March 13, 2012, and in view of the conduct set forth above including in Paragraphs 13-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '450 patent has been and continues to be willful.

73.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)     Judgment that defendant has infringed, or actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '838 patent, '716 patent, '757 patent, '601 patent, '741 patent, and '450 patent;

(b)     A permanent injunction to be issued enjoining and restraining defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more claims of the '838 patent, '716 patent, '757 patent, '601 patent, '741 patent, and '450 patent and from inducing or contributing to infringement of any such claims by others;

(c)     An award of damages, including provisional damages, against defendant adequate to compensate HPL for past infringement of one or more of the claims of the '838 patent, '716 patent, '757 patent, '601 patent, '741 patent, and '450 patent, together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)     Judgment that this case is "exceptional" in the sense of 35 U.S.C. § 285,

and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of

this action; and

(e)     Such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 20th day of March, 2012.

LAW OFFICES OF STEVEN G. LISA, LTD.

By:   */s/ Timothy Sperling*
        Timothy D. Sperling
        Attorney for Plaintiff

        Steven G. Lisa (Ill. State Bar # 6187348)
        Jon E. Kappes (Ill. State Bar # 6291678)
        Timothy Sperling (Ill. State Bar # 6283854)
        Law Offices of Steven G. Lisa, Ltd.
        55 West Monroe Street, Suite 3210
        Chicago, Illinois 60603
        Tel. & Fax: (312) 752-4357

        Victoria Curtin (NDIL ID # 010897)
        Victoria Gruver Curtin, P.L.C.
        14555 N. Scottsdale Rd., Ste. 160
        Scottsdale, Arizona  85254
        Tel.:  (480) 998-3547
        Fax:  (480) 596-7956

        Gerald D. Hosier (Ill. State Bar # 7059)
        Law Offices Of Gerald D. Hosier, Ltd.
        P.O. BOX 12354
        ASPEN, CO 81612
        Tel: (970) 920- 3475
        Off: (970) 920-3475

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes a demand for a trial by jury pursuant to Rule 38 of the

Federal Rules of Civil Procedures as to all issues in the above captioned lawsuit.

RESPECTFULLY SUBMITTED this 20th day of March, 2012.

LAW OFFICES OF STEVEN G. LISA, LTD.

By:  */s/ Timothy Sperling*
        Timothy D. Sperling
        Attorney for Plaintiff

        Steven G. Lisa (Ill. State Bar # 6187348)
        Jon E. Kappes (Ill. State Bar # 6291678)
        Timothy Sperling (Ill. State Bar # 6283854)
        Law Offices of Steven G. Lisa, Ltd.
        55 West Monroe Street, Suite 3210
        Chicago, Illinois 60603
        Tel. & Fax: (312) 752-4357

        Victoria Curtin (NDIL ID # 010897)
        Victoria Gruver Curtin, P.L.C.
        14555 N. Scottsdale Rd., Ste. 160
        Scottsdale, Arizona  85254
        Tel.:  (480) 998-3547
        Fax:  (480) 596-7956

        Gerald D. Hosier (Ill. State Bar # 7059)
        Law Offices Of Gerald D. Hosier, Ltd.
        P.O. BOX 12354
        ASPEN, CO 81612
        Tel: (970) 920- 3475
        Off: (970) 920-3475

## **EXHIBIT A**

1. U.S. Patent No. 8,134,450, titled "Content Provision to Subscribers via Wireless Transmission," issued March 13, 2012.

2. U.S. Patent No. 8,116,743, titled "Systems and Methods for Downloading Information to a Mobile Device," issued February 14, 2012.

3. U.S. Patent No. 8,116,741, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued February 14, 2012.

4. U.S. Patent No. 8,107,601, titled "Wireless Messaging System," issued January 31, 2012.

5. U.S. Patent No. 8,099,046, titled "Method for Integrating Audio and Visual Messaging," issued January 17, 2012.

6. U.S. Patent No. 7,957,695, titled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

7. U.S. Patent No. 7,843,314, titled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

8. U.S. Patent No. 7,835,757 titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued November 16, 2010;

9. U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

10. U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

11. U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

12. U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

13. U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

14. U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

15. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

16. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

17. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

18. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

19. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

20. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

21. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

22. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

23. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

24. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

25. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

26. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

27. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

28. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

29. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

30. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

31. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

32. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

33. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

35. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

36. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

## EXHIBIT B

## CORRECTIONS TO FALSE OR MISLEADING STATEMENTS

1. <u>False Statement 1</u>: "The Tso patent was not previously and expressly considered on the record nor discussed on the record during prosecution of the '757 patent." *See* '882 Reexam Request at 16.

   ➢ <u>Fact 1</u>: As shown below, the Tso patent was cited during prosecution of the '757 patent in an IDS dated June 22, 2010, was expressly considered on the record by the Examiner of the '757 patent as shown by his initials on a "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears of the face of the '757 patent as a "Reference Cited."



*See* Information Disclosure Statement, Appl. No. 12/764,025 (June 22, 2010).

2. <u>False Statement 2</u>: "The Applicant initially cited the Tso patent in an IDS dated June 22, 2010, along with a large volume of other prior art…. Nor did the Applicant draw any particular attention to the Tso patent to highlight its materiality from among the large number of references initially cited in the June 22, 2010 IDS." *See* Request for *Ex parte* Reexamination, 90/009,882, page 15.

➤ <u>Fact 2</u>: As shown above in Fact 1, the Tso patent was the only U.S. patent listed on Applicant's June 22, 2010 IDS and one of only 4 total references cited therein. *See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010) shown above. In addition, the remarks accompanying the June 22, 2010 IDS drew particular attention to the Tso patent by expressly highlighting that it had been received from a "prospective licensee" as shown below.

> With regard to the cited U.S. patent reference, Applicant notes that the reference was recently provided to Applicant by a prospective licensee of the family of patents to which this application belongs.

*See* Information Disclosure Statement, Appl. No. 12/764,025 (June 22, 2010).

3. <u>False Statement 3</u>: "The Applicant did not file any such petition, and the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner." *See* Request for *Ex parte* Reexamination, 90/009,882, page 12.

➤ <u>Fact 3</u>: As shown above in Fact 1, the '757 patent issued *after* consideration of the Tso patent by the Examiner who indicated that "All references considered except where lined through," and then did *not* line through Tso on the "List of References Cited and Considered by Examiner" shown above. *See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010).

4. <u>False Statement 4</u>: "The '449 [Metroka] patent was cited during prosecution but was not considered by the Examiner during prosecution of the '838 patent." *See* Request for *Ex parte* Reexamination, 90/009,883 ("'883 Reexam Request") at 26.

➤ <u>Fact 4</u>: As shown below, the '449 Metroka patent was considered three times by the Examiner during the original prosecution of the '838 patent, is expressly shown as considered by the Examiner's signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited."



*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (June 30, 2006).

| | | 5,117,449 | May 1992 | Metroka et al. |
|---|---|---|---|---|

Examiner:

[signature]

Date:
04/29/07

8

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (May 18, 2007).

| US Patent No. 5117449 - Metroka | Prior |
|---|---|

[signature]    6    8/3/07

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (August 23, 2007).

5.  <u>False Statement 5</u>: "The Jasinski '446 patent was not considered by the Examiner during prosecution of the '838 patent;" *See* '883 Reexam Request at 29-30.

➢ <u>Fact 5</u>: As shown below, the Jasinski '446 patent was cited on an IDS submitted on February 15, 2007, during the original prosecution of the '838 patent that informed the Examiner that Jasinski was applied to reject claims in a parent case, stating: "the Examiner may wish to review the decisions of the prior Examiners in the parent cases, includ[ing] the references applied in rejecting earlier-submitted claims." Thereafter, the Jasinski '446 patent was considered by the Examiner during prosecution of the '838 patent on three separate occasions as evidenced by his signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and the Jasinski '446 patent appears on the face of the '838 patent as one of the "References Cited."

**TABLE 2**

| Reference | Date of Reference | Application(s) Containing Rejection(s) | Examiner(s) Issuing Rejection(s) |
|---|---|---|---|
| US 5,815,800 - Su | | | |
| US 5,555,446 - Jasinski | Sept. 10, 1996 | 08/934,132 | A. Asongwed |
| | Dec. 29, 1992 | 08/933,444 | T. Nguyen |

*See* Information Disclosure Statement (IDS) Form (SB08), Appl. No. 11/082,913 (February 15, 2007) at 6.

56

| Examiner Initials | US Patent Document | Issue Date/ Publication Date | Inventor |
|---|---|---|---|
| | 5,530,930 | June 1996 | Hahn |
| | ~~5,550,535~~ | ~~August 1996~~ | ~~Park~~ |
| | 5,555,446 | September 1996 | Jasinski |
| | ~~5,557,659~~ | ~~September 1996~~ | ~~Hyde-Thomson~~ |

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (June 30, 2006) at 3.

| | | September 1996 | |
|---|---|---|---|
| | 5,555,446 | September 1996 | Jasinski |

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (May 18, 2007) at 3.

| | |
|---|---|
| ~~US Patent No. 5555376 - Theimer~~ | ~~Prior~~ |
| US Patent No. 5555446 - Jasinski | Prior |
| ~~US Patent No. 5557659 - Hyde-Thomson~~ | ~~Prior~~ |

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (August 23, 2007) at 8.

6. <u>False Statement 6</u>: "the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner." *See* Request for *Inter partes* Reexamination, 95/001,739 ("'739 Reexam Request") at 17.

&#10137; <u>Fact 6</u>: The '757 patent issued after the Tso patent was considered by the Examiner. *See* Fact 1, above.

7. <u>False Statement 7</u>: "<u>the '415 patent [Rossmann] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent</u>." *See* '739 Reexam Request at 26 (emphasis in original).

&#10137; <u>Fact 7</u>: As shown below, the '415 Rossmann patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings were considered on the record during the original prosecution of the '757

patent as shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated September 17, 2010 and appears on the face of the '757 patent as one of the "References Cited."

| | | 5,809,415 | September 1998 | Rossman |
|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

*See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010) at 12.

8. False Statement 8: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent." *See* '739 Reexam Request at 29 (emphasis in original).

➢ Fact 8: As shown below, the '167 Boyle patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings considered on the record during the original prosecution of the '757 patent as shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears on the face of the '757 patent as one of the "References Cited."

| | | 6,119,167 | September 2000 | Boyle et al. |
|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

*See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010) at 14.

9. False Statement 9: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent." *See* '739 Reexam Request at 32 (emphasis in original).

➢ Fact 9: The '167 Boyle patent was cited and considered during the original prosecution of the '757 patent. *See* Fact 8, above.

10. False Statement 10: "The NAIS article was not considered by the Examiner during prosecution of the application that gave rise to the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* '739 Reexam Request at 33.

➢ Fact 10(a): As shown below, the NAIS article was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings considered on the record during the prosecution of the '757 patent as expressly shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated October 4, 2010 and appears on the face of the '757 patent as a "Reference Cited."

| | | Kylanpaa, Nomadic access to information services by a GSM phone, Computer & Graphics, June, 1905 |
| --- | --- | --- |
| | /T.N./ | Anonymous, Cost of Ownership Analysis Instructions, Unwired Planet, June, 2010 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

*See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Oct. 4, 2010) at 3.

➢ Fact 10(b): As shown below, the NAIS article was also cited during the *ex parte* reexamination of the '757 patent in an IDS dated April 28, 2011 and its technological teaches considered on the record during the *ex parte* reexamination of the '757 patent as shown by the Examiner's signature, and confirmed by the Examiner's correction of the publication date, on the "List of References Cited and Considered by the Examiner" dated June 8, 2011. See Exhibit B ¶¶ 10 and 11.

| | Kylanpaa, Nomadic access to information services by a GSM phone, Computer & Graphics, June, ~~1905~~ *1996* |
| --- | --- |

*Ovidio Escalante*          6/8/11

*See* "List of References Cited and Considered by Examiner", Control No. 90/009,882 (June 8, 2011) at 30.

11. False Statement 11: "the NAIS article and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent." *See* '739 Reexam Request at 36 (emphasis in original).

➢ Fact 11: The NAIS article was considered during original prosecution of the '757 patent. *See* Fact 10(a), above.

12. False Statement 12: "The '616 patent [Bjorndahl] was not considered by the Examiner during the prosecution of the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* '739 Reexam Request at 61 (emphasis added).

➢ Fact 12(a): As shown below, the '616 Bjorndahl patent was cited during prosecution of the co-pending *ex parte* reexamination for the '757 patent (by HPL in its April 28, 2011 IDS and by NYT at page 15 of its reexamination request) and was considered by the Examiner in the co-pending *ex parte* reexamination as expressly shown by the Examiner's signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. Still further, the Examiner discussed the '616 Bjorndahl patent on the record during the co-pending *ex parte* reexamination proceeding.

| | | 5,406,616 | Apr-95 | Bjorndahl |
| --- | --- | --- | --- | --- |

*Ovidio Escalante*          6/8/11

*See* "List of References Cited and Considered by Examiner", Control No. 90/009,882 (June 8, 2011) at 30.

> V. THE PRIOR ART PATENTS AND PRINTED PUBLICATIONS THAT RAISE
>    SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ..........................................12
>    1.    U.S. Patent No. 6,047,327 to Tso *et al.* ("Tso" or "the Tso patent") ......15
>    2.    U.S. Patent No. 5,406,616 to Bjorndahl ("Bjorndahl" or "the "the Bjorndahl" patent) ......15

*See, e.g.,* '739 Reexam Request at 3.

➤ Fact 12(b): Still further, as shown below, the Examiner discussed the '616 Bjorndahl patent on the record during the co-pending *ex parte* reexamination proceeding.

> Thus, the Bjorndahl reference is relied upon for support that Tso's system comprises a HLR.

*See, e.g.,* Non-Final Office Action, Control No. 90/009,882 (June 17, 2011) at 34.

13. False Statement 13: "The '616 patent [Bjorndahl] was not considered by the Examiner during the prosecution of the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* Request for *Inter partes* Reexamination, 95/001,739 at 64.

   ➤ Fact 13: The '616 Bjorndahl patent was cited and considered by the Examiner during the *ex parte* reexamination proceeding. *See* Facts 12(a)-(b), above.

14. False Statement 14: "the '415 patent [Rossmann] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent." *See* Request for *Inter partes* Reexamination, 95/001,738 at 20 (emphasis in original).

   ➤ Fact 14: As shown below, the '415 Rossmann patent was cited during the original prosecution of the '716 patent in an IDSs dated March 30, 2007 and June 27, 2007, and its technological teachings were twice considered on the record during the original prosecution of the '716 patent as shown by the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated October 3, 2006 and December 7, 2017, and appears on the face of the '716 patent as a "Reference Cited."



*See* "List of References Cited and Considered by Examiner", Appl. No. 11/399,513 (Oct. 3, 2006) at 4.

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/399,513 (Dec. 7, 2007) at 8.

15. False Statement 15: "<u>the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent</u>." *See* Request for *Inter partes* Reexamination, 95/001,738 at 25 (emphasis in original).

➢ Fact 15: As shown below, the '167 Boyle patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and its technological teachings considered on the record during the original prosecution of the '716 patent as expressly shown by the Examiner's signature on the "List of References Cited and Considered by Examiner" dated December 7, 2007, and appears on the face of the '716 patent as a "Reference Cited."



*See* "List of References Cited and Considered by Examiner", Appl. No. 11/399,513 (Dec. 7, 2007) at 10.

16. False Statement 16: "<u>the '415 patent [Rossmann] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent</u>." *See* Request for *Inter partes* Reexamination, 95/001,740 at 20 (emphasis in original).

➢ Fact 16: As shown below, the '415 Rossmann patent was cited during the original prosecution of the '838 patent in an IDSs dated February 15, 2007 and June 27, 2007, and its technological teachings were twice considered on the record during the original prosecution of the '838 patent as expressly shown by the Examiner's on the "List of References Cited and Considered by Examiner" dated May 18, 2007 and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited."

> Applicant also requests the Examiner to review U.S. Patent Nos. 5,809,415 to Rossmann and 6,119,167 to Boyle et al. as they relate to the present claims, both of which have been previously cited by Applicant in this application.

*See* Information Disclosure Statements & Remarks, Appl. No. 11/082,913 (April 11, 2007) at 2.



*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (May 18, 2007).



*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (August 23, 2007).

17. False Statement 17: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent." *See* Request for *Inter partes* Reexamination, 95/001,740 at 23 (emphasis in original).

➢ Fact 17: As shown below, the '167 Boyle patent was cited during the original prosecution of the '838 patent in IDSs dated June 5, 2006, February 15, 2007, and June 27, 2007, and its technological teachings considered on the record by the Examiner three times during the original prosecution of the '838 patent as shown the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated June 30, 2005, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited."

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (June 30, 2005).

> Applicant also requests the Examiner to review U.S. Patent Nos. 5,809,415 to Rossmann and 6,119,167 to Boyle et al. as they relate to the present claims, both of which have been previously cited by Applicant in this application.

*See* Information Disclosure Statements & Remarks, Appl. No. 11/082,913 (April 11, 2007) at 2.

| | | 6,119,167 | September 2000 | Boyle et al. |

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (May 18, 2007).

| US Patent No. 6119167 - Boyle | Provisional |
| US Patent No. 6636522 - Perinpanathan | Provisional |

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (August 23, 2007) at 5.

18. False Statement 18: "none of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding." *See* Request for *Inter partes* Reexamination, 95/001,867 at 31 (emphasis added).

> Fact 18(a): As shown below, the '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was shown as considered by the Examiner on the record during the '880 *ex parte*

63

reexamination, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.

| | | 5,809,415 | Sep-98 | Rossman |
|---|---|---|---|---|

*Ovidio Escalante*    06/08/2011

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (June 17, 2011) at 7.

➤ Fact 18(b): The same Examiner that handled *ex parte* Reexam 2 also discussed Rossmann on the record when he denied the NYT Defense Group's prior *inter partes* reexam request on its merits, stating for example:

> "In addition, Rossmann was … also disclosed to show the feature recited in claim 22. The request notes that the claim was met by Figure 4G. However, the examiner notes that Figure 4G is not a specification of 'a time that the content is available', but instead is the current time. … [The] mere citation of 'Date/Time' does not entail the time the content is available. Thus, the examiner does not find that the Request presents a substantial new question of patentability …."

> *See* Order Denying *Inter partes* Reexamination, Control No. 95/001,738 at 12-13.

19. False Statement 19: "none of the documents cited in the November 2d IDS, including the NAIS article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings." *See* '867 Reexam Request at 35 (emphasis added).

➤ Fact 19(a): As shown below, the NAIS article was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was shown as considered by the Examiner on the record of the '880 *ex parte* reexamination, as proven by his signature and correction of the publication date on the "List of References Cited and Considered by Examiner" dated June 8, 2011.

| | | Kylanpaa, Nomadic access to information services by a GSM phone, Computer & Graphics, June, 1905 *1996* |
|---|---|---|

*Ovidio Escalante*    06/08/2011

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (June 17, 2011) at 28.

➤ Fact 19(b): The *ex parte* reexamination Examiner also discussed NAIS on the record (during the pendency of the *ex parte* reexamination) when the he denied outright Requesters' prior *inter partes* reexamination on its merits, stating for example:

> "Thus, the examiner does not find that the Request presents a substantial new question of patentability that was not previously asserted and thus the examiner

does not find that a reasonable examiner would have found that NAIS Article presents a substantial new question of patentability."

*See* Order Denying *Inter partes* Reexamination, Control No. 95/001,738 at 19.

20. False Statement 20: "The '973 patent [Smith] was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." *See* '867 Reexam Request at 31 (emphasis added).

➤ Fact 20: As shown below, the '973 Smith patent was cited in an IDS dated April 28, 2011, and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.

| | | | |
|---|---|---|---|
| | 6,333,973 | Dec-01 | Smith et al. |

*Ovidio Escalante*  06/08/2011

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (June 17, 2011) at 11. Patentee's April 28, 2011 IDS (shown above, on which the Examiner's signature appears) also stated that the '973 Smith patent was "affirmatively cited or relied upon by an Examiner in making a rejection in related applications" and that "the Examiner should review the decisions of the prior Examiners in the parent cases, including the references applied in rejecting earlier-submitted claims. *See* Patentee Information Disclosure Statement Remarks, Control No. 90/009,880 (Apr. 28, 2011).

21. False Statement 21: "The '100 patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination. *See* '867 Reexam Request at 56.

➤ Fact 21(a): As shown below, the '100 Kane patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and was considered by the original Examiner '716 patent as shown by his signature on the "List of References Cited and Considered by Examiner" dated August 2, 2007, and the '100 patent appears on the face of the '716 patent as a "Reference Cited."

| | | | |
|---|---|---|---|
| | 5,487,100 | January 1996 | Kane |

Examiner  8/02/07

65

*See* List of References Cited by Applicant and Considered by Examiner, Application No. 11/399,513 (Aug. 2, 2007) at 7.

➢ Fact 21(b): As shown below, the '100 Kane patent was also cited in an IDS dated April 28, 2011 during prosecution of the *ex parte* reexamination of the '716 patent and was considered by the Examiner on the record during prosecution of the '880 *ex parte* reexamination of the '716 patent as shown by his signature on the "List of References Cited and Considered by Examiner" dated December 7, 2011.

| | | 5,487,100 | Jan-96 | Kane |
|---|---|---|---|---|

*Ovidio Escalante*      06/08/2011

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (Dec. 7, 2011) at 4.

22. False Statement 22: "none of the documents cited in the November 2d IDS, including the '616 patent [Bjorndahl] and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings."  *See* '867 Reexam Request at 56 (emphasis added).

➢ Fact 22(a): As shown below, the '616 Bjorndahl patent was cited not only in the November 2, 2011 IDS, but also in an *earlier* IDS dated April 28, 2011, and was considered by the Examiner on the record during the '880 *ex parte* reexamination, as shown by his signature on the "List of References Cited and Considered by Examiner" on June 8, 2011.

| | | 5,406,616 | Apr-95 | Bjorndahl |
|---|---|---|---|---|

*Ovidio Escalante*      06/08/2011

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (Dec. 7, 2011) at 4.

➢ Fact 22(b):  As noted above, during consideration of the denied *inter partes* reexamination request of the '716 patent, the Examiner specifically corrected NYT's False Statement that Bjorndahl had not been considered during prosecution of the prior *ex parte* reexamination of the '716 patent (which the same Examiner was handling).  Notwithstanding that correction, NYT and the NYT Defense Group repeats that same False Statement again in the '867 Reexam Request.

23. False Statement 23: "the '973 [Smith] patent, the '415 [Rossmann] patent, the *Enabling Network Managers Article*, and the NAIS article, all of which thus provide a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding.  *Id.* at 24, note 7.

➢ Fact 23:  As established in Facts 20, 18, and 19 above, the '973 Smith patent, '415 Rossmann, and the NAIS article were all previously cited and considered during the prosecution of the '716 patent during the *ex parte* reexamination. Accordingly, these references do not provide new teachings, or teachings that are non-cumulative to those that had already been considered.

24. False Statement 24: "Furthermore, neither the '100 [Kane] patent nor the '973 [Smith] patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880."  *See* '867 Reexam Request at 78.

➢ Fact 24: As established in Facts 20, 21(a)-(b) above, the '973 Smith patent and '100 Kane patent were cited and considered by the Examiner during prosecution *ex parte* reexamination of the '716 patent and the '100 Kane patent was also cited and considered by the Examiner during the original prosecution of the '716 patent.

25. False Statement 25: "None of the '973 patent, the '351 patent, and '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  See Request for *Inter partes* Reexamination, 95/001,864 ("'864 Reexam Request") at 58.

➢ Fact 25: As shown below, the '100 Kane patent was cited during the original prosecution of the '241 patent in an IDS dated February 7, 2005, the Examiner considered the '100 Kane patent on the record as shown by his signature on the "List of References Cited and Considered by Examiner" dated May 2, 2006, and the '100 Kane patent appears on the face of the '241 patent as a "Reference Cited."

| | 5,487,100 | January 1996 | Kane |

Ex: *[signature]* ✓     Date: 4/24/06

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 11/050,775 (May 2, 2006) at 2.

26. False Statement 26: "None of the '973 patent, the '351 patent, and '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  See Request for *Inter partes* Reexamination, 95/001,864 ("'864 Reexam Request") at 64.

➢ Fact 26: Kane was cited during the original prosecution of the '241 patent.  *See* Fact 25, above.

27. False Statement 27: "None of the NAIS article, the '351 patent, and the '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  *See* '864 Reexam Request at 71.

➢ Fact 27: Kane was cited during the original prosecution of the '241 patent. *See* Fact 25, above.

28. False Statement 28: "None of the NAIS article, the '351 patent, and the '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent." *See* '864 Reexam Request at 78.

➢ Fact 28: Kane was cited during the original prosecution of the '241 patent. *See* Fact 25, above.

29. False Statement 29: "[T]he PTO did not consider Defendants' earlier *inter partes* reexamination requests of the '716, '757, and '838 patents on the merits. . . . Rather, the PTO simply declined to consider [the NYT Group's denied *inter partes*] requests on the merits at all." Def.s' Mot. Stay, Dkt. No. 38 (BonTon), 31 (Bravo), 30 (CBS), and 36 (G4) at 11 (hereinafter "Def.s' Mot.").

➢ Fact 29: In 87 pages of discussion, the *inter partes* Reexamination Examiners analyzed each reference cited in the *inter partes* requests, finding:

"The references set forth in the request have been considered both alone and in combination. They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims. Accordingly, the request for reexamination is denied."

Order Denying Reexamination of U.S. Patent No. 7,280,838 (Oct. 28, 2011) at 37.

"None of the above cited art provides any new technological teachings that were not present in the art cited in the previous reexamination (90/009883)."

*Id*. at 16, 21, 27, 32, and 36.

"In comparing the pending reexamination and the current Request, the examiner notes that the teachings or elements that are 'new' with respect to the original reexamination are substantially the same."

Order Denying Reexamination of U.S. Patent No. 7,835,757 (Nov. 4, 2011) at 14, 17, and 18; and Order Denying Reexamination of U.S. Patent No. 7,499,716 (Nov. 4, 2011) at 10, 15, and 19.

"Thus, the examiner does not find that the Request's statement presents a new substantial question of patentability."

*See* '757 Order at 9 and '716 Order at 13, 16, 19, 21, 23, and 25.

30. False Statement 30: "Defendants disagree with a number of HPL's characterizations of the pending *inter partes* reexamination requests in HPL's 'status report.' For example, HPL represents that the PTO has already considered all the primary references cited in the *inter partes* request for the '716 patent. The '971 (Smith) patent, however, was not previously considered." Def.s' Mot. at 7, note 3.

68

➢ Fact 30: As shown above in Fact 20, the '973 Smith patent was cited in an IDS dated April 28, 2011, and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.

31. False Statement 31: "Absent the stay, the Court would have presided over litigation involving 28 invalid claims." Def.s' Mot's at 3.

➢ Fact 31: HPL preliminarily asserted 32 claims of the '838, 716, and '757 patents against NYT prior to the stay and 38 claims of the '838, 716, and '757 claims against members of the NYT Defense Group. Of the 32 claims asserted against NYT, all were confirmed patentable by the PTO including 13 claims in original substantive form and 19 claims following clarifying amendments. Of the 38 claims asserted against members of the NYT Defense Group, all were confirmed patentable by the PTO including 18 claims in original substantive form and 20 claims following clarifying amendments. Absent the stay, the Court would have presided over litigation involving at least the original confirmed claims. *See, e.g.,* Second Amended Compl. in *Helferich Patent Licensing, LLC v. New York Times Co.*, Case No. 1:10-cv-04387 ¶¶ 14, 20, and 26; Amended Compl. in *Helferich Patent Licensing, LLC v. Bravo Media, LLC*, Case No. 1:11-cv-07647 ¶¶ 22, 29, and 36; and Notice of Intent to Issue Reexamination Certificates in the '757, '716, and '838 patents. In addition, proper claim construction by the Court may have rendered unnecessary any clarifying amendments and all original asserted claims may have been held valid.

32. False Statement 32: "None of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the ['880] *ex parte* reexamination proceeding [relating to the '716 patent]." *See* Def's Second Amended Counterclaim ¶ 52, *Helferich Patent Licensing LLC v. Phoenix Newspapers, Inc.*, No. 2:11-cv-02476 (Ariz.) (hereinafter "Counterclaim").

➢ Fact 32: *See* Fact 18(a), above. The '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011.

33. False Statement 33: "none of the documents cited in the November 2d IDS, including the NAIS Article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings." Counterclaim ¶ 66.

➢ Fact 33: As shown above in Facts 19(a)-(b), the NAIS article was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was shown as considered by the Examiner on the record of the '880 *ex parte* reexamination, as proven by his signature and correction of the publication date on the "List of References Cited and Considered by Examiner" dated June 8, 2011. The *ex*

*parte* reexamination Examiner also discussed NAIS on the record (during the pendency of the *ex parte* reexamination) when the he denied outright Requesters' prior *inter partes* reexamination on its merits.

34. <u>False Statement 34</u>: "The '973 [Smith] patent was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." Counterclaim ¶ 83.

➢ <u>Fact 34</u>: The '973 Smith patent was considered during the ex parte reexamination proceeding of the '716 patent. *See* Fact 20, above.

35. <u>False Statement 35</u>: "The '100 [Kane] patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." Counterclaim ¶ 100.

➢ <u>Fact 35</u>: The '100 Kane patent was considered during original prosecution of the '716 patent and during *ex parte* reexamination of the '716 patent. *See* Fact 21, above.

36. <u>False Statement 36</u>: "As with the '415 [Rossmann] patent discussed above, the '616 [Bjorndahl] patent was submitted in the *ex parte* reexamination proceedings in the November 2d IDS. As the petition to consider the November 2d IDS was denied, none of the documents cited in the November 2d IDS, including the '616 [Bjorndahl] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings." Counterclaim ¶ 145.

➢ <u>Fact 36</u>: The '616 Bjorndahl patent was considered, relied on, and discussed on the record during the ex parte reexamination proceedings. *See* Fact 22, above.

37. <u>False Statement 37</u>: "Neither the *Enabling Mobile Network Managers* nor the '100 [Kane] patent are of record in the original prosecution of the '716 patent,…" Counterclaim 192.

➢ <u>Fact 37</u>: The '100 Kane patent was of record and considered during the original prosecution of the '716 patent. *See* Fact 21, above.

38. <u>False Statement 38</u>: "Neither the *Enabling Mobile Network Managers* nor the '100 [Kane] patent are of record in the original prosecution of the '716 patent,…" Counterclaim 227.

➢ <u>Fact 38</u>: The '100 Kane patent was of record and considered during the original prosecution of the '716 patent. *See* Fact 21, above.

39. <u>False Statement 39</u>: "Neither the '100 [Kane] patent nor the '973 [Smith] patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. With regard to Reexamination Control No. 95/001,738, claim 16 was not requested for reexamination." Counterclaim ¶ 250.

➢ Fact 39: The '100 Kane patent was of record and considered during the original prosecution of the '716 patent and during *ex parte* reexamination of the '716 patent. The '973 Smith patent was of record and considered during the *ex parte* reexamination of the '716 patent. *See* Fact 21, above.

40. False Statement 40: "The '327 patent teaches paging calls indicating the time during which media content is available." Counterclaim ¶ 320.

➢ Fact 40: As shown below, the '880 *ex parte* reexamination Examiner expressly found that: "Tso fails to disclose wherein the notification that is sent to the client device indicates a time the content is available."

> The claim is directed to specifying a time that the content is available.
>
> The examiner concedes that the InfoBite of Tso does not indicate a time that the content is available. Instead, as Tso clearly indicates, the "Time-To-Live" value is a time value for the InfoBite in the client device. That is, how long the InfoBite will remain in the client device.
>
> Thus, the examiner now maintains that Tso fails to disclose wherein the notification that is sent to the client device indicates a time the content is available.

*See* Notice of Intent to Issue Reexamination Certificate, Control No. 90/009,880 (Oct. 25, 2011) at 7.

41. False Statement 41: "The '327 patent teaches causing content to change without sending a cell phone a notification and thereafter causing the changed content to be transmitted to a cell phone." Counterclaim ¶ 321.

➢ Fact 41: The '882 reexamination Examiner expressly found that "Tso does not disclose that the content …would be updated."

> identifier. Tso does not disclose that the content that is already stored and given a resource identifier would be updated.
>
> Thus, the examiner now maintains that Tso does not specifically disclose of updating the content (that is, the original content that was originally received and from which an InfoBite was created) after the message has been sent but prior to receiving the request for the content and sending the updated content to the client device of the user.

> The examiner finds that while Tso can update the databases with new information at any time, Tso does not disclose that the content, that was already previously received, is updated itself. Thus, once an InfoBite is created and sent, there is no disclosure that the information content of the InfoBite can be updated after it's been created.

*See* Notice of Intent to Issue Reexamination Certificate, Control No. 90/009,882 (Dec. 9, 2011) at 8-9.

42. False Statement 42: With respect to the '838 patent, "*Rover Toolkit* was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 324.

➤ Fact 42: *Rover Toolkit* was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '880, '882, and '883 *ex parte* reexaminations, and the Examiners expressly considered *Rover Toolkit* during the prosecution of the *ex parte* reexamination of the '838 patent as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 28, 2011, respectively.

| | CB | A.D. Joseph *et al.*, "Rover: A Toolkit for Mobile Information Access," Proceedings of the Fifteenth ACM Symposium on Operating Systems Principles, Copper Mountain Resort, Colorado, pp. 156-171 (December 3-6, 1995). | | |
|---|---|---|---|---|
| Examiner Signature | /Matthew Heneghan/ | | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | A.D. Joseph et al., "Rover: A Toolkit for Mobile Information Access," Proceedings of the Fifteenth ACM Symposium on Operating Systems and Principles, Copper Mountain Resort, Colorado, pp. 156-171 (December 3-6, 1995) (hereinafter Rover Toolkit); |
|---|---|

28

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



| | CB | A.D. Joseph *et al.*, "Rover: A Toolkit for Mobile Information Access," Proceedings of the Fifteenth ACM Symposium on Operating Systems Principles, Copper Mountain Resort, Colorado, pp. 156-171 (December 3-6, 1995). | | |
|---|---|---|---|---|
| Examiner Signature | /Salman Ahmed/ | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

43. False Statement 43: With respect to the '838 patent, "[t]he *Rover Mosaic* reference was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 337.

   ➢ Fact 43: *Rover Mosaic* was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '883 *ex parte* reexamination, and two different Examiner of the '883 *ex parte* reexamination expressly considered *Rover Mosaic* during the prosecution of the *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.



| | | CA | Thesis of A.F. deLespinasse, "Rover Mosaic: E-mail Communication for a Full-Function Web Browser," Massachusetts Institute of Technology (archived August 10, 1995, in MIT Library). | | |
| Examiner Signature | /Matthew Heneghan/ | | . | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | Thesis of A.F. deLespinasse, "Rover Mosaic: E-mail Communication for a Full-Function Web Browser," Massachusetts Institute of Technology (archived August 10, 1995, in MIT Library) (hereinafter "Rover Mosaic"); |
| --- | --- |

29

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | CA | Thesis of A.F. deLespinasse, "Rover Mosaic: E-mail Communication for a Full-Function Web Browser," Massachusetts Institute of Technology (archived August 10, 1995, in MIT Library). | |
| Examiner Signature | /Salman Ahmed/ | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

44. False Statement 44: With respect to the '838 patent, "[t]he *Always On* article not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 343.

   ➢ Fact 44: The *Always On* article was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '880, '882, and '883 *ex parte* reexaminations, and the Examiners expressly considered the *Always On* article during the prosecution of the *ex parte* reexaminations as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.



M.M. Tso, *et al.*, "Always On, Always Connected Mobile Computing," 1996 5th IEEE International Conference on Universal Personal Communications Record, Volume 1 of 2, Sessions 1-6, Cambridge Marriott Hotel, Cambridge, Massachusetts, pp. 918-924 (September 29 - October 2, 1996).

| | Examiner Signature | /Matthew Heneghan/ | | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

M.M. Tso, et al. "Always On, Always Connected Mobile Computing," 1996 5th IEEE International Conference on Universal Personal Communications Record, Volume 1 of 2, Sessions 1-6, Cambridge Marriott Hotel, Cambridge, Massachusetts, pp. 918-924 (September 29 – October 2, 1996) (hereinafter "Always On, Always Connected");

26

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | CC | M.M. Tso, *et al.*, "Always On, Always Connected Mobile Computing," 1996 5th IEEE International Conference on Universal Personal Communications Record, Volume 1 of 2, Sessions 1-6, Cambridge Marriott Hotel, Cambridge, Massachusetts, pp. 918-924 (September 29 - October 2, 1996). |
| Examiner Signature | /Salman Ahmed/ | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



9. Claim 14 and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and *Always On, Always Connected/Mobile Computing article* (The Always On article was published on September 29, 1996, hereinafter "Always On",).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 127.

45. False Statement 45: With respect to the '838 patent, "RFC 1911 was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 349.

➢ Fact 45: RFC 1911 was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '883 *ex parte* reexamination, and the Examiner expressly considered RFC 1911 during the prosecution of the *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.



| | CD | Vaudreuil, Internet Engineering Task Force Request for Comments 1911: "Voice Profile for Internet Mail," pp. 1-22 (February 1996). | |

| Examiner Signature | /Matthew Heneghan/ | . | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

> | | Vaudreuil, Internet Engineering Task Force Request for Comments 1911: "Voice Profile for Internet Mail," pp. 1-22 (February 1996) (hereinafter "RFC 1911"); and |

29

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | CD | Vaudreuil, Internet Engineering Task Force Request for Comments 1911: "Voice Profile for Internet Mail," pp. 1-22 (February 1996). | |

| Examiner Signature | /Salman Ahmed/ | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 10. Claim 54 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911: Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 131.

> 11. Claim 58 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911 Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 134.

46. <u>False Statement 46</u>: With respect to the '838 patent, "RFC 1487 was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 354.

➢ Fact 46: RFC 1487 was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '883 *ex parte* reexamination, and the Examiner expressly considered RFC 1487 during the prosecution of the *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.



See List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



See List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



See List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 135.

47. False Statement 47: "The '449 [Metroka] patent was cited during prosecution but was not considered by the Examiner during prosecution of the '838 patent." Counterclaim ¶ 359.

➢ Fact 47: The '449 Metroka patent was cited by Patentee in three separate Information Disclosure Statements filed during the original prosecution of the '838 patent, and

was considered by the Examiner on three separate occasions. *See* Exhibit B, ¶ 4, above.

In addition, during the prosecution of the *ex parte* reexamination of the '838 patent, the '449 Metroka patent was considered by the Examiner on two separate occasions and was used by the Examiner in making a non-final rejection that was subsequently withdrawn.

| Examiner Initials* | Cite No.¹ | Document Number Number-Kind Code² ( if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | AA | US-5,117,449 | 05-26-1992 | Metroka et al. | |
| Examiner Signature | /Matthew Heneghan/ | | | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | | |
|---|---|---|
| 5,117,449 | May-92 | Metroka et al. |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| Examiner Initials* | Cite No.¹ | Document Number Number-Kind Code² ( if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | AA | US-5,117,449 | 05-26-1992 | Metroka et al. | |
| Examiner Signature | /Salman Ahmed/ | | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



> 12.   Claim 31 and 33 are rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Metroka et al. (US PAT 5117449, hereinafter Metroka).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 136.

48.
False Statement 48: With respect to the '838 patent, "[t]he '305 [Sattar] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 363.

> Fact 48: The '305 Sattar patent was cited by Patentee during the prosecution of the '838 patent *ex parte* reexaminations in Patentee's April 28, 2011 IDS, and the '305

Sattar patent was used by the Examiner in making a non-final rejection in the '838 *ex parte* reexamination that was subsequently withdrawn.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | 3,249,230 | Sep-93 | Minhn, Jr. |
|---|---|---|---|
| | 5,255,305 | Oct-93 | Sattar |

3

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AB | US-5,255,305 | 10-19-1993 | Sattar | |
|---|---|---|---|---|---|
| Examiner Signature | /Salman Ahmed/ | | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 13. Claims 67 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Sattar et al. (US PAT 5255305).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 139.

49. <u>False Statement 49</u>: With respect to the '838 patent, "[t]he '845 [Buhrmann] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 368.

> ➤ <u>Fact 49</u>: The '845 Buhrmann patent was cited by Patentee during the prosecution of the '838 patent *ex parte* reexamination in Patentee's April 28, 2011 IDS, and the '845 Buhrmann patent was used by the Examiner in making a non-final rejection in the '838 patent reexamination that was subsequently withdrawn.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | | 5,903,845 | May-99 | Buhrmann et al. | |
|---|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AF | US-5,903,845 | 05-11-1999 | Buhrmann et al. | |
|---|---|---|---|---|---|
| Examiner Signature | /Salman Ahmed/ | | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

14. Claim 64 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Buhrmann et al. (US PAT 5903845, hereinafter Buhrmann)

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 142.

50. **False Statement 50**: With respect to the '838 patent, "[t]he '067 [Nguyen] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 373.

➢ **Fact 50**: The '067 Nguyen patent was cited by Patentee during the prosecution of the '838 *ex parte* reexamination in Patentee's April 28, 2011 IDS, and the '067 Nguyen patent was used by the Examiner in making a non-final rejection during prosecution of the '838 patent reexamination that was subsequently withdrawn.



| | AH | US-6,070,067 | 05-30-2000 | Nguyen et al. | |
|---|---|---|---|---|---|
| Examiner Signature | /Matthew Heneghan/ | | | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | | 6,064,879 | May-00 | Fujiwara et al. | |
|---|---|---|---|---|---|
| | | 6,070,067 | May-00 | Nguyen et al. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



| | AH | US-6,070,067 | 05-30-2000 | Nguyen et al. | | | |

| Examiner Signature | /Salman Ahmed/ | | | Date Considered | | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 16.   Claim 66 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et
>
> al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824,
>
> hereinafter Lu) and Nguyen et al. (US PAT 6070067, hereinafter Nguyen).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 152.

51. <u>False Statement 51</u>: With respect to the '838 patent, "[t]he '382 [Nikas] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 378.

> ➤ <u>Fact 51</u>: The '382 Nikas patent was cited by Patentee during the prosecution of the '883 *ex parte* reexamination in the April 28, 2011, IDS, and the '824 Nikas patent was used by the Examiner in making a rejection during prosecution of the '883 *ex parte* reexamination.

| | AD | US-5,463,382 | 10-31-1995 | Nikas et al. | | |

| Examiner Signature | /Matthew Heneghan/ | | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



| | 5,457,777 | Oct-95 | Goldberg |
| | 5,463,382 | Oct-95 | Nikas et al. |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AD | US-5,463,382 | 10-31-1995 | Nikas et al. | | |

| Examiner Signature | /Salman Ahmed/ | | | Date Considered | | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 15.     Claim 65 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nikas et al. (US PAT 5463382, hereinafter Nikas).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 147.

52. <u>False Statement 52</u>: With respect to the '838 patent, "[t]he '616 [Bjorndahl] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 383.

➤ <u>Fact 52</u>: The '616 Bjorndahl patent was cited by Patentee during the prosecution of the '883 *ex parte* reexamination in the April 28, 2011, IDS, and the '824 Bjorndahl patent was used by the Examiner in making a rejection during prosecution of the '883 *ex parte* reexamination.

| | AC | US-5,406,616 | 04-11-1995 | Bjorndahl | |
|---|---|---|---|---|---|
| Examiner Signature | /Matthew Heneghan/ | | | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | 5,406,557 | Apr-95 | Bowdoin |
|---|---|---|---|
| | 5,406,616 | Apr-95 | Bjorndahl |

3
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AC | US-5,406,616 | 04-11-1995 | Bjorndahl | |
|---|---|---|---|---|---|
| Examiner Signature | /Salman Ahmed/ | | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



> vibration alert as disclosed in the Metroka patent. This would be readily apparent to a person of ordinary skill in the art, particularly since each of the Tso patent and the '616 patent pertain to cellular mobile devices in GSM systems, and the mobile cellular

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 138.

53. <u>False Statement 53</u>: With respect to the '838 patent, "[t]he '824 [Lu] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 392.

➢ <u>Fact 53</u>: The '824 Lu patent was cited by Patentee during the prosecution of the '883 *ex parte* reexamination in the April 28, 2011, IDS, and the '824 Lu patent was used by the Examiner in making at least seven different rejection during prosecution of the '883 *ex parte* reexamination.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 127.

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 131.

> 11.    Claim 58 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911: Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 134.

> 13.    Claims 67 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Sattar et al. (US PAT 5255305).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 139.

> 14.    Claim 64 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Buhrmann et al. (US PAT 5903845, hereinafter Buhrmann).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 142.

> 15.    Claim 65 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nikas et al. (US PAT 5463382, hereinafter Nikas).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 147.

> 16.    Claim 66 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nguyen et al. (US PAT 6070067, hereinafter Nguyen).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 152.

54. False Statement 54: "The Jasinski '446 patent was not considered by the Examiner during prosecution of the '838 patent; the '446 patent was disclosed by the Applicant along with a large volume of other art during prosecution of the '838 patent's parent." Counterclaim ¶ 397.

> ➢ Fact 54:  Patentee cited the '446 patent in an IDS submitted during the original prosecution of the '838 patent and specifically informed the Examiner that the '446

patent had been relied upon to reject claims in a parent case. On three separate occasions the Examiner confirmed with his handwritten initials that he "considered" the '446 patent during the original prosecution of the application that issued as the '838 patent. The '446 patent is listed on the face of the '838 patent. *See* Fact 5, above.

**CERTIFICATE OF SERVICE**

I Laura Keller certify that on March 20, 2012, I personally caused to be served, by

CM/ECF filing, a true and correct copy of "Plaintiff's First Amended Complaint" to:

Michael R. Weiner
(mweiner@marshallip.com)
Julianne M. Hartzell
(jhartzell@marshallip.com)
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL 60606

Brian M. Buroker
bburoker@gibsondunn.com
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC 20006

Kenneth Richieri
(richierk@nytimes.com)
The New York Times Company
620 Eighth Avenue, 17th Floor
New York, New York 10018

Michael M. Markman
mmarkman@cov.com
Robert Williams
rwilliams@cov.com
Covington & Burling, LLP
One Front Street
San Francisco, CA 94111

David M. Airan
dairan@leydig.com
John K. Winn
jwinn@leydig.com
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Il 60601-6731

Daniel L. Farris
daniel.farris@hklaw.com
R. David Donoghue
david.donoghue@hklaw.com
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, IL  60603


*/s/ Laura Keller*
Laura Keller